EXHIBIT B-2

WALBRIDGE ALDINGER COMPANY                                DESIGN ASSIST SUBCONTRACT 5-1724-1602

## EXHIBIT E
## UNIT PRICES AND MARK-UPS

1. Unit Prices:

   Item                                                   Unit Price

   n/a

2. Labor Rates:

   Davis Bacon – Prevailing Wage Rates

   Unless the Agreement Between Owner and Contractor provides otherwise, unit prices include all charges for fee, layout, supervision and overhead (field and home office), general conditions items, labor, general expenses, transportation, taxes, insurance, profit, materials (with allowances for cutting losses, tolerances, mixing wastes, normal product imperfections and similar margins), and other associated costs and charges for work-in-place. These unit prices will be applied to net increases or decreases in quantities of the same item.

   The foregoing unit prices shall not be subject to change for the duration of the Project unless the quantities actually required vary so material from the original requirements (as reasonably determined by Contractor) that it would be inequitable for one party to continue to comply with the unit price schedule contained herein.

2. Unless the Agreement Between Owner and Contractor provides for different mark-ups, the Subcontractor shall be entitled to the following percentages for supervision, overhead, insurance and profit on changed work, as more particularly set forth in Article VII of the Subcontract. These mark-ups apply to Owner-Initiated Changes.

   a. Subcontractor's Maximum Mark-up for Self Performed Work: ( As Negotiated with Contracting Officer).

   b. Subcontractor's Maximum Pass-Through Mark-up on Secondary Tier Work: ( As Negotiated with Contracting Officer).

      b. For changed work, material markup: Zero and 00/100 (0) percent.

WALBRIDGE ALDINGER COMPANY                                        DESIGN ASSIST SUBCONTRACT 5-1724-1602

## EXHIBIT F
## PROJECT SPECIAL CONDITIONS

The work shall be performed subject to, and in strict accordance with, the following Project Special Conditions:

1. BUSINESS ETHICS & COMPLIANCE The Subcontractor, by signing this Agreement, hereby certifies that it has reviewed the requirements of FAR 52.203-13 and 52.203-14, that it (1) already has or will adopt a written code of business ethics and conduct within 30 days of the award of this Subcontract, (2) will otherwise comply with the applicable requirements of the above referenced FAR provisions, which are incorporated by reference in this Subcontract, and (3) will include the substance of those FAR provisions in lower tier subcontracts or purchase orders in excess of $5,000,000 and a performance period in excess of 120 days. Upon Contractor's request, the Subcontractor shall furnish to it a copy of its written code business ethics and conduct and satisfactory evidence of an on-going business ethics awareness and compliance program as required by FAR 52.203-13. This clause is not applicable if the subcontract or purchase order is for $5,000,000 or less unless a different dollar limit is required by the terms of the Prime Contract.

2. Subcontractor shall be bound by all documents incorporated therein, including without limitation, the General and Special Conditions and assumes towards the Contractor, with respect to the Subcontractor's Work, all of the obligations and responsibilities that the Contractor has assumed towards the Owner.

3. When work is performed in Michigan or in a state with similar statute, the Subcontractor shall comply with all provisions of the Michigan Right to Know Law (Amendments to Act 154) or other applicable states' law as well as the federal OSHA, Toxic and Hazardous Substances, and Hazard Communication Standard.

4. Subcontractor shall comply with FAR 52.203-13. If Subcontract amount exceeds $5,000,000, and it pertains to a federally funded project, Subcontractor shall have a written Code of Ethics and assure compliance with it. If Subcontractor does not have a Code of Ethics, it shall request a copy of Contractor's Code of Ethics and shall comply with it.

5. This contract contains a requirement for affirmative action to ensure employment opportunity for (a) woman and minorities, (b) special disabled and Vietnam Era Veterans, and (c) handicapped workers. Minority participation goals are: 26.2% for each trade and 6.9% for female participation for each trade.

6. Parking is available within reasonable walking distance for the construction site. Subcontractor employee parking shall not interfere with existing and established parking requirements of the Base.

7. Subcontractor shall participate in Walbridge led *Lean Fundamentals Training* and shall implement lean practices for this project.

8. Subcontractor has read, acknowledges and includes all costs in their Work to comply with all clauses incorporated by reference by the current Federal Acquisition Regulation (FAR) as designated by Solicitation #W912HN-07-X-1316 and Contract No. W912HN-07-D-0054-0006 as issued by the Federal Government at http://www.arnet.gov/far/.

9. Subcontractor acknowledges and complies with all of the following, but not limited to, Federal Acquisition Regulation clauses which are incorporated by reference in FAR 5-222-11 "Subcontracts (Labor Standards)":

    | | |
    |---|---|
    | 52.222-4 | Contract Work Hours and Safety Standards Act – Overtime Compensation |
    | 52.222-6 | Davis Bacon Act |
    | 52.222-9 | Apprentices and Trainees |
    | 52.222-8 | Payrolls and Basic Records |
    | 52.222-10 | Compliance with Copeland Act Requirements |
    | 52.222-7 | Withholding of Funds |
    | 52.222-11 | Subcontracts (Labor Standards) |
    | 52.222-12 | Contract Termination - Debarment |
    | 52.222-14 | Disputes Concerning Labor Standards |
    | 52.222-13 | Compliance with Davis-Bacon and Related Act Regulations |
    | 52.222-15 | Certification of Eligibility |
    | 52.204-9 | Personal Identity Verification of Contractor Personnel (Nov 2006) |
    | 52.215-2 | Audit and Records – Negotiation (Jun 1999) |
    | 52.215-13 | Subcontractor Cost or Pricing Data – Modifications (Oct 1997) |
    | 52.215-18 | Reversion or Adjustment of Plans for Postretirement Benefits (PRB) Other than Pensions (Jul 2005) |
    | 52.222-4 | Contract Work Hours and Safety Standards Act – Overtime Compensation (Jul 2005) |
    | 52.222-11 | Subcontracts (Labor Standards) (Jul 2005) |
    | 52.222-21 | Prohibition of Segregated Facilities (Feb 1999) |
    | 52.222-26 | Equal Opportunity (Apr 2002) |
    | 52.222-35 | Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sep 2006) |
    | 52.222-36 | Affirmative Action for Workers with Disabilities (Jun 1998) |

