IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Walbridge Aldinger Company,<br><br>      Plaintiff,<br><br>v.<br><br>D & N Electric Company, D & N Consolidated, Inc., and Matthew Armstrong, Individually,<br><br>      Defendants. | Civil Action File<br>No. 1:11-CV-04602-ODE<br><br>JURY TRIAL DEMANDED |

## DEFENDANT D & N ELECTRIC COMPANY'S ANSWER TO COMPLAINT AND COUNTERCLAIM

Defendant D & N Electric Company ("D & N") hereby files its Answer to the Complaint and Counterclaim as follows:

## ANSWER TO COMPLAINT

D & N hereby answers the Complaint as follows:

## FIRST DEFENSE

D & N hereby answers the numbered paragraphs of the Complaint as follows:

1. Defendant D & N admits the allegations of numbered paragraph 1 of the Complaint.

2.     Defendant D & N admits the allegations of numbered paragraph 2 of the Complaint.

3.     Defendant D & N admits the allegations of numbered paragraph 3 of the Complaint.

4.     Defendant D & N admits the allegations of numbered paragraph 4 of the Complaint.

5.     Defendant D & N admits the allegations of the first sentence of numbered paragraph 5 of the Complaint.  With respect to the second sentence of numbered paragraph 5 of the Complaint, Defendant D & N admits that Plaintiff has alleged that this is an action for money damages in excess of $75,000, exclusive of interest, costs and attorney fees.  Defendant D & N admits that, based on such allegations in paragraph 5 of the Complaint, the Court has subject matter jurisdiction over this dispute according to 28 U.S.C. §1332(a)(1), but Defendant D & N denies any liability to Plaintiff and denies the remaining allegations of numbered paragraph 5 of the Complaint to the extent they are alleging any liability of D & N to Plaintiff.

6.     Defendant D & N admits personal jurisdiction over the parties and admits that D & N and DNS Consolidated, Inc. ("DNS") do business in Georgia and that the alleged transactions are alleged to have occurred in Georgia, but

Defendant D & N denies the remaining allegations of numbered paragraph 6 of the Complaint.

7.     Defendant D & N admits the allegations of numbered paragraph 7 of the Complaint.

8.     Defendant D & N admits the allegations of the first sentence of numbered paragraph 8 of the Complaint.  Defendant D & N denies the allegations of the second sentence of numbered paragraph 8 of the Complaint.

9.     Defendant D & N admits that the alleged action arises from the two government construction projects alleged in numbered paragraph 9 of the Complaint, but Defendant denies the allegations to the extent they are intended to allege any liability of Defendant D & N.

10.     Defendant D & N denies the allegations of numbered paragraph 10 of the Complaint.  In further answer to numbered paragraph 10 of the Complaint, D & N states that the following conditions precedent have not been performed, excused or waived:  Walbridge failed to comply with provisions of the Subcontract, as modified by the Addendum, including, but not limited to, the following:

a.     to have a Project Schedule agreed to by both D & N and Walbridge;

b.     to grant adjustments to the Project Schedule for time extensions to which D & N was entitled;

3

c.      to act in accordance with time being of the essence;

d.      to reasonably cooperate with D & N so that D & N could meet the dates in the Project Schedule;

e.      to provide a Project Schedule and any modification to such Schedule so as to allow D & N a reasonable time to complete its Work;

f.      If D & N was required to perform extra work or changes to the Subcontract, to provide a written change order for such extra work or changes in a reasonable time;

g.      to grant D & N an equitable adjustment to the Subcontract price and time for changes and extra work;

h.      to grant D & N an equitable adjustment in the Subcontract time and price as a result of material delays and impacts caused by the negligence or intentional interference of Walbridge or any of Walbridge's other subcontractors or caused by changes to the work initiated by Walbridge;

i.      where Walbridge directed D & N to add labor, expedite deliveries, work overtime and/or a second shift and D & N was not in default, to pay D & N for actual costs incurred by D & N to furnish additional

labor and to expedite deliveries of materials and equipment, and the actual premium costs over the regular rates;

j.     to act reasonably in taking action and making decisions;

k.     to pay for equitable adjustments to which D & N was entitled under the Subcontract, as modified by the Rider;

l.     to pay for the Subcontract Balance, changes and extra work;

m.     to pursue on D & N' behalf claims of D & N for impacts and delays caused by the Owner and for changes initiated by the Owner and to pay D & N all amounts recovered by Walbridge from the Owner for D & N' claims, minus D & N' share of the cost incurred by Walbridge to pursue such claims on behalf of D & N;

n.     to provide D & N, prior to backcharging for any claim or services or clean-up, a 24 hr. written notice of such services or claim and provide D & N with a reasonable opportunity to remedy any claimed problem prior to Contractor being able to charge Subcontractor for such claim or services;

o.     not to require D & N to waive or release claims or changes for which it had not been paid; and

5

      p.     to provide a copy of pertinent Contract Documents between Walbridge and the Corps of Engineers upon request by D & N.