**WALBRIDGE ALDINGER COMPANY**  **DESIGN ASSIST SUBCONTRACT 5-1724-1602**

| | |
|---|---|
| 52.222-37 | Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sep 2006) |
| 52.222-38 | Notification of Employee Rights Concerning Payment of Union Dues or Fees (Dec 2004) |
| 52.225-5 | Buy American Act |
| 52.225-13 | Restrictions on Certain Foreign Purchases (Feb 2006) |
| 52.225-15 | Buy American Act – Construction Materials under Trade Agreements Act and North American Free Trade Agreement |
| 52.236-13 | Accident Prevention (Nov 1991) – Alternate I (Nov 1991) |
| 52.232-5 | Payments under Fixed-Price Construction Contracts |
| 52.232-27 | Prompt Payment for Construction Contracts |
| 52.243-4 | Changes |
| 52.236-2 | Differing Site Conditions |

10. Subcontractor has included all costs, at a minimum, to comply with either the published wage rates for each respective trade, and be in accordance with "General Decision Number GA20080278 dated 05/22/2009".

11. Subcontractor and its Sub-Subcontractor shall be bound to Liquidated Damage clause as contained within Solicitation #W912HN-07-X-1316. Liquidated damages, if any, will be assessed against the Subcontractor if the Subcontractor fails to achieve completion of its work as required under the project schedule due to Subcontractor's fault or neglect.

**LIQUIDATED DAMAGES:**
PHASING TIMELINE FOR INFRASTRUCTURE, COMPANY OPERATIONS FACILITIES, AND TACTICAL EQUIPMENT MAINTENANCE FACILITIES

| Infrastructure/COF/TEMF Timeline | |
|---|---|
| Days from NTP **** | Activity |
| 0 | NTP |
| 90 | Phase 1 sites ready |
| 120 | Phase 2 sites ready |
| 150 | Phase 3 sites ready |
| 390 | Phase 1 Infrastructure Complete |
| 450 | Phase 2 Infrastructure Complete |
| 480 | Phase 1 Facilities Complete |
| 540 | Phase 3 Infrastructure Complete |
| 640 | Phase 3 Facilities Complete |

****Timeline above for Days from NTP is for Infrastructure, COFs, and TEMFs (ICT) ONLY. All other 5th IBCT Facilities NTP issuance will coincide with the site availability of the Facility types as specified in the ICT Timeline above.

1a. Liquidated Damages: Liquidated Damages for access roads and sites for Phase I (within 90 days of NTP) barracks area not ready for barracks construction will be $4,034.00 per calendar day of delay until work is completed and accepted. Liquidated Damages for access roads and sites for Phase II (within 120 days of NTP) barracks area not ready for barracks construction will be $4,103.00 per calendar day of delay until work is completed and accepted. Liquidated Damages for access roads and sites for Phase III (within 150 days of NTP) barracks, headquarters, Dining Facility (DFAC), and Physical Fitness Facility (PFF) areas not ready for barracks construction will be $4,103.00; for headquarters construction will be $3,804.00; for DFAC construction will be $2,708.00; and for PFF construction will be $1,156.00 per calendar day of delay until work is completed and accepted.

1b. Liquidated Damages for utilities for Phase I (within 365 days of NTP) barracks area not ready for barracks building will be $4,034.00 per calendar day of delay per barracks building without utilities until work is completed and accepted. Liquidated Damages for permanent roads, exterior lighting, parking, and landscaping for Phase I (within 390 days of NTP) area not ready for barracks occupancy will be $4,034.00 per calendar day of delay per barracks occupancy until work is completed and accepted. Liquidated Damages for utilities for Phase II (within 400 days of NTP) barracks area not ready for barracks building will be $3,851.00 per calendar day of delay per barracks building without utilities until work is completed and accepted. Liquidated Damages for permanent roads, exterior lighting, parking, and landscaping for Phase II (within 450 days of NTP) area not ready for barracks occupancy will be $3,851.00 per calendar day of delay per barracks occupancy until work is completed and accepted.

1c. Liquidated Damages for Company Operating Facilities (COFs) and Tactical Equipment Maintenance Facilities (TEMFs) Complex for Phase I (within 480 days of NTP) COF/TEMF area not ready for COF/TEMF construction will be $3,854.00 per calendar day of delay until work is completed and accepted. Liquidated Damages for utilities

for Phase III (within 500 days of NTP) barracks, headquarters, Dining Facility (DFAC), and Physical Fitness Facility (PFF) areas not ready for each barracks building will be $3,851.00; for headquarters building will be $3,804.00; for DFAC building will be $2,708.00; and for PFF building will be $1,156.00 per calendar day of delay until work is completed and accepted. Liquidated Damages for permanent roads, exterior lighting, parking, and landscaping for Phase III (within 540 days of NTP) area not ready for barracks, headquarters, DFAC, and PFF occupancy will be $3,851.00 per calendar day of delay per barracks occupancy; will be $3,804.00 per calendar day of delay for headquarters occupancy; will be $2,708.00 per calendar day of delay for DFAC occupancy; and will be $1156.00 per calendar day of delay for PFF occupancy until work is completed and accepted.

1d. Liquidated Damages for Company Operating Facilities (COFs) and Tactical Equipment Maintenance Facilities (TEMFs) Complex and all remaining work not mentioned thus far for Phase III (within 610 days of NTP) will be $7,057.00 per calendar day of delay until work is completed and accepted.

12. Subcontractor and its Sub-Subcontractor shall comply with all security requirements. Each employee engaged with work onsite shall be required to display identification as approved and directed by the Contracting Officer. All prescribed identification shall immediately be delivered to the Contractor upon release of the employee. When required by the Contracting officer, the Subcontractor shall obtain and submit fingerprints of all persons employed or to be employed on the project. Subcontractor personnel shall wear identifying markings on hard hats clearly identifying for whom the employee works.