<u>Reserve Center Project</u>

11.    Defendant D & N admits the allegations of numbered paragraph 11 of the Complaint.

12.    Upon information and belief, Defendant admits that in June, 2010 Walbridge entered into a subcontract with DNS to provide certain labor, materials, equipment, tools and services for the electrical scope of work on the Reserve Center Project but denies the allegations of numbered Paragraph 12 to the extent that it alleges a scope broader or different from the scope of work set forth in the Subcontract.  Defendant admits that a copy of the Reserve Center Subcontract is attached as Exhibits A-1 and A-2, but denies that the entire Subcontract is set forth as "Exhibit A".

13.    Upon information and belief, Defendant D & N admits that Walbridge made payments to DNS for part of DNS' work but denies that Walbridge paid DNS for all of its work.  With respect to the second sentence of numbered paragraph 13 of the Complaint, upon information and belief, Defendant D & N admits the allegations in such second sentence to the extent they are consistent with the terms of the Subcontract and applicable federal regulations but denies the

allegations in such second sentence to the extent they are inconsistent with the terms of the Subcontract and applicable federal regulations. In further answer, Defendant D & N states upon information and belief that Walbridge caused DNS to incur substantial additional costs but failed to pay sums that Walbridge received from the Corps of Engineers to DNS and failed to pay sums that Walbridge was obligated to pay DNS for changes and claims, which were material breaches of the Subcontract that severely impacted DNS' ability to pay three subcontractors and excused performance on the part of DNS.

14. Defendant D & N is without knowledge or information sufficient to form a belief as to the truth of the allegations of numbered paragraph 14 of the Complaint.

15. Upon information and belief, Defendant D & N denies that DNS was obligated to complete its work according to various schedules imposed by Walbridge. Upon information and belief, Defendant D & N admits that DNS was obligated to provide warranty information as required by the Subcontract, to comply with federal regulations and Federal Acquisition Regulations to the extent required by the Subcontract and to complete its work stated in the Subcontract and agreed Change Orders. Upon information and belief, Defendant D & N denies the remaining allegations of numbered paragraph 15 of the Complaint.

16.    Upon information and belief, Defendant D & N admits that DNS did not fully pay sub-subcontractors because of breaches of the Subcontract by Walbridge whereby Walbridge failed to pay substantial sums to DNS.   Upon information and belief, D & N denies the remaining allegations of numbered paragraph 16 of the Complaint.

17.    Defendant D & N denies the allegations of numbered paragraph 17 of the Complaint.

<u>IBCT Project</u>

18.    Defendant D & N admits the allegations of numbered paragraph 18 of the Complaint.

19.    Defendant D & N admits that in October, 2009 Walbridge entered into a subcontract with D & N to provide certain labor, materials, and services for the electrical scope of work on the IBCT Project, but Defendant D & N denies the allegations of numbered Paragraph 19 to the extent that they allege a scope broader or different from the scope of work set forth in the Subcontract.  Defendant D & N admits that a copy of the IBCT Subcontract is attached as Exhibits B-1 and B-2 but denies that the entire Subcontract is set forth as "Exhibit B" to the Complaint.

20.    Defendant D & N denies the allegations of numbered Paragraph 20 of the Complaint.

## COUNT I

21.   Defendant D & N incorporates by reference its answers to numbered paragraphs 1 – 20 of the Complaint as if fully set forth herein.

22.   Defendant D & N denies the allegations of numbered paragraph 22 of the Complaint.

23.   Defendant D & N denies the allegations of numbered paragraph 23 of the Complaint.

24.   Defendant D & N denies the allegations of numbered paragraph 24 of the Complaint.

25.   Defendant D & N denies the allegations of numbered paragraph 25 of the Complaint.

## COUNT II

26.   Defendant D & N incorporates by reference its answers to numbered paragraphs 1 – 25 of the Complaint as if fully set forth herein.

27.   Defendant D & N denies the allegations of numbered paragraph 27 of the Complaint.

28.   Defendant D & N denies the allegations of numbered paragraph 28 of the Complaint.

29.     Defendant D & N denies the allegations of numbered paragraph 29 of the Complaint.

30.     Defendant D & N denies the allegations of numbered paragraph 30 of the Complaint.

## COUNT III

31.      Defendant D & N incorporates by reference its answers to numbered paragraphs 1 – 30 of the Complaint as if fully set forth herein.

32.     Defendant D & N denies the allegations of numbered paragraph 32 of the Complaint.

33.     Defendant D & N denies the allegations of numbered paragraph 33 of the Complaint.

34.     Defendant D & N denies the allegations of numbered paragraph 34 of the Complaint.

35.     Defendant D & N denies the allegations of numbered paragraph 35 of the Complaint.

36.     Defendant D & N denies the allegations of numbered paragraph 36 of the Complaint.

37.     Defendant D & N denies the allegations of numbered paragraph 37 of the Complaint.

## COUNT IV

38.    Defendant D & N incorporates by reference its answers to numbered paragraphs 1 – 37 of the Complaint as if fully set forth herein.