13. Subcontractor and its Sub-Subcontractor shall include all provisions to coordinate and secure their daily entrance into Fort Stewart. Subcontractor shall only enter and exit Base at authorized gate(s) designated by Contracting Officer. Subcontractor shall comply with all security regulations imposed by the Base and will anticipate/allow for regulated inspections of any personnel, equipment, and vehicles per the discretion of Military Security personnel. Subcontractor shall arrange and provide for all necessary escorting to get deliveries to the job site, if required.

14. Subcontractor and its Sub-Subcontractor shall comply with all regulations designated by Compliance with Post/Base Regulations". The site of the work is on a military reservation and all rules and regulations issued by the Commanding Officer covering general safety, security, sanitary requirements, pollution control and traffic regulations shall be observed by the Subcontractor.

15. Subcontractor and its Sub-Subcontractor shall comply with all safety procedures designated by, section 0515N-1, EM 385-1-1 and NFPA No. 241 Building Construction and Demolition Operations pertaining to accident prevention Subcontractor shall comply with all applicable Federal, State, Local, DOD, and Army regulations pertaining to safety, traffic control and fire prevention.

16. This project is considered a drug free workplace, per EM-385-1-1. In addition, all subcontractor field personnel must comply with Walbridge's site specific Accident Prevention Plan (AAP) which requires instant on-site drug screening prior to working on the site.

17. Debris generated from this site will be sorted for recycle. Dumpsters provided by Walbridge will be marked and Subcontractors are responsible for proper segregation of debris. Offenders will be responsible to re-sort debris appropriately at their cost.

18. Subcontractor shall comply with all requirements for "Project Closeout". A line item amount will be required on the Schedule of Values, which will be assigned to completion of project closeout and as-built documents as required.

19. Subcontractor shall comply with all requirements designated by Section 01 33 00 "Submittal Procedures". All submittals shall be submitted to WA in a timely manner, no more than two weeks, after issuance of this subcontract.

20. Subcontractor and its Sub-Contractors shall comply with all sustainability (LEED) requirements. Relevant items include, but are not limited to:
    o  EA 5      Measurement & Verification
    o  MR2.2    Construction Waste Management: Divert 75% From Disposal (WA provide separate containers, subs need to sort)
    o  MR4.2    Recycled Content: 20% (post-consumer + 1/2 pre-consumer)
    o  MR5.2    Regional Materials:20% Extracted, Processed & Manufactured Regionally
    o  MR7      Certified Wood
    o  EQ3.1    Construction IAQ Management Plan: During Construction
    o  EQ4.1    Low Emitting Materials: Adhesives & Sealants
    o  EQ4.2    Low Emitting Materials: Paints & Coatings
    o  EQ4.3    Low Emitting Materials: Carpet Systems
    o  EQ4.4    Low Emitting Materials: Composite Wood & Agrifiber Products
    o  EQ5      Indoor Chemical & Pollutant Source Control
    o  See Tab D [Technical Element 2-1-4 Sustainability Requirements] of original proposal document, dated 04/06/09, for initial/draft of LEED Checklist

**WALBRIDGE ALDINGER COMPANY**  **DESIGN ASSIST SUBCONTRACT 5-1724-1602**

21. Subcontractor shall submit Monthly Employment Utilization Reports (Form CC-257) covering the Subcontractor and their Sub-subcontractors aggregate workforce at the jobsite.

22. Certified payrolls must be submitted weekly by Subcontractor and their Subcontractors, whose Contracts are valued at $2,000.00 or more.

23. All trade permits are by this subcontractor and includes support for all inspections required to obtain approval of permitted work. Material testing and inspections required by permit are the responsibility of this subcontractor. All appropriate licenses required to perform the work of this subcontractor are by this subcontractor. General building permit is by others.

24. This subcontractor is responsible to keep the jobsite clean of debris created by their own work. This includes, but is not limited to, the immediate work area, lunch or break areas, warm up trailer area, tool area set up, office trailer area or material storage areas. Dunnage or packaging of any type, once on site, is the responsibility of this subcontractor to properly dispose of.

25. All material and supplies for this contract shall be in strict accordance with the FAR Clause No. 52.225-5, entitled, "Buy American Act". To comply with the Act, manufactured construction material or equipment brought to the construction site for incorporation in the building or work, must be manufactured in the United States and the cost of any foreign components must be less than 50 percent of the total cost of the item to be installed.

26. Unless otherwise directed or authorized, in writing, by Contractor, all Applications for Payment and all supporting documents for Subcontractor and its sub-subcontractors and suppliers, shall be in electronic format and shall be submitted to Contractor using the Textura payment management system prescribed by Contractor. Subcontractor shall be responsible for the fees and costs owed associated with Subcontractor's use of the Textura payment management system. Fees range from $5 to $50 per payment based on the size of the payment.

27. <u>Equal Employment Opportunity:</u> The Subcontractor shall comply with Executive Order 11246 of September 24, 1965 (41C.F.R. 60-250), which is administered by the United Stated Department of Labor Office of Federal Contract Compliance Programs, and with the relevant rules, regulations, and orders of the Secretary of Labor (collectively, the "EEO Requirements"). The Contractor will furnish upon request information and reports, required by the EEO Requirements, or pursuant thereto, and will provide access to its books, record, and accounts to appropriate agencies, and the Secretary of Labor for the purpose of investigation to ascertain compliance with the EEO Requirements. The Contractor shall include the provisions of this Paragraph in ever subcontract or purchase order so that such provisions will be binding upon each contractor, subcontractor, or vendor performing services or providing materials relating to the Work.

The Subcontractor shall not discriminate against any employee or applicant for employment because of race, color, age religion, sex national origin, disability, or veteran status. The Contractor shall take affirmative action to ensure that applicants are employed and that employees are treated during employment without regard to their race, color, age, religion, sex, national origin, disability, or veteran status. Such action shall include, but is not to be limited to the following: employment; upgrading; demotion or transfer, recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training; including apprenticeship. The Contractor shall post in conspicuous places, available to employees and applicants for employment, notices setting forth the provisions of this non-discrimination provision.

The Subcontractors shall send to each labor union or representative of workers with which it has a collective bargaining agreement, a notice advising the labor union or worker's representative of the Contractor's commitments under the EEO Requirements, and he shall post copies of the notice in conspicuous places available to employees and applicants for employment.