39.    Defendant D & N denies the allegations of numbered paragraph 39 of the Complaint.

40.    Defendant D & N denies the allegations of numbered paragraph 40 of the Complaint.

41.    All allegations of the Complaint, which have not hereto been specifically admitted, are denied.

## SECOND DEFENSE

The Complaint in whole or in part fails to state a claim against Defendant D & N upon which relief can be granted.

## THIRD DEFENSE

Claims in the Complaint are barred in whole or in part by estoppel as a result of acts, omissions and conduct of Walbridge and/or its officers, employees and representatives.

## **FOURTH DEFENSE**

Claims in the Complaint are barred in whole or in part by waiver as a result of acts, omissions and conduct of Walbridge and/or its officers, employees and representatives.

## **FIFTH DEFENSE**

Claims in the Complaint are barred in whole or in part by failure to satisfy conditions precedents, including, but not limited to, the following:   Walbridge failed to comply with provisions of the Subcontract, as modified by the Addendum, including, but not limited to, the following:

     a.  to have a Project Schedule agreed to by both D & N and Walbridge;

     b.  to grant adjustments to the Project Schedule for time extensions to which D & N was entitled;

     c.  to act in accordance with time being of the essence;

     d.  to reasonably cooperate with D & N so that D & N could meet the dates in the Project Schedule;

     e.  to provide a Project Schedule and any modification to such Schedule so as to allow D & N a reasonable time to complete its Work;

f. If D & N was required to perform extra work or changes to the Subcontract, to provide a written change order for such extra work or changes in a reasonable time;

g. to grant D & N an equitable adjustment to the Subcontract price and time for changes and extra work;

h. to grant D & N an equitable adjustment in the Subcontract time and price as a result of material delays and impacts caused by the negligence or intentional interference of Walbridge or any of Walbridge's other subcontractors or caused by changes to the work initiated by Walbridge;

i. where Walbridge directed D & N to add labor, expedite deliveries, work overtime and/or a second shift and D & N was not in default, to pay D & N for actual costs incurred by D & N to furnish additional labor and to expedite deliveries of materials and equipment, and the actual premium costs over the regular rates;

j. to act reasonably in taking action and making decisions;

k. to pay for equitable adjustments to which D & N was entitled under the Subcontract, as modified by the Rider;

l. to pay for the Subcontract Balance, changes and extra work;

13

m. to pursue on D & N' behalf claims of D & N for impacts and delays caused by the Owner and for changes initiated by the Owner and to pay D & N all amounts recovered by Walbridge from the Owner for D & N' claims, minus D & N' share of the cost incurred by Walbridge to pursue such claims on behalf of D & N;

n. to provide D & N, prior to backcharging for any claim or services or clean-up, a 24 hr. written notice of such services or claim and provide D & N with a reasonable opportunity to remedy any claimed problem prior to Contractor being able to charge Subcontractor for such claim or services;

o. not to require D & N to waive or release claims or changes for which it had not been paid; and

p. to provide a copy of pertinent Contract Documents between Walbridge and the Corps of Engineers upon request by D & N.

## **SIXTH DEFENSE**

Walbridge materially breached the Subcontract with D & N and, thereby, excused further performance by Defendant D & N.

## **SEVENTH DEFENSE**

Walbridge failed to mitigate damages.

## EIGHTH DEFENSE

The damages claimed by Walbridge its Complaint were not proximately caused by D & N.

## NINTH DEFENSE

The damages claimed by Walbridge were caused by Walbridge or persons or entities for which Walbridge is responsible with respect to D & N.

## TENTH DEFENSE

D & N was not a stranger to the alleged Prime Contract between Walbridge and the Corps of Engineers for the IBCT Project, and, therefore, Walbridge is barred from pursuing or recovering against D & N for alleged tortious interference with such Prime Contract.

## ELEVENTH DEFENSE

Walbridge's claims are barred in whole or in part by laches.

## TWELFTH DEFENSE

Walbridge failed to give D & N notice of alleged breaches and failed to provide D & N a reasonable opportunity to investigate remedy alleged breaches prior to costs being incurred for claims alleged in the Complaint. Such failures on the part of Walbridge have been prejudicial to D & N and bar claims of Walbridge in whole or in part.

## THIRTEENTH DEFENSE

Walbridge breached the Subcontract with D & N, as more fully set forth in D & N's Counterclaim, which is incorporated herein by reference.

## FOURTEENTH DEFENSE

D & N is entitled to a set-off, offset and/or recoupment for the amount of its claims in D & N's Counterclaim.  The allegations of D & N's Counterclaim are incorporated herein by reference.