The Subcontractor shall, in all solicitations or advertisements for employees placed on its behalf, state that all qualified applicants will receive consideration for employment without regard to race, color, age, religion, sex, national origin, disability, or veteran status.

The Subcontractor shall also comply with Title VI of the Civil Rights Act of 1964 (Pub. L 88-352), and the regulations issued pursuant thereto (24 CFR Part 1), which provides that no person in the United States shall on grounds or race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity for which the applicant received Federal financial assistance and will immediately take any measures necessary to effectuate this assurance, If any real property or structure thereon in provided or improved with the aid of Federal financial assistance extended to the applicant this assurance shall obligate the applicant, or in the case of any transfer of such property, any transfer such property, any transferee, for the period during which the real property or structure is used for a purpose for the Federal financial assistance is extended, or for another purpose involving the provisions of similar services or benefits.

EXHIBIT G
ADDENDUM TO SUBCONTRACT

Date: 10/13/2009

**WALBRIDGE ALDINGER COMPANY**  **DESIGN ASSIST SUBCONTRACT 5-1724-1602**

The Subcontract is hereby modified by this Addendum as follows:

1. In the 4th paragraph of Article I, line 4, add the words "with respect to Subcontractor's scope of work under this Subcontract" after the word "Owner". Also add the following to such paragraph: Subcontractor shall have the benefit of all rights and remedies against Contractor that Contractor has against Owner under the Contract Documents between Owner and Contractor.

2. In Article III, third paragraph line nine after the word "Owner" in both locations in such line, add "for Subcontractor's work". At the end of such paragraph after the words "provided herein" add the following: "provided, that to the extent that Contractor has caused the Owner not to pay Contractor for any progress payment, Contractor shall be required to pay Subcontractor for such progress payment regardless of whether Contractor has received payment from the Owner."

3. In the seventh paragraph of Article II, line 2, delete the words "materialmen and laborers and insert "and suppliers".

4. In the eighth paragraph of Article III, in the last line of such paragraph after the words "Subcontract Price" add the following: "however, Contractor shall not pay any subcontractor or supplier of Subcontractor if Subcontractor disputes in good faith, such claim by such supplier or subcontractor and Subcontractor has provided a Payment Bond with respect to the Project.

5. Add the following to Article IV, first paragraph, line 7, after the words "Subcontractor's Work, add the following: provided, that to the extent that Contractor has caused the Owner not to release retention or make final payment to Contractor, Contractor shall be required to pay Subcontractor for such retention and final payment regardless of whether Contractor has received payment from the Owner.".

6. In the first paragraph of Article V, lines 4 and 5, delete the words "and at such time and in such order and sequence as Contractor may direct and as is required for the best possible progress of the Work whenever such Work or any part of it becomes available" and substitute the following: "in accordance with the Project Schedule as agreed to by both Contractor and Subcontractor, and as adjusted for time extensions to which Subcontractor is entitled." In line 12 of such paragraph delete the words "or any modification

**WALBRIDGE ALDINGER COMPANY**　　　　　　　　　　**DESIGN ASSIST SUBCONTRACT 5-1724-1602**

thereof" and substitute "as agreed to by Subcontractor and as adjusted for time extensions to which Subcontractor is entitled". Delete the words: "and Contractor makes no representation ...progress schedule", from the last sentence of the first paragraph of Article V. In the last sentence of Article V add the word "reasonably" before the word "modify" and after the words "or any portion thereof" add "subject to the other terms of the Subcontract."

7. Art. V, second paragraph, last sentence, before the word "Subcontractor" add "Except as otherwise provided in this Subcontract".

8. Art. V, third paragraph, last sentence, after the word "shorter" add "or longer".

9. Add the following to the end of the first paragraph of Article V:

"Time is of the essence for both Contractor and Subcontractor. Contractor shall reasonably cooperate with Subcontractor so that Subcontractor can meet the dates in the Project Schedule."

The Project Schedule and any modification to such Schedule shall allow Subcontractor a reasonable time to complete Subcontractor's Work.

10. Add the following as the fourth paragraph of Article V:

Subcontractor shall be entitled to make a claim for an equitable adjustment in the Subcontract time and price as a result of material delays and impacts caused by the negligence or intentional interference of Contractor or any of Contractor's other subcontractors or caused by changes to the work initiated by Contractor. If Subcontractor is delayed or impacted by the Owner, the Architect or the Engineer, by changes initiated by the Owner, the Architect or the Engineer, defective Plans or Specifications, differing site conditions or other factors or events for which Contractor is entitled to time extensions or compensation from the Owner, Subcontractor shall also be entitled to an equitable adjustment in the time of completion and in the Subcontract price, contingent upon Contractor's ability to recover such amounts on Subcontractor's behalf, as a result of such delays or impact to the same extent that Contractor is entitled to receive time extensions and compensation for such delays or impact under the General Contract between Contractor and the Owner or under other Contract Documents. Provided that Subcontractor provides timely notice and proper documentation,

Contractor shall request and pursue on behalf of Subcontractor time extensions and additional compensation for delays and impacts for which the Owner is responsible, according to the procedure in the Agreement between Owner and Contractor. Subcontractor and Contractor shall cooperate in pursuing Subcontractor's claims for damages for such delays and/or impacts against the Owner and Contractor shall pay Subcontractor for all amounts recovered from the Owner for Subcontractor's claims, minus the Subcontractor's share of the cost incurred by Contractor to pursue such claims on behalf of Subcontractor. The time for Subcontractor to give notice to Contractor or to make such claim against the Owner shall be three (3) days) earlier than the time for Contractor to give notice to the Owner or make a similar claim under the General Contract or Contract Documents.

11. Art. VI, last sentence, insert, "except as otherwise provided in this Subcontract" at the beginning.

12. Add the following to the end of Article VII:

If Subcontractor is required in writing to perform extra work or changes to the Subcontract, Contractor shall provide a written change order for such extra work or changes in a reasonable time. In the event that Subcontractor is required in writing to perform work that Subcontractor believes is additional work, Subcontractor shall be entitled to a Change Order request or a claim, provided Subcontractor provides written notice to Contractor prior to performing such work that Subcontractor considers such work to be extra work or a change to the Subcontract.