WHEREFORE, D & N prays for relief as follows with respect to the Complaint:

a)   that the Court grant a judgment in favor of Defendant D & N and against Plaintiff Walbridge on all counts;

b)   that the Court dismiss with prejudice all counts of the Complaint in their entirety as to Defendant D & N;

c)   that the Court grant D & N its costs in defending this action; and

d)   that the Court grant such other and further relief as the Court deems just and proper.

s/Ronald J. Garber
Georgia Bar No. 283838
Attorney for Defendant and Counter-
Plaintiff D & N Electric Company
Weissmann Zucker Euster Morochnik P.C.
One Securities Centre, Suite 650

3490 Piedmont Road
Atlanta, Georgia 30305
404-760-7425 direct
404-364-2320 facsimile
ron@wzlegal.com

## COUNTERCLAIM

D & N ELECTRIC COMPANY, Defendant and Counterclaim-Plaintiff, hereby files its Counterclaim against Plaintiff/Counterclaim-Defendant, WALBRIDGE ALDINGER COMPANY, as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Counterclaim-Plaintiff D & N Electric Company ("D & N") is a corporation duly incorporated under the laws of the State of Georgia with its principal place of business in Georgia.

2.     Counterclaim-Defendant WALBRIDGE ALDINGER COMPANY ("Walbridge") is a corporation incorporated under the laws of the State of Michigan with its principal place of business in Michigan. Counterclaim-Counter-Defendant Walbridge having filed its Complaint in this action is subject to the jurisdiction of this Court.

3.     The Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 since D & N is a corporation incorporated in the state of Georgia with its principal place of business in Georgia and Walbridge is incorporated in and has its principal places

of business in Michigan.

4.      Venue is proper in this District under 28 U.S.C. §1391(b) since Defendant's registered agent resides in the Northern District of Georgia.

COUNT ONE

BREACH OF CONTRACT

5.      The allegations of Paragraphs 1 through 5 of the Counterclaim are incorporated herein by reference as if all such paragraphs were fully stated herein.

6.      Walbridge entered into a contract (the "Prime Contract") with the United States Army Engineer District Savannah (the "Corps of Engineers") for the construction of a project known as 5th Infantry Brigade Team Complex, Contract No. W912HN-07-D-0054, Task Order 0006, located at Ft. Stewart, Georgia (the "IBCT Project").

7.      D & N and Walbridge entered into a subcontract agreement dated September 21, 2009 (the Subcontract") for certain labor, materials, work and services (hereinafter referred to as the "Work") for the installation of electrical and fire alarm systems for the Project.  The Subcontract, a copy of which is attached as Exhibits "B-1" and "B-2", is incorporated herein by reference.

8.      The Subcontract included an Addendum, which is incorporated herein by reference.  A copy of the Addendum, as part of the Subcontract, is included in

Exhibit "B-2" to the Complaint.

9.      Paragraph 30 of the Addendum provided that:

In the event of conflict between the provisions of the Subcontract or other Contract Documents and the provisions of the Addendum, the provisions of the Addendum shall govern.

10.     Paragraph 6 of the Addendum modified Article V of the Subcontract to read as follows (with changes by the Addendum shown by underlining):

Completion of the Work and its several parts within the time allotted for such Work under the Agreement Between Owner and Contractor is of the essence of this Subcontract. Therefore, Subcontractor agrees: (a) to provide at the Project Site the materials, equipment, labor and supervision necessary and to begin the Work upon Contractor's order to do so, (b) to perform the Work and all parts thereof promptly, diligently, in accordance with the Project Schedule as agreed to by both Contractor and Subcontractor, and adjusted for time extensions to which Subcontractor is entitled (c) to conduct its Work and perform all activities incidental thereto so as to facilitate and so as not to interfere with or delay the Work of the Owner, the Contractor or other subcontractors on the Site, (d) to keep itself continually informed of the progress of the Project and to confer with Contractor so as to plan its Work in coordinated sequence with the work of Contractor and others, (e) if the Project is divided into parts, to perform Work in several or all parts simultaneously, if directed to do so by Contractor, and (f) to furnish sufficient forces, supervision, equipment and materials, at such times and for such periods, as will result in progress according to the progress schedule prepared by the Contractor pursuant to the Agreement Between Owner and Contractor (the "Approved Progress Schedule") as agreed to by Subcontractor and as adjusted for time extensions to which Subcontractor is entitled. Contractor reserves the right to reasonably modify any such Approved Progress Schedule with respect to the required sequence or duration of

the Work or any portion thereof, <u>subject to the other terms of the Subcontract.</u>

11.    Paragraph 7 of the Addendum modified Article V of the Subcontract to read as follows (with changes by the Addendum shown by underlining):

> Subcontractor shall furnish additional labor, expedite deliveries of materials and equipment, work overtime and/or a second shift and/or holidays and weekends if directed to do so by Contractor.  If the Subcontractor is in default of any provision herein and the Contractor determines such items are required to maintain satisfactory job progress, such additional labor, expediting, overtime, second shift or holiday and weekend work shall be provided by Subcontractor at no cost to the Contractor.  If the Subcontractor is not in default of any provision herein, the Contractor shall pay the Subcontractor the actual costs incurred by the Subcontractor to furnish additional labor and to expedite deliveries of materials and equipment, and the actual extra cost over the rate for regular time for overtime work.  All such costs shall be substantiated by invoices and time slips checked and approved on a daily basis by Contractor.  <u>Except as otherwise provided in this Subcontract,</u> Subcontractor shall not be entitled to receive any amount for overhead or profit or for any inefficiencies or loss of productivity and shall not assert any claim for overhead or profit or damages due to loss of productivity or inefficiencies.