13. In lines 6 and 7 of Article VII, add "equitably" before the word "adjusted", delete the remainder of the sentence and add in its place the following: and any dispute to be resolved in accordance with the Subcontract."

14. In Article XI, line 5, after the comma and before the word "whether" add the following: "to the extent caused by Subcontractor, its employees or any of its subcontractors or suppliers or their employees."

15. In Article XII, lines 5, after the words "additional insured's" and in line 6, after the word "non-contributory" add the following: to the extent caused by Subcontractor, its employees or any of its subcontractors or suppliers or their employees."

**WALBRIDGE ALDINGER COMPANY**          DESIGN ASSIST SUBCONTRACT 5-1724-1602

16. Add following to Article XIV:

In the event termination is without cause, Contractor shall pay Subcontractor for all properly performed work and materials delivered to or stored at the project prior to the date of termination, and reasonable cost of such termination, as approved by the Owner.

17. The warranty starts after the Final Completion of the Project.

18. In Article XIX, line 1, delete the words "that Contractor determines in its sole, reasonable discretion relate to" and substitute "that involve".

19. In the last sentence in Article XXVIII insert after "as required herein" the words "after discovering such defect".

20. In Article XXVIII (b), line 1, add "modifications to" after "related to".

21. In Article XXVIII (l) delete "or commencing performance of the Work".

22. Add the following as paragraph (m) to Article XXVIII:

"Any decision or ruling of the Owner, Architect or Contractor that is deemed by the Subcontract to be binding on Subcontractor shall be subject to all protests, appeals, challenge, claims and actions as allowed by the Subcontract or Contract Documents or as otherwise allowed by law".

23. Add the following as paragraph (n) to Article XXVIII:

"Where any provision of the Subcontract allows action, decisions, directions or opinions of the Contractor, such actions, decisions, directions and opinions shall be reasonable".

24. Add the following as paragraph (o) to Article XXVIII:

"Should either party employ an attorney to institute litigation or arbitration to enforce any provision of this Subcontract or to collect any amount due under this Subcontract or damages for breach of this Subcontract, the

**WALBRIDGE ALDINGER COMPANY**          **DESIGN ASSIST SUBCONTRACT 5-1724-1602**

prevailing party shall be entitled to recover its reasonable attorney's fees, costs and expenses incurred".

25. Add the following as paragraph (p) to Article XXVIII:

"Subcontractor shall not liable for liquidated damages or actual damages for delays that are not caused by the Subcontractor, and Subcontractor shall not be liable for any days of delay for which Subcontractor received a time extension under the Subcontract or the Contract Documents between the Owner and Contractor".

26. Add the following as paragraph (q) to Article XXVIII:

"Prior to backcharging Subcontractor for any claim or services or clean-up, Contractor shall provide Subcontractor with a 24 hr. written notice of such services or claim and provide Subcontractor with a reasonable opportunity to remedy any claimed problem prior to Contractor being able to charge Subcontractor for such claim or services".

27. Add the following as paragraph (r) to Article XXVIII:

"Any form, waiver, release or contract language wherein the Subcontractor waives or releases claims shall apply only to work for which payment has been received in full by Subcontractor and shall not apply to retention or claims or changes for which Subcontractor has not been paid. However, in case of claims, Subcontractor shall list on the waiver its reserved and timely made claims".

28. Add the following as paragraph (s) to Article XXVIII:

"Subcontractor does not accept preceding work where the nonconformity or defect of another trade or of Contractor is not known to Subcontractor at the time of commencement of its work. However, Subcontractor shall perform a reasonable investigation for apparent defects and if such are discovered, shall report the apparent defects to Contractor".

29. Add the following as paragraph (t) to Article XXVIII:

"Subcontractor's duty to protect its materials and work shall be such protection that is normally required in the

| WALBRIDGE ALDINGER COMPANY | DESIGN ASSIST SUBCONTRACT 5-1724-1602 |
|---|---|

construction industry of an electrical subcontractor under similar circumstances as those of this Project. Subcontractor shall not have any duty to protect its work after it is installed and accepted by Contractor. Contractor shall take reasonable measures so that such other trades do not damage Subcontractor's work or materials".

30. Add the following as paragraph (v) to Article XXVIII:

"In the event of conflict between the provisions of the Subcontract or other Contract Documents and the provisions of the Addendum, the provisions of the Addendum shall govern".

31. In Exhibit B, add at the end of Item 12 before the period "if caused by Subcontractor, its agents and employees".

B.  Delete the following from the Subcontract:

32. the words "or further sublet" in Article XVII, line 1.

33. the second paragraph of Article XIX.

34. the paragraph, "Waiver of Jury Trial and Counterclaim", in Article XIX.

35. the last sentence in Article XXVIII(e).

36. Replace Item 15 of Exhibit B with : "The Subcontractor and its sub-subcontractors shall develop an effective labor relations program that will prevent labor disputes, work stoppages and embarrassment to the Owner and/or Contractor".

D&N ELECTRIC COMPANY
By: [signature]
Print Name: Michael W. Munroe
Title: Corporate Secretary
Date:

WALBRIDGE ALDINGER COMPANY
By: [signature]
Print Name:
Title: V.P.
Date: 10/21/09

Date: 10/13/2009

**WALBRIDGE ALDINGER COMPANY**  **DESIGN ASSIST SUBCONTRACT 5-1724-1602**

October 12, 2009

TO: Jason Klingensmith

FROM: Bill Hughes

RE: D&N Electric – Subcontract
Ft. Stewart – 5th IBCT
Savannah, GA
Estimate: W-2622 (W912HN-07-D-0034-0006)
Contract: 5-1724