12.    Paragraph 9 of the Addendum modified Article V of the Subcontract to add the following:

> Time is of the essence for both Contractor and Subcontractor. Contractor shall reasonably cooperate with Subcontractor so that Subcontractor can meet the dates in the Project Schedule.

The Project Schedule and any modification to such Schedule shall allow Subcontractor a reasonable time to complete Subcontractor's Work.

13.     Paragraph 10 of the Addendum modified Article V of the Subcontract to add a fourth paragraph of Article V.  The first sentence of such fourth paragraph provides that:

Subcontractor shall be entitled to make a claim for an equitable adjustment in the Subcontract time and price as a result of material delays and impacts caused by the negligence or intentional interference of Contractor or any of Contractor's other subcontractors or caused by changes to the work initiated by Contractor.

14.     Paragraph 12 of the Addendum added the following provision to Article VII of the Subcontract:

If Subcontractor is required in writing to perform extra work or changes to the Subcontract, Contractor shall provide a written change order for such extra work or changes in a reasonable time. In the event that Subcontractor is required in writing to perform work that Subcontractor believes is additional work, Subcontractor shall be entitled to a Change Order request or a claim, provided Subcontractor provides written notice to Contractor prior to performing such work that Subcontractor considers such work to be extra work or a change to the Subcontract.

15.     Paragraph 13 of the Addendum modified Article V of the Subcontract to read as follows (with the changes by Addendum shown by underlining):

Any adjustment to the Subcontract Price or to the time for completion of the Work shall be made in accordance with the applicable provisions of the Agreement Between Owner and Contractor and the lump sum or unit prices set forth in Exhibit E or, in the absence of such provisions on an agreed, equitable basis.  Notwithstanding any inability to agree upon any adjustment or the basis for an adjustment, Subcontractor shall, if directed by Contractor, nevertheless proceed in accordance with the order, and the Subcontract Price shall be <u>equitably</u> adjusted <u>and any dispute to be resolved in accordance with the Subcontract.</u>

16.     Paragraph 24 of the Addendum added the following as paragraph

(o) to Article XXVIII:

Should either party employ an attorney to institute litigation or arbitration to enforce any provision of this Subcontract or to collect any amount due under this Subcontract or damages for breach of this Subcontract, the prevailing party shall be entitled to recover its reasonable attorney's fees, costs and expenses incurred.

17.     Paragraph 23 of the Addendum added the following as paragraph

(n) to Article XXVIII:

Where any provision of the Subcontract allows action, decisions, directions or opinions of the Contractor, such actions, decisions, directions and opinions shall be reasonable.

18.     Paragraph 26 of the Addendum added the following as paragraph

(q) to Article XXVIII:

Prior to backcharging Subcontractor for any claim or services or clean-up, Contractor shall provide Subcontractor with a 24 hr. written notice of such services or claim and provide Subcontractor with a reasonable opportunity to remedy any claimed problem

prior to Contractor being able to charge Subcontractor for such claim or services.

19.     Walbridge had express obligations under the Subcontract, as modified by the Addendum, including, but not limited to, the following:

    a.  to have a Project Schedule agreed to by both D & N and Walbridge;

    b.  to grant adjustments to the Project Schedule for time extensions to which D & N was entitled;

    c.  to act in accordance with time being of the essence;

    d.  to reasonably cooperate with D & N so that D & N could meet the dates in the Project Schedule;

    e.  to provide a Project Schedule and any modification to such Schedule so as to allow D & N a reasonable time to complete its Work;

    f.  If D & N was required to perform extra work or changes to the Subcontract, to provide a written change order for such extra work or changes in a reasonable time;

    g.  to grant D & N an equitable adjustment to the Subcontract price and time for changes and extra work;

    h.  to grant D & N an equitable adjustment in the Subcontract time and price as a result of material delays and impacts caused by the negligence or intentional interference of Walbridge or any of

Walbridge's other subcontractors or caused by changes to the work initiated by Walbridge;

i.   where Walbridge directed D & N to add labor, expedite deliveries, work overtime and/or a second shift and D & N was not in default, to pay D & N for actual costs incurred by D & N to furnish additional labor and to expedite deliveries of materials and equipment, and the actual premium costs over the regular rates;

j.   to act reasonably in taking action and making decisions;

k.   to pay for equitable adjustments to which D & N was entitled under the Subcontract, as modified by the Addendum;

l.   to pay for the Subcontract Balance, changes and extra work; and

m.   to provide D & N, prior to backcharging for any claim or services or clean-up, a 24 hr. written notice of such services or claim and provide D & N with a reasonable opportunity to remedy any claimed problem prior to Contractor being able to charge Subcontractor for such claim or services.