## List of E-Mails for W-2622 (5-1724) Ft. Stewart 5th IBCT Project – Savannah, GA

1. Tue 3/3/2009 11:46 AM - Subcontractor Outreach Meeting announcement, what potions of the project will you be bidding, requesting subcontractor contact information and SBE participation/certifications.
2. Wed 3/4/2009 1:42 PM – This is a follow up to the 3/3/09 E-Mail
3. Fri 3/6/2009 7:34 AM – Another follow up to the 3/3/09 E-Mail
4. Mon 3/9/2009 4:44 AM – Outreach Meeting formal invitation
5. Mon 3/9/2009 9:29 AM – Instructions on how to use the EPR site and download documents
6. Tue 3/10/2009 5:59 AM – Further explanation of the SBE Participation requirements
7. Tue 3/10/2009 6:04 AM – Agenda for the Outreach program
8. Wed 3/11/2009 11:53 AM – More instructions on the EPR site
9. Thu 3/12/2009 10:29 AM – Sent out General Arrangements Drawings
10. Thu 3/12/2009 11:25 AM – More information on SBE Participation
11. Sat 3/14/2009 6:28 AM – Sent out progress RFI responses from the COE
12. Sat 3/14/2009 7:21 AM – Updated General Arrangements Drawings for the project
13. Sat 3/14/2009 9:54 AM – Walbridge Electronic Bid Form
14. Sat 3/21/2009 9:23 AM – Walbridge Sqft Calculations
15. Sat 3/21/2009 9:57 AM – Announced that we are posting Design Documents
16. Mon 3/23/2009 9:21 AM – Posting more design Documents
17. Mon 3/23/2009 1:21 PM – Further explanation of the Proposal Form and Turnkey Proposal requirements
18. Mon 3/23/2009 1:42 PM – Certified drawings from the Ft. Bliss project posted to the EPR site for a design outline and guidelines
19. Wed 3/25/2009 7:22 AM – Sent out progress RFI responses from the COE
20. Fri 3/27/2009 9:56 AM – Updated Electronic Proposal Form
21. Sat 3/28/2009 7:56 AM – Highlighted the Air Barrier requirements
22. Mon 3/30/2009 8:07 AM – Updated Design Documents posted to the EPR site
23. Mon 3/30/2009 10:53 AM – Issued an Overhead Door Matrix
24. Mon 3/30/2009 11:08 AM – Issued the Site Logistics Plan
25. Tue 3/31/2009 8:48 AM – Notice that Amendment No. 02 is posted
26. Tue 3/31/2009 4:11 PM – Issued the preliminary construction schedule
27. Wed 4/1/2009 8:54 AM – Correction to the Amendment No. 02 posting
28. Wed 4/1/2009 12:26 PM – Clarified the requirements for Option No. 04
29. Wed 4/1/2009 2:58 PM – Correction to the Amendment No. 02 posting
30. Wed 4/1/2009 3:01 PM – Notice that Amendment No. 03 is coming
31. Thu 4/2/2009 11:55 AM – Notice that Amendment No. 03 is posted
32. Thu 4/2/2009 2:20 PM – Notice that Amendment No. 03 is posted
33. Thu 4/2/2009 2:55 PM – Updated the Electronic Proposal Form
34. Fri 4/3/2009 10:00 AM – Issued the Walbridge Electrical Scope of Work
35. Sat 4/4/2009 8:00 AM – Issued the Drawing Pricing Narratives
36. Sun 4/5/2009 5:06 AM – Sent out progress RFI responses from the COE
37. Sun 4/5/2009 6:20 AM – Updated the Design Drawings
38. Sun 4/5/2009 6:59 AM – Updated the Drawing Pricing Narratives

Date: 10/13/2009

39. Sun 4/5/2009 9:28 AM – Updated the Electronic Proposal Forms and issued updated Design Drawings.
40. Sun 4/5/2009 9:32 AM – Explanation of the changes to the proposal form and drawings
41. Sun 4/5/2009 9:33 AM – Updated the Walbridge Electrical Scope of Work
42. Mon 4/6/2009 6:41 AM – Updated Design Drawings
43. Mon 4/6/2009 2:55 PM – Issued the MEP Work Responsibility Matrix
44. Tue 4/7/2009 11:06 AM – Issued updated RFI responses from the COE
45. Wed 4/8/2009 8:17 AM – Highlighting special grounding requirements
46. Wed 4/8/2009 9:40 AM – Highlighted the ASLMS, SATS and COM-VAN trailers and containers and the quantity requirements
47. Mon 5/4/2009 9:19 AM - We received a letter from the US Army - Corp of Engineers on this project. Looking for Electrical responses to issues with the Electrical proposal that needs your attention and response.
48. Tue 5/5/2009 2:05 PM – Petty Cash Discussion – several E-Mails
49. Sat 5/23/2009 6:37 AM – Discussion of the procurement process
50. Tue 5/26/2009 7:39 AM – Discussion of the procurement process
51. Thu 6/11/2009 7:36 AM – Best and Final Outline to include Mechanical Changes and Betterments
52. Mon 6/22/2009 6:30 AM – Revise Electronic Proposal Form for the Best and Final
53. Mon 6/22/2009 12:29 PM – Issue of Amendment 04, Amendment No. 05 and Betterments
54. Mon 6/22/2009 12:30 PM – Description of the Switchgear Changes due to the Mechanical changes.
55. Tue 6/23/2009 5:25 AM – Mistake with the D&N Best and Final proposal. Walbridge added cost to cover the mistake.
56. Fri 6/26/2009 2:18 PM – Preparation for a Subcontractor Proposal Review
57. Mon 6/29/2009 6:15 AM – Itemized the adjustments I made for D&N Electric for the 6/23/2009 mistakes.
58. Thu 7/2/2009 7:56 AM – Sample copy of the Walbridge Subcontract
59. Wed 7/15/2009 3:21 PM – Discussions of the contract values
60. Thu 7/16/2009 5:58 PM – Address adder cost for metering
61. Fri 7/17/2009 2:37 PM – Memo of Intent to subcontract with D&N Electric
62. Mon 7/20/2009 2:15 PM – D&N Electric is an approved Walbridge Vendor
63. Thu 7/23/2009 2:49 PM – Outline of the D&N Electric Subcontract Values
64. Fri 7/31/2009 10:20 AM – Discussion of a Cost Loaded Schedule