20.   Walbridge also had implied obligations under the Subcontract, including, but not limited to, the following:

a.   to cooperate with D & N and to act in good faith; and

24

b.      not to delay, hinder or interfere with the performance of D & N's work.

21.     In addition to its rights and remedies under the Subcontract, Paragraph 1 of the Addendum added language as follows:

> Subcontractor shall have the benefit of all rights and remedies against Contractor that Contractor has against Owner under the Contract Documents between Owner and Contractor.

22.     Therefore, to the extent that Walbridge had rights and remedies for time extensions and additional compensation for delays, impacts and changes against the Owner under the Prime Contract, D & N also has such rights and remedies for time extension and additional compensation from Walbridge by virtue of Paragraph 1 of the Addendum.  Such rights and remedies are in addition to all rights and remedies that D & N has under the Subcontract and by applicable law.

23.     Walbridge breached its express and implied contractual obligations under the Subcontract by its acts, omissions and conduct and/or the acts, omissions and conducts of its employees, officers, agents or persons and entities for which it is responsible, including, but not limited to the following acts, omissions and/or conduct:

25

a.   requiring and imposing a Project Schedule that was not agreed to by D & N;

b.   failing to grant adjustments to the Project Schedule for time extensions to which D & N was entitled;

c.   failing to perform its work and to have its other subcontractors perform their work so that work of preceding trades to D & N would be performed in accordance with the agreed upon Schedule;

d.   failing to act in accordance with time being of the essence;

e.   failing to reasonably cooperate with D & N so that D & N could meet the dates in the Project Schedule;

f.   failing to provide a Project Schedule and any modification to such Schedule so as to allow D & N a reasonable time to complete its Work;

g.   requiring D & N to perform extra work and changes to the Subcontract but failing to provide a written change order for such extra work and changes in a reasonable time;

h.   failing to grant D & N an equitable adjustment to the Subcontract price and time for changes and extra work;

i.      failing to grant D & N equitable adjustments in the Subcontract time and price as a result of material delays and impacts caused by the negligence or intentional interference of Walbridge or any of Walbridge's other subcontractors or caused by changes to the work initiated by Walbridge;

j.      directing D & N to add labor, expedite deliveries, work overtime and/or a second shift when D & N was not in default but failing and refusing to pay D & N for actual costs incurred by D & N to furnish additional labor and to expedite deliveries of materials and equipment, and the actual premium costs over the regular rates;

k.      failing to act reasonably in taking action and making decisions;

l.      failing to pay D & N for equitable adjustments to which D & N was entitled under the Subcontract, as modified by the Addendum;

m.      failing to pay D & N for impact and delays caused by changes to the Subcontract initiated by Walbridge;

n.      failing to pay D & N for its Subcontract Balance and for changes and extra work;

o.      failing to provide D & N, prior to backcharging for any claim or services or clean-up, a 24 hr. written notice of such services or

claim and provide D & N with a reasonable opportunity to remedy any claimed problem prior to Contractor being able to charge Subcontractor for such claim or services.

p.      failing to cooperate with D & N and to act in good faith; and

q.      delaying, hindering and interfering with the performance of D & N's work.

24.     Walbridge changed the Subcontract, but failed to issue Change Orders as required by the Subcontract and failed to equitably adjust the Subcontract Price for such changes and to pay D & N for such changes and thereby also breached the Subcontract.

25.     Walbridge and/or its other subcontractors intentionally interfered with the work of D & N and Walbridge was negligent in its scheduling, supervision, administration and management of the Project, causing material delay and impact to D & N.   Walbridge also initiated changes to the Subcontract that materially delayed and impacted D & N.   Such changes included, but were not limited to, changes in scope, changes in design, changes in the schedule, changes in the manner and sequence of D & N's work and the work of Walbridge and its other subcontractors.

26.     Walbridge issued Change Orders for backcharges without giving D &

N prior written notice as required by the Subcontract, which prejudiced D & N in investigating the claimed condition and costs prior to corrective work being performed and in having an opportunity to minimize corrective costs if such investigation revealed that D & N was the cause of the condition requiring the corrective work.

27.   Despite requests by D & N for supporting documentation for Walbridge's backcharges, Walbridge also refused to provide D & N with proper and complete documentation to support the claimed backcharges.