# GREAT AMERICAN INSURANCE COMPANY
OHIO

Bond No. 210-51-14

CAUTION: You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

## PERFORMANCE BOND
The American Institute of Architects, A.I.A. Document No. A311 (February, 1970 Edition)

KNOW ALL MEN BY THESE PRESENTS: that (Here insert full name and address or legal title of Contractor)
D & N Electric Company, 3015 R.N. Martin St., East Point, GA 30344
as Principal, hereinafter called Contractor, and (Here insert full name and address or legal title of Surety)
GREAT AMERICAN INSURANCE COMPANY
580 Walnut Street, Cincinnati, Ohio 45202
as Surety, hereinafter called Surety, are held and firmly bound unto (Here insert full name and address or legal title of Owner)
Walbridge Aldinger Company, 777 Woodward Ave., Suite 300, Detroit, MI 48226
as Obligee, hereinafter called Owner, in the amount of Ten Million Eight Hundred Ninety Two Thousand Six Hundred Three
Dollars ($ 10,892,603.00 ) for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS,

Contractor has by written agreement dated September 21, ,2009 entered into a contract with Owner for
Ft Stewart IBCT W912HN-07-D-0054-0006
in accordance with Drawings and Specifications prepared by (Here insert full name and address or legal title of Architect)
BWSC, 8280 Yankee St., Dayton, OH 45458
which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The Surety hereby waives notice of any alteration or extension of time made by the Owner.

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly

1) Complete the Contract in accordance with its terms and conditions, or
2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as Work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid Owner to Contractor.

Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the contract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of the Owner.

Signed and sealed this 16th day of October , 2009

_Daulene Richard_
(Witness)

_[signature]_
(Witness)

Performance Bond. This bond is issued simultaneously with Labor and Material Bond F.9635
(Perf Bond F9633g)

D & N Electric Company (Seal)
_[signature]_ (Principal)
Michael W. Munroe, C.O.O. (Title)

GREAT AMERICAN INSURANCE COMPANY (Seal)
_[signature]_ (Surety)
Debra Johnson, Attorney-in-Fact (Title)

# GREAT AMERICAN INSURANCE COMPANY

OHIO

Bond No. 210-51-14

CAUTION: You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

## LABOR AND MATERIAL PAYMENT BOND

The American Institute of Architects, A.I.A. Document No. A311 (February, 1970 Edition)

THIS BOND IS ISSUED SIMULTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE OWNER CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE CONTRACT

KNOW ALL MEN BY THESE PRESENTS: that (Here insert full name and address or legal title of Contractor)

D & N Electric Company, 3015 R.N. Martin St., East Point, GA 30344

as Principal, hereinafter called Principal, and (Here insert full name and address or legal title of Surety)

GREAT AMERICAN INSURANCE COMPANY
580 Walnut Street, Cincinnati, Ohio 45202

as Surety, hereinafter called Surety, are held and firmly bound unto (Here insert full name and address or legal title of Owner)

Walbridge Aldinger Company, 777 Woodward Ave., Suite 300, Detroit, MI 48226

as Obligee, hereinafter called Owner, for the use and benefit of claimants as hereinbelow defined, in the amount of

Ten Million Eight Hundred Ninety Two Thousand Six Hundred Three       Dollars ($ 10,892,603.00 )

(here insert a sum equal to at least one-half of the contract price)

for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS,    D & N Electric Company,

Principal has by written agreement dated    September 21, 2009    entered into a contract with Owner for

Ft Stewart IBCT W912HN-07-D-0054-0006

in accordance with Drawings and specifications prepared by (Here insert full name and address or legal title of Architect)

BWSC, 8280 Yankee St., Dayton, OH 45458

which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1) A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract

2) The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.

3) No suit or action shall be commenced hereunder by any claimant:

a) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: the Principal, the Owner, or the Surety above named,

within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

b) After the expiration of one (1) year following the date on which Principal ceased Work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

c) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

4) The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.

Signed and sealed this    16th    day of    October    ,    2009

_Darlene Richard_ (Witness)

_[signature]_ (Witness)

D & N Electric Company

{  _[signature]_ (Principal) (Seal)
   Michael W. Munroe, C.O.O.  (Title)

{  GREAT AMERICAN INSURANCE COMPANY (Seal)
   _[signature]_ (Surety)
   Debra Johnson, Attorney-in-Fact (Title)

Labor and Material Payment Bond. This bond is issued simultaneously with Performance Bond F.9633-(8/97)
(Labor Mat F9635A.dot)

# GREAT AMERICAN INSURANCE COMPANY®
Administrative Office: 580 WALNUT STREET • CINCINNATI, OHIO 45202 • 513-369-5000 • FAX 513-723-2740

The number of persons authorized by
this power of attorney is not more than FOUR

No. O 18781

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS: That the GREAT AMERICAN INSURANCE COMPANY, a corporation organized and existing under and by virtue of the laws of the State of Ohio, does hereby nominate, constitute and appoint the person or persons named below, each individually if more than one is named, its true and lawful attorney-in-fact, for it and in its name, place and stead to execute on behalf of the said Company, as surety, any and all bonds, undertakings and contracts of suretyship, or other written obligations in the nature thereof; provided that the liability of the said Company on any such bond, undertaking or contract of suretyship executed under this authority shall not exceed the limit stated below.

| Name | | Address | Limit of Power |
|---|---|---|---|
| DOUGLAS L. RIEDER | CARL R. WISE | ALL OF | ALL |
| JOHN W. MILLER II | PAUL BAKER | ATLANTA, GEORGIA | $75,000,000 |
| J. BART MILLER | DEBRA JOHNSON | | |
| BRIAN PERRY | KATY KENNEDY | | |

This Power of Attorney revokes all previous powers issued on behalf of the attorney(s)-in-fact named above.

IN WITNESS WHEREOF the GREAT AMERICAN INSURANCE COMPANY has caused these presents to be signed and attested by its appropriate officers and its corporate seal hereunto affixed this 27TH day of MAY , 2009 .

Attest                                                                          GREAT AMERICAN INSURANCE COMPANY

DAVID C. KITCHIN (513-412-4602)

STATE OF OHIO, COUNTY OF HAMILTON - ss:
On this 27TH day of MAY 2009 , before me personally appeared DAVID C. KITCHIN, to me known, being duly sworn, deposes and says that he resides in Cincinnati, Ohio, that he is a Divisional Senior Vice President of the Bond Division of Great American Insurance Company, the Company described in and which executed the above instrument; that he knows the seal of the said Company; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by authority of his office under the By-Laws of said Company, and that he signed his name thereto by like authority.