28.   Walbridge required that D & N sign Change Order Nos. 17 through 20 that contained a total of $38,988.48 of backcharges before Walbridge would issue and sign Change Order No. 21 for MOD 18 – Mass Notification System, although Walbridge had not provided prior written notice of backcharges as required by the Subcontract and although MOD 18 was approved by the Corps of Engineers as a change to the Prime Contract, although Walbridge had acknowledged and approved MOD 18 as a change to the Subcontract, and although Walbridge had acknowledged and approved  $197,873.33 as the amount for D & N for such change.   Because Walbridge was refusing to pay for a change, which it had acknowledged was due to D & N for work performed, unless D & N allowed backcharges of Walbridge, D & N was forced under economic duress to sign

Change Order Nos. 17 – 20 for such backcharges although such backcharges were not proper or supported.   Walbridge engaged in unlawful conduct by violating the requirements of the Subcontract for prior notice of backcharges and then refusing to pay D & N for acknowledged and approved changed work unless D & N signed Change Orders for Walbridge's backcharges contained in Change Order Nos. 17 - 20.   Therefore, such Change Orders should be voided, and D & N should be awarded the full amount of $197,873.33 for MOD 18 for the Mass Notification System, which would result in an increase in the unpaid Subcontract Balance by $38,988.48.

29.    Walbridge intentionally, recklessly or negligently made material misrepresentations and false statements to D & N as to 1) the correctness of Walbridge's backcharges and 2) D & N's right to challenge the backcharges later. Walbridge represented to D & N that a meeting would be held by Walbridge with D & N and Walbridge's other subcontractors where each subcontractor would discuss and justify its backcharges through Walbridge against D & N and D & N would discuss and justify its backcharges to Walbridge due to damage or costs caused by other subcontractors to Walbridge.  Such representations and statements were false in that 1) Walbridge submitted inflated invoices for its painting subcontractor rather than invoices that had originally been presented by the

painting subcontractor to Walbridge, and 2) Walbridge never scheduled or held the meeting with the subcontractors to discuss backcharges of other subcontractors or charges that D & N had against Walbridge for acts and/or omissions of Walbridge's other subcontractors and did not intend to allow D & N to challenge the invoices of the other subcontractors.  Walbridge intended D & N to rely upon its statements as set forth above, and D & N reasonably relied upon such invoices by signing Change Orders.  D & N has been damaged by such misrepresentations and false statements because its Subcontract Price and unpaid Subcontract Balance have wrongfully been reduced.  Therefore, Change Orders for Walbridge's backcharges should be voided, and D & N should be awarded the full amount of $82,245.35 for such Change Orders, which would result in an increase in the unpaid Subcontract Balance by $82,245.35, or $43,256.87 if the increase of $38,988.48 is allowed for Change Order Nos. 17 – 20 as set forth in paragraphs 27 – 30 of the Complaint.

30.    As a result of such improper and wrongful backcharges and such misrepresentations and false statements by Walbridge, D & N's Subcontract Price for the original Subcontract price and Change Orders 1 through 21 was wrongfully reduced by $82,245.35, which wrongfully reduced the unpaid Subcontract Balance for the original Subcontract price and Change Orders 1 through 21 from

$87,858.03 to $5,612.68.

31.   As a direct and proximate result of Walbridge's breaches of the Subcontract and breaches of its express and implied obligations under the Subcontract, D & N has been damaged in the principal amount of at least $12,932,038.90, plus the amount of $82,245.35 for improper back charges of Walbridge, for a total principal amount of damages of $13,014,284.25.  The above amount of $12,932,038.90 includes, but is not limited to, additional labor costs, additional rental equipment costs, extended duration costs, overhead and profit on such costs, change orders, changes and extra work not paid and unpaid Subcontract Balance.

32.   All of D & N's work for the Project has been accepted by Walbridge and the Owner.

33.   D & N has demanded payment, but Walbridge has refused and failed to pay the amount due.

34.   To date, D & N has not been paid at least $13,014,284.25 for its work for the Project, which amount is past due and presently owing under the Subcontract.

35.   D & N considers this transaction to be a commercial account. Therefore, to the extent that O.C.G.A. § 7-4-16 applies, D & N is entitled to

recover interest accrued on the outstanding balance Walbridge owes D & N for work performed for the Project at the rate of one and one-half percent (1.5%) per month from the date the principal balance became due through the date of judgment.

36.    Under the Subcontract D & N is entitled to recover its reasonable attorney's fees, costs and expenses incurred to enforce any provision of the Subcontract or to collect any amount due under the Subcontract or due for damages for breach of the Subcontract.

37.    All conditions precedent to D & N's entitlement to recover the amount due have occurred, been performed, or have otherwise been waived, satisfied, excused or frustrated.

38.    Therefore, D & N is entitled to recover from Walbridge the principal amount of at least $13,014,284.25, or such other amount to be proven at trial, plus interest at the rate of one and one-half percent per month from the date such amount was due, or in the alternative, if such interest rate is not allowed, interest on the amount due at the rate allowed by applicable law from the date that payment was due, plus post-judgment interest as allowed by law, costs of this action and reasonable attorney's fees, costs and expenses.

<u>COUNT TWO</u>

<u>QUANTUM MERUIT</u>

<u>(IN THE ALTERNATIVE TO COUNT ONE)</u>

39.    The allegations of Paragraphs 1 through 6 of the Counterclaim are incorporated herein by reference as if all such paragraphs were fully set forth herein.

40.    At the request and direction of Walbridge, and with Walbridge's knowledge and consent, D & N provided the labor, materials, work and services requested by Walbridge in furtherance of the Project with a full expectation of receiving reasonable and equitable compensation for said labor, materials, work and services.

41.    Walbridge accepted and benefited from the labor, materials, work and services D & N provided in furtherance of the Project.

42.    Since D & N rendered valuable services, labor materials and work to Walbridge for the Project, which were accepted by Walbridge, there was also an implied promise of Walbridge to pay the reasonable value of such services, labor, materials and work under O.C.G.A. §9-2-7.

43.    The reasonable principal value of the labor, materials, work and services provided for the benefit of Walbridge in furtherance of the Project for which D & N has not been paid totals at least $13,014,284.25.

44.     Despite D & N's demand for payment, Walbridge has not paid D & N the amount due for the labor, materials, work and services D & N provided Walbridge in furtherance of the Project.

45.     D & N is entitled to interest on the principal amount due at the rate allowed by law from the date such principal was due.

46.     Therefore, D & N is entitled to recover from Walbridge in the amount of at least $13,014,284.25, or such other amount to be proven at trial, plus interest by applicable law from the date that payment was due, plus post-judgment interest as allowed by law and costs of this action.

WHEREFORE, D & N respectfully prays that this Court grant it the following relief on its Counterclaim:

47.     (a)     Judgment in favor of D & N against Counter-Defendant Walbridge pursuant to Count One in the principal amount of at least $13,014,284.25, or such other amount to be proven at trial, plus pre-judgment interest at the rate of one and one-half percent (1.5%) per month from the date the amount became due to the date of judgment, or if such interest rate is not allowed, at the rate allowed by applicable law from the date such amount was due until paid, plus reasonable attorney's fees, costs and expenses.

(b)     In the alternative to Count One, judgment in favor of D & N against Counter-Defendant Walbridge for quantum meruit pursuant to Count Two in the principal amount of at least $13,014,284.25, or such greater or other amount to be proven at trial, plus pre-judgment interest by applicable law from the date that payment was due, post-judgment interest as allowed by law and costs of this action;

(d)     That all issues triable to a jury be tried to a jury; and

(e)     That the Court grant such further and other relief as this Court deems just and proper.

Respectfully submitted, this 26th day of January, 2012.

s/Ronald J. Garber
Georgia Bar No. 283838
Attorney for Defendant and Counter-
Plaintiff D & N Electric Company
Weissmann Zucker Euster Morochnik P.C.
One Securities Centre, Suite 650
3490 Piedmont Road
Atlanta, Georgia 30305
404-760-7425 direct
404-364-2320 facsimile
ron@wzlegal.com

DEMAND FOR JURY TRIAL

Defendant and Counter-Plaintiff D & N Electric Company hereby demands a trial by jury on all issues in this action and in the Counterclaim that are triable to a jury.

Respectfully submitted, this 26th day of January, 2012.

s/Ronald J. Garber
Georgia Bar No. 283838
Attorney for Defendant and Counter-Plaintiff D & N Electric Company
Weissmann Zucker Euster Morochnik P.C.
One Securities Centre, Suite 650
3490 Piedmont Road
Atlanta, Georgia 30305
404-760-7425 direct
404-364-2320 facsimile
ron@wzlegal.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Walbridge Aldinger Company,

                      Plaintiff,

v.

D & N Electric Company, D & N
Consolidated, Inc., and Matthew
Armstrong, Individually,

                      Defendants.

Civil Action File
No. 1:11-CV-04602-ODE

## **CERTIFICATE OF SERVICE AND COMPLIANCE**

I hereby certify that on this 26th day of January, 2012, I electronically filed the foregoing <u>Defendant D & N Consolidated, Inc.'s Answer And Counterclaim</u> with the Clerk of Court using the CM/ECF system, which will automatically send notice to the below attorney of record:

Eric L. Nelson
elnelson@smithcurrie.com
Douglas L. Tabeling
dltabeling@smithcurrie.com
SMITH, CURRIE & HANCOCK LLP
2700 Marquis One Tower
245 Peachtree Center Ave. NE
Atlanta, GA 30303-1227
404-521-3800 telephone
404-688-0671 facsimile

Brian J. Duva
bduva@mfllaw.com
MOZLEY, FINLAYSON & LOGGINS LLP
One Perimeter Plaza, Suite 900
5605 Glenridge Drive
Atlanta, Georgia 30342
404-256-0700 telephone
404-250-9355 facsimile


The undersigned hereby also certifies that, pursuant to Local Rule 7.1 D, ND

Ga., the attached pleading has been prepared in Times New Roman, 14 point font,

a font and point selection approved by this court in Local Rule 5.1 B, ND Ga.

s/Ronald J. Garber
Georgia Bar No. 283838
Attorney for Defendant
D & N Consolidated, Inc.
Weissmann Zucker Euster Morochnik P.C.
One Securities Centre, Suite 650
3490 Piedmont Road
Atlanta, Georgia 30305
404-760-7425 direct
404-364-2320 facsimile
ron@wzlegal.com