This Power of Attorney is granted by authority of the following resolutions adopted by the Board of Directors of Great American Insurance Company by unanimous written consent dated June 9, 2008.

RESOLVED: *That the Divisional President, the several Divisional Senior Vice Presidents, Divisional Vice Presidents and Divisonal Assistant Vice Presidents, or any one of them, be and hereby is authorized, from time to time, to appoint one or more Attorneys-in-Fact to execute on behalf of the Company, as surety, any and all bonds, undertakings and contracts of suretyship, or other written obligations in the nature thereof; to prescribe their respective duties and the respective limits of their authority; and to revoke any such appointment at any time.*

RESOLVED FURTHER: *That the Company seal and the signature of any of the aforesaid officers and any Secretary or Assistant Secretary of the Company may be affixed by facsimile to any power of attorney or certificate of either given for the execution of any bond, undertaking, contract of suretyship, or other written obligation in the nature thereof, such signature and seal when so used being hereby adopted by the Company as the original signature of such officer and the original seal of the Company, to be valid and binding upon the Company with the same force and effect as though manually affixed.*

## CERTIFICATION

I, STEPHEN C. BERAHA, Assistant Secretary of Great American Insurance Company, do hereby certify that the foregoing Power of Attorney and the Resolutions of the Board of Directors of June 9, 2008 have not been revoked and are now in full force and effect.

Signed and sealed this 16th day of October , 2009

S1029Y (10/08)

## DUAL OBLIGEE RIDER

To be attached to and form a part of contract bond number _____ 210-51-14 _____ issued by the _____

_____ Great American Insurance Company _____

on behalf of _____ D & N Electric Company _____

in the amount of ---------------------Ten Million Eight Hundred Ninety Two Thousand Six Hundred Three----

---------------------------------------------------------- Dollars ($ 10,892,603.00 _____ )

and dated _____ October 16, 2009 _____ in favor of _____ Walbridge Aldinger Company _____

in consideration of the sum of One Dollar ($1.00), and other good and valuable consideration receipt of which is hereby acknowledged, the Undersigned hereby agree as follows:

1. The _____ US Army Engineer District Savannah _____

   is hereby added to said bond as an additional obligee.

2. The Surety shall not be liable under this bond to the Obligee, or either of them unless the said Obligees, or either of them, shall make payments to the Principal strictly in accordance with the terms of the said contract as to payments, and shall perform all other obligations to be performed under said contract at the time and in the manner therein set forth.

3. No suit, action or proceeding by reason of any default whatever shall be brought on this bond after two (2) years from the day on which the final payment under said construction contract falls due.

4. Aggregate liability of Surety hereunder to Obligees is limited to the penal sum above stated and Surety, upon making payment hereunder, shall be subrogated to, and shall be entitled to an assignment of all rights of the payee with respect to the particular obligation discharged by the payment, either against principal or against any other party liable to the payee on the discharged obligation.

Signed, Sealed and Dated this ___16th___ day of ___October___, _2009_.

By _Darlene Richard_

By _[signature]_

000620 12/00

D & N Electric Company

By _[signature]_
Michael W. Munroe, C.O.O.

Great American Insurance Company

By _[signature]_
Debra Johnson, Attorney-in-Fact

# ACORD CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY):** 10/13/2009

**PRODUCER** (678)424-6500   FAX (678)424-6501
Sterling Risk Advisors, Inc.
P.O. Box 724137
Atlanta, GA 31139

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**INSURED:** D & N Electric Company
3015 RN Martin Street
East Point, GA 30344

**INSURERS AFFORDING COVERAGE** — NAIC #
- INSURER A: Amerisure Insurance Company
- INSURER B: American Zurich Insurance Company
- INSURER C:
- INSURER D:
- INSURER E:

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | GENERAL LIABILITY — X COMMERCIAL GENERAL LIABILITY — CLAIMS MADE / X OCCUR — GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY / PRO-JECT / LOC | CPP2051849000000 | 03/01/2009 | 03/01/2010 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| A | | AUTOMOBILE LIABILITY — X ANY AUTO / ALL OWNED AUTOS / SCHEDULED AUTOS / HIRED AUTOS / NON-OWNED AUTOS | CA205184800001 | 03/01/2009 | 03/01/2010 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | GARAGE LIABILITY — ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN AUTO ONLY: EA ACC / AGG | $ |
| A | | EXCESS / UMBRELLA LIABILITY — X OCCUR / CLAIMS MADE — DEDUCTIBLE / RETENTION $ | CU2051850-00 | 03/01/2009 | 03/01/2010 | EACH OCCURRENCE | $5,000,000 |
| | | | | | | AGGREGATE | $5,000,000 |
| | | | AEC-9382227-00 AMERICAN ZURICH INS. CO. | 03/01/2009 | 03/01/2010 | EACH OCCURRENCE | $15,000,000 |
| | | | | | | AGGREGATE | $15,000,000 |
| A | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY — ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under SPECIAL PROVISIONS below | WC2051852-00 | 03/01/2009 | 03/01/2010 | X WC STATUTORY LIMITS / OTHER | |
| | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |
| A | | OTHER — Inland Marine | CPP2051849000000 | 03/01/2009 | 03/01/2010 | Leased/Rented Equipment: Amount $250,000  Deductible: $1,000 | |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS**
RE: JOB#0910036-Fort Stewart; IBCT W912HN-07-D-0054-0006-S-1724-1602.
The following applies when required by written contract: Walbridge, US Army Engineer District Savannah (Owner and Architect) is additional insured as respects the GL policy including ongoing & completed operations, on a primary and non contributory basis, and is additional insured as respects the Auto policy. Umbrella follows form.

**CERTIFICATE HOLDER**
Walbridge
ATTN: Contract Administration
777 Woodward Avenue
Suite 300
Detroit, MI 48226

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

**AUTHORIZED REPRESENTATIVE:** Brian Perry/LESLEY

ACORD 25 (2009/01)   © 1988-2009 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD