IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Walbridge Aldinger Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| v. | ) | 1:11-CV-04602-ODE |
| | ) | |
| D&N Electric Company, DNS | ) | |
| Consolidated, Inc., and Matthew | ) | |
| Armstrong, Individually, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT DNS CONSOLIDATED, INC.'S INITIAL DISCLOSURES

Pursuant to Fed. R. Civ. P. 26(a), Defendant DNS Consolidated, Inc. ("DNS" or "Defendant") hereby submits the following responses to the required initial disclosures:

1.

If the Defendant is improperly identified, state the Defendant's correct identification and state whether Defendant will accept service of an Amended Summons and Complaint reflecting the information furnished in this disclosure response.

Response:

This Defendant has been properly named in this matter.

2.

Provide the names of any parties whom Defendant contends are necessary parties to this action, but who have not been named by Plaintiff.  If Defendant contends there is a question of misjoinder of parties, provide the reasons for Defendant's contention.

Response:

Defendant will need discovery of the allegations in Plaintiff's Complaint to determine if there are necessary parties to this action that have not been named by Plaintiff.

3.

Provide a detailed factual basis for the defense or defenses and any counterclaims or cross-claims asserted by Defendant in the responsive pleading.

Response:

This Defendant did not breach its contract with Plaintiff as alleged in Plaintiff's Complaint.   Rather, DNS performed its obligations under the Subcontract to the extent it was permitted by Plaintiff.  Further, as detailed in Paragraph 10 of its Answer to Plaintiff's Complaint, and throughout the remainder of the Answer, Plaintiff breached the express and implied provisions of the Subcontract between Plaintiff and DNS.   DNS's Counterclaim, which is incorporated herein by reference, and the factual basis below provide the factual

basis for its contention that Plaintiff breached the Subcontract in question.   The Counterclaim also provides several Subcontract provisions and implied contractual obligations that were breached by Plaintiff.   Based on such breaches, Plaintiff is barred from recovery in the current lawsuit.   Plaintiff also failed to pay DNS substantial amounts that impaired DNS' ability to pay certain subcontractors. Claims in the Complaint are barred in whole or in part by estoppel and waiver as a result of acts, omissions and conduct of Walbridge and/or its officers, employees and representatives.   Such acts, omissions and conduct include, but, are not limited to facts set forth in Paragraph 10 of DNS' Answer and the facts set forth in DNS' Counterclaim.

Claims in the Complaint are barred in whole or in part by failure to satisfy conditions precedent and by breaches of the Subcontract by Plaintiff Walbridge, including, but not limited to, the following:   Walbridge failed to comply with provisions of the Subcontract, as modified by the Rider, including, but not limited to, the following:

     a.  to have a Project Schedule agreed to by both DNS and Walbridge;

     b.  to grant adjustments to the Project Schedule for time extensions to which DNS was entitled;

     c.  to act in accordance with time being of the essence;

d.  to reasonably cooperate with DNS so that DNS could meet the dates in the Project Schedule;

e.  to provide a Project Schedule and any modification to such Schedule so as to allow DNS a reasonable time to complete its Work;

f.  If DNS was required to perform extra work or changes to the Subcontract, to provide a written change order for such extra work or changes in a reasonable time;

g.  to grant DNS an equitable adjustment to the Subcontract price and time for changes and extra work;

h.  to grant DNS an equitable adjustment in the Subcontract time and price as a result of material delays and impacts caused by the gross negligence or intentional interference of Walbridge or any of Walbridge's other subcontractors or caused by changes to the work initiated by Walbridge;

i.  where Walbridge directed DNS to add labor, expedite deliveries, work overtime and/or a second shift and DNS was not in default, to pay DNS for actual costs incurred by DNS to furnish additional labor and to expedite deliveries of materials and equipment, and the actual premium costs over the regular rates;

j.  to act reasonably in taking action and making decisions;

k.  to pay for equitable adjustments to which DNS was entitled under the Subcontract, as modified by the Rider;

l.  to pay for the Subcontract Balance, changes and extra work;

m. to pursue on DNS' behalf claims of DNS for impacts and delays caused by the Owner and for changes initiated by the Owner and to pay DNS all amounts recovered by Walbridge from the Owner for DNS' claims, minus DNS' share of the cost incurred by Walbridge to pursue such claims on behalf of DNS;

n.  to provide DNS, prior to backcharging for any claim or services or clean-up, a 24 hr. written notice of such services or claim and provide DNS with a reasonable opportunity to remedy any claimed problem prior to Contractor being able to charge Subcontractor for such claim or services;

o.  not to require DNS to waive or release claims or changes for which it had not been paid; and

p.  to provide a copy of pertinent Contract Documents between Walbridge and the Corps of Engineers upon request by DNS.

Walbridge materially breached the Subcontract with DNS and, thereby, excused further performance by Defendant DNS.

Walbridge failed to mitigate damages. Walbridge did not properly or adequately manage, administer or schedule the Project so as to avoid or minimize delays and impacts.

The damages claimed by Walbridge in its Complaint were not proximately caused by DNS.

Walbridge's claims are barred in whole or in part by laches because Walbridge did not timely notify DNS of the alleged charges and did not provide DNS with a reasonable opportunity to investigate and cure the alleged problems before costs were incurred by Walbridge.  Walbridge's claims are also barred in whole or in part by laches because Walbridge caused DNS to incur substantial additional costs and failed to pay DNS the amounts due to DNS for an unreasonable and lengthy time so as to impair DNS' ability to pay certain subcontractors.

Walbridge failed to give DNS prior written notice of alleged incomplete, nonconforming, or defective work, alleged damages to other work, alleged failure to comply with the Buy-American Act, alleged failure to provide warranties and alleged failure to meet the schedule required by the Subcontract

and failed to provide DNS with a reasonable opportunity to investigate and remedy any such claimed problem prior to any costs being incurred for the claims alleged in the Complaint.  Such failures on the part of Walbridge have been prejudicial to DNS and bar claims of Walbridge in whole or in part.

The damages claimed by Walbridge were caused by Walbridge or persons or entities for which Walbridge is responsible with respect to DNS.  Walbridge did not properly or adequately manage, administer or schedule the Project so as to avoid or minimize delays and impacts.

Walbridge failed to timely and fully pay DNS.

DNS was not a stranger to the alleged Prime Contract between Walbridge and the Corps of Engineers for the Armed Forces Reserve Center Project at Ft. Benning, Georgia (the "Project"), and, therefore, Walbridge is barred from pursuing or recovering against DNS for alleged tortious interference with such Prime Contract.

DNS is entitled to a set-off, offset and/or recoupment for the amount of its claims in DNS' Counterclaim.  The facts set forth in DNS' Counterclaim are incorporated herein by reference.

DNS and its employees never assaulted any project manager of Plaintiff as alleged in the Complaint.  The alleged assault was a brief physical altercation initiated by an agent of Plaintiff.

DNS did not interfere with the contract between Plaintiff and U.S. Army Corps of Engineers as alleged.  DNS was not a stranger to said contract.

Walbridge had express obligations under the Subcontract, as modified by the Rider, as more fully set forth in the Counterclaim, which is incorporated herein by reference.   Walbridge also had implied obligations under the Subcontract, including, but not limited to cooperate with DNS and to act in good faith; and not to delay, hinder or interfere with the performance of DNS's work.

Walbridge breached its express and implied contractual obligations under the Subcontract by its acts, omissions and conduct and/or the acts, omissions and conducts of its employees, officers, agents or persons and entities for which it is responsible, including, but not limited to the following acts, omissions and/or conduct: requiring and imposing a Project Schedule that was not agreed to by DNS; failing to grant adjustments to the Project Schedule for time extensions to which DNS was entitled; failing to perform its work and to have its other subcontractors perform their work so that work of preceding trades to DNS would be performed in accordance with the agreed upon Schedule; failing to act in accordance with time being of the essence; failing to reasonably cooperate with DNS so that DNS could meet the dates in the Project Schedule; failing to provide a Project Schedule and any modification to such Schedule so as to allow DNS a reasonable time to complete its Work;  requiring DNS to perform extra work and

changes to the Subcontract but failing to provide a written change order for such extra work and changes in a reasonable time;   failing to grant DNS equitable adjustments to the Subcontract price and time for changes and extra work; failing to grant DNS equitable adjustments in the Subcontract time and price as a result of material delays and impacts caused by the gross negligence or intentional interference of Walbridge or any of Walbridge's other subcontractors or caused by changes to the work initiated by Walbridge; directing DNS to add labor, expedite deliveries, work overtime and/or a second shift when DNS was not in default but failing and refusing to pay DNS for actual costs incurred by DNS to furnish additional labor and to expedite deliveries of materials and equipment, and the actual premium costs over the regular rates; failing to act reasonably in taking action and making decisions; failing to pay DNS for impact and delays caused by Walbridge and/or its other subcontractors; failing to pay DNS for impact and delays caused by changes to the Subcontract initiated by Walbridge; failing to pay DNS for its Subcontract Balance and for changes and extra work;   failing to provide DNS, prior to backcharging for any claim or services or clean-up, a 24 hr. written notice of such services or claim and provide DNS with a reasonable opportunity to remedy any claimed problem prior to Contractor being able to charge Subcontractor for such claim or services;  refusing to change language that Walbridge included in proposed Change Orders that would have required

DNS to waive or release claims or changes for which it had not been paid and refusing to pay DNS for such changes unless DNS signed Change Orders with language that required DNS to waive and release unpaid changes and claim; failing to provide DNS a copy of pertinent Change Orders between Walbridge and the Corps of Engineers despite request by DNS; failing to cooperate with DNS and to act in good faith; and delaying, hindering and interfering with the performance of DNS's work. Also, Walbridge changed the Subcontract, but failed to issue Change Orders as required by the Subcontract and failed to equitably adjust the Subcontract Price for such changes and to pay DNS for such changes and thereby also breached the Subcontract. Walbridge and/or its other subcontractors intentionally interfered with the work of DNS and Walbridge was grossly negligent in its scheduling, supervision, administration and management of the Project, causing material delay and impact to DNS. Walbridge also initiated changes to the Subcontract that materially delayed and impacted DNS.  Such changes included, but were not limited to, changes in scope, changes in design, changes in the schedule, changes in the manner and sequence of DNS' work and the work of Walbridge and its other subcontractors.

As a direct and proximate result of Walbridge's breaches of the Subcontract and breaches of its express and implied obligations under the Subcontract, DNS

has been damaged in the principal amount of at least $1,270,558.39.  Such amount includes, but is not limited to, additional labor costs, additional rental equipment costs, extended duration costs, overhead and profit on such costs, change orders , changes and extra work not paid and unpaid Subcontract Balance.  Such amount does not include interest, attorney's fees or costs incurred in connection with this action.  Upon information and belief, after DNS submitted its claim to Walbridge for such claim of $1,270,558.39, plus interest and attorney's fees, Walbridge paid Net Planner System, Inc., a subcontractor to DNS for the Project, the amount of $355,252.00 and AFA Protective Services, a subcontractor to DNS for the Project, the amount of $108,727.20.  After allowing credit for these amounts if paid by Walbridge to Net Planer Net Planner System, Inc. and AFA Protective Services, the principal amount of at least $806,579.19, or such other amount to be proven at trial plus interest, is still past due and owing to DNS.   If such amounts have not been paid by Walbridge, such credit will be reduced, depending on the amount actually paid by Walbridge.  DNS is still reviewing its additional costs and damages and reserves the right to supplement and amend the amount claimed against Walbridge.  DNS seeks interest on the principal amount due and also seeks its reasonable attorney's fees, costs and expenses pursuant to the Subcontract.

In the alternative to breach of contract, DNS seeks to recover under quantum meruit for labor, materials, work and services that DNS provided at the request and

direction of Walbridge, and with Walbridge's knowledge and consent.  Walbridge accepted and benefited from the labor, materials, work and services DNS provided in furtherance of the Project.  Since DNS rendered valuable services, labor materials and work to Walbridge for the Project, which were accepted by Walbridge, there was also an implied promise of Walbridge to pay the reasonable value of such services, labor, materials and work under O.C.G.A. §9-2-7.  The reasonable principal value of the labor, materials, work and services provided for the benefit of Walbridge in furtherance of the Project for which DNS has not been paid totals at least $806,579.19, or such other amount to be proven at trial.   DNS also seeks interest on the amount due.

Since discovery is just commencing, Defendant DNS reserves the right to supplement this response with the factual bases for its defenses as the evidentiary record is further developed.

4.

Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which Defendant contends are applicable to this action.

<u>Response</u>:

The Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Local Court Rules for the United States District Court for the Northern District

of Georgia will govern the procedural and evidentiary aspects of Plaintiff's breach of contract cause of action against this Defendant and Plaintiff's tort cause of action against this Defendant, Defendant's defenses and affirmative defenses to such breach of contract cause of action and tort cause of action, Defendant-Counter-Plaintiff's causes of action in its Counterclaim and Plaintiff-Counterclaim Defendant's defenses and affirmative defenses to such causes of action in the Counterclaim. Common law principles as to breach of contract and implied contractual obligations are applicable to Count One of DNS's Counterclaims and to defenses and affirmative defenses of DNS to the claims in Plaintiff's Complaint. O.C.G.A. §9-2-7 applies to DNS' Count Two of its Counterclaim. Interest is to be determined under the applicable statutes regarding interest. Defendant's attorneys are still analyzing applicable legal principles, statutes and cases, and Defendant reserves its right to supplement its Disclosures.

5.

Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A).

<u>Response</u>:

Please see Attachment "A."

6.

Provide the name of any person who may be used at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence.  For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule.  (Attach expert witness list and written reports to Initial Disclosures as Attachment B).

Response:

Defendant has not made a determination at this time of the persons who may be used at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence.  Defendant will supplement this disclosure within the time allowed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Georgia and any Scheduling Order issued by the Court in this case.

7.

Provide a copy of, or description by category and location of, all documents, data compilations, and tangible things in your possession, custody or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C).

Response:

Please see Attachment "C."

8.

In the space provided below, provide a computation of any category of damages claimed by you.  In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying under Fed. R. Civ. P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)

Response:

Please see Attachment "D."

9.

If Defendant contends that some other person or legal entity is, in whole or in part, liable to the Plaintiff or Defendant in this matter, state the full name, address, and telephone number of such person or entity and describe in detail the basis of such liability.

Response:

Defendant contends that Plaintiff is liable to Defendant for the damages set forth in Defendant's Counterclaim.  Defendant will need further discovery as to the

15

allegations in Plaintiff's Complaint to determine if some other person or legal entity is, in whole or in part, liable to the Defendant for Plaintiff's claims in this matter.  If this response changes, Defendant will supplement this disclosure.

10.

Attach for inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments to satisfy the judgment.  (Attach copy of insurance agreement to Initial Disclosures as Attachment E).

Response:

Please see Attachment "E".

This 1st day of March, 2012.

Respectfully submitted,

/s/Ronald J. Garber
Ronald J. Garber
Weissmann Zucker Euster Morochnik P.C.
Georgia Bar No. 283838
Co-counsel for Defendant DNS
Consolidated, Inc. and Counsel for
Counterclaim-Plaintiff D DNS
Consolidated, Inc.

One Securities Centre, Suite 650
3490 Piedmont Road
Atlanta, Georgia 30305
ron@wzlegal.com

/s Brian J. Duva_____
Brian J. Duva
Georgia Bar No. 236046
bduva@mfllaw.com
Aaron A. Miller
Georgia Bar No. 011356
amiller@mfllaw.com
Counsel for Defendant DNS
Consolidated, Inc.

**MOZLEY, FINLAYSON & LOGGINS LLP**
One Premier Plaza, Suite 900
5605 Glenridge Drive
Atlanta, Georgia  30342
404.256-0700
404.250.9355 (Facsimile)

318891

## ATTACHMENT "A"

LIST OF INDIVIDUALS LIKELY TO HAVE DISCOVERABLE
INFORMATION THAT DNS MAY USE TO SUPPORT ITS CLAIMS OR
DEFENSES AND THE SUBJECTS OF THE INFORMATION

1.    Michael Munroe
      May be contacted through counsel

He has knowledge of his experience, duties with respect to the Project and

involvement in the Project, and he also has knowledge as to the following subjects:

the Subcontract between DNS and Walbridge; negotiations for the Subcontract; the

Rider to the Subcontract; other Subcontract Documents; DNS's proposal for the

Project; delays and impacts encountered by DNS; causes of delays and impacts

encountered by DNS; schedules and lack of schedules for the Project;

communications between DNS and Walbridge, correspondence, faxes, e-mails and

documents which this individual prepared, assisted in preparing, sent, reviewed

and/or received; changes and extra work required by Walbridge; additional

manpower, overtime and additional shift required by Walbridge; Pay Applications

and billings from DNS to Walbridge with respect to the Project; payments from

Walbridge to DNS with respect to the Project; lack of payments by Walbridge;

effect on DNS of lack of payment by Walbridge; failure of Walbridge to meet its

express and implied obligations; acts, conduct, omissions, misrepresentations,

negligence and/or intentional conduct of Walbridge that damaged DNS;  DNS's

costs and damages included in DNS' claims in this action; cause of DNS'

damages, damages to DNS as a result of failure of Walbridge to meet its express and implied obligations; calculation of damages of DNS; supporting documentation for costs and damages; amounts owed by Walbridge to DNS; lack of notice or untimely notice by Walbridge of claims sought by Walbridge in this action; prejudice to DNS as a result of failure of Walbridge to provide timely and proper notice of its claims and backcharges; response of DNS to claims made by Walbridge in its Complaint in this action; response of DNS to statements, allegations and defenses raised by Walbridge in its Complaint in this action; completion of DNS's work for the Project; compliance by DNS and its subcontractors with the Subcontract Documents; allegations and facts stated in DNS's Answer and Counterclaim in this action; defenses and affirmative defenses of DNS to Walbridge's claims in this action; meetings attended with respect to the Project; acceptance of DNS's work; completion by DNS of its work for the Project; satisfaction by DNS of its obligations under the Subcontract; hindrances and interferences by Walbridge; and responsibilities of Walbridge and DNS with respect to the Project and the Subcontract.

2.   Ken Mabe
     May be contacted through counsel

He has knowledge of his experience, duties with respect to the Project and involvement in the Project and also has knowledge as to the following subjects: the Subcontract between DNS and Walbridge; the Plans, Specifications, the Rider to

the Subcontract, Plans, Specifications and other Subcontract Documents; DNS's proposal for the Project;  planned and actual manpower for the Project; planned and actual costs of DNS for the Project; delays and impacts encountered by DNS; causes of delays and impacts encountered by DNS; schedules for the Project; communications between DNS and Walbridge, correspondence, faxes, e-mails and documents which this individual prepared, assisted in preparing, sent, reviewed and/or received; changes and extra work required by Walbridge; additional manpower, overtime and additional shift required by Walbridge; Pay Applications and billings from DNS to Walbridge with respect to the Project; payments from Walbridge to DNS with respect to the Project; lack of payments by Walbridge; effect on DNS of lack of payment by Walbridge; failure of Walbridge to meet its express and implied obligations; acts, conduct, omissions, misrepresentations, negligence and/or intentional conduct of Walbridge that damaged DNS;  DNS's costs and damages included in DNS' claims in this action; cause of DNS' damages; damages to DNS as a result of failure of Walbridge to meet its express and implied obligations; calculation of damages of DNS; supporting documentation for costs and damages; amounts owed by Walbridge to DNS; lack of notice or untimely notice by Walbridge of claims sought by Walbridge in this action; prejudice to DNS as a result of failure of Walbridge to provide timely and proper notice of its claims and backcharges; response of DNS to claims made by

Walbridge in its Complaint in this action; response of DNS to statements, allegations and defenses raised by Walbridge in its Complaint in this action; completion of DNS's work for the Project; compliance by DNS and its subcontractors with the Subcontract Documents; allegations and facts stated in DNS's Answer and Counterclaim in this action; defenses and affirmative defenses of DNS to Walbridge's claims in this action; meetings attended with respect to the Project; observation of work performed and material and labor supplied with respect to the Project; acceptance of DNS's work; completion by DNS of its work for the Project; satisfaction by DNS of its obligations under the Subcontract; hindrances and interferences by Walbridge; and responsibilities of Walbridge and DNS with respect to the Project and the Subcontract.

3.      John Burgess
        May be contacted through counsel

He has knowledge of his experience, duties with respect to the Project and involvement in the Project and also has knowledge as to the following subjects: DNS's proposal for the Project; planned and actual manpower for the Project; planned and actual costs of DNS for the Project; communications between DNS and Walbridge, correspondence, faxes, e-mails and documents which this individual prepared, assisted in preparing, sent, reviewed and/or received; changes and extra work required by Walbridge; additional manpower, overtime and additional shift required by Walbridge; Pay Applications and billings from DNS to

Walbridge with respect to the Project; payments from Walbridge to DNS with respect to the Project; lack of payments by Walbridge; effect on DNS of lack of payment by Walbridge; DNS's costs and damages included in DNS' claims in this action; cause of DNS' damages, calculation of damages of DNS; supporting documentation for costs and damages; amounts owed by Walbridge to DNS; lack of notice or untimely notice by Walbridge of claims sought by Walbridge in this action; prejudice to DNS as a result of failure of Walbridge to provide timely and proper notice of its claims and backcharges; response of DNS to claims made by Walbridge in its Complaint in this action; response of DNS to statements, allegations and defenses raised by Walbridge in its Complaint in this action; completion of DNS's work for the Project; compliance by DNS and its subcontractors with the Subcontract Documents; allegations and facts stated in DNS's Answer and Counterclaim in this action; defenses and affirmative defenses of DNS to Walbridge's claims in this action; facts regarding the incident alleged in Walbridge's Count III of its Complaint; and meetings attended with respect to the Project.

4.   David Ellisor
      May be contacted through counsel

He has knowledge of his experience and also has knowledge as to the following subjects: Pay Applications and billings from DNS to Walbridge with respect to the Project; payments from Walbridge to DNS with respect to the Project; lack of

payments by Walbridge; effect on DNS of lack of payment by Walbridge; DNS's costs and damages included in DNS' claims in this action; calculation of damages of DNS; supporting documentation for costs and damages; amounts owed by Walbridge to DNS.

     5.    Amanda Warren
           May be contacted through counsel

She has knowledge of his experience, duties with respect to the Project and involvement in the Project and also has knowledge as to the following subjects: the time sheets and payroll records of DNS.

     6.    Julian H. Taunton
           May be contacted through counsel

He has knowledge of his experience, duties with respect to the Project and involvement in the Project and also has knowledge as to the following subjects: delays and impacts encountered by DNS; causes of delays and impacts encountered by DNS; schedules for the Project; communications between DNS and Walbridge, correspondence, faxes, e-mails and documents which this individual prepared, assisted in preparing, sent, reviewed and/or received; changes and extra work required by Walbridge; additional manpower, overtime and additional shift required by Walbridge; acts, conduct, omissions, misrepresentations, negligence and/or intentional conduct of Walbridge that damaged DNS;  compliance by DNS and its subcontractors with the Subcontract

Documents; allegations and facts stated in DNS's Answer and Counterclaim in this action; defenses and affirmative defenses of DNS to Walbridge's claims in this action; meetings attended with respect to the Project; work performed and material and labor supplied with respect to the Project; and hindrances and interferences by Walbridge.

    7.    William Wiggins

He has knowledge of his experience, duties with respect to the Project and involvement in the Project and also has knowledge as to the following subjects: delays and impacts encountered by DNS; causes of delays and impacts encountered by DNS; schedules for the Project; communications between DNS and Walbridge, correspondence, faxes, e-mails and documents which this individual prepared, assisted in preparing, sent, reviewed and/or received; changes and extra work required by Walbridge; additional manpower, overtime and additional shift required by Walbridge; acts, conduct, omissions, misrepresentations, negligence and/or intentional conduct of Walbridge that damaged DNS; compliance by DNS and its subcontractors with the Subcontract Documents; allegations and facts stated in DNS's Answer and Counterclaim in this action; defenses and affirmative defenses of DNS to Walbridge's claims in this action; meetings attended with respect to the Project; work performed and material and labor supplied with respect to the Project; and hindrances and interferences by

Walbridge.

8.   Jeremy Wiggins

He has knowledge of his experience, duties with respect to the Project and involvement in the Project and also has knowledge as to the following subjects: delays and impacts encountered by DNS; causes of delays and impacts encountered by DNS; schedules for the Project; communications between DNS and Walbridge, correspondence, faxes, e-mails and documents which this individual prepared, assisted in preparing, sent, reviewed and/or received; changes and extra work required by Walbridge; additional manpower, overtime and additional shift required by Walbridge; acts, conduct, omissions, misrepresentations, negligence and/or intentional conduct of Walbridge that damaged DNS;  compliance by DNS and its subcontractors with the Subcontract Documents; allegations and facts stated in DNS's Answer and Counterclaim in this action; defenses and affirmative defenses of DNS to Walbridge's claims in this action; meetings attended with respect to the Project; work performed and material and labor supplied with respect to the Project; and hindrances and interferences by Walbridge.

9.   Bobby Wiggins

He has knowledge of his experience, duties with respect to the Project and involvement in the Project and also has knowledge as to the following subjects:

delays and impacts encountered by DNS; causes of delays and impacts encountered by DNS; schedules for the Project; communications between DNS and Walbridge, correspondence, faxes, e-mails and documents which this individual prepared, assisted in preparing, sent, reviewed and/or received; changes and extra work required by Walbridge; additional manpower, overtime and additional shift required by Walbridge; acts, conduct, omissions, misrepresentations, negligence and/or intentional conduct of Walbridge that damaged DNS; compliance by DNS and its subcontractors with the Subcontract Documents; allegations and facts stated in DNS's Answer and Counterclaim in this action; defenses and affirmative defenses of DNS to Walbridge's claims in this action; meetings attended with respect to the Project; work performed and material and labor supplied with respect to the Project; and hindrances and interferences by Walbridge.

  10. Wendell Patterson
    May be contacted through counsel

He has knowledge of his experience, duties with respect to the Project and involvement in the Project and also has knowledge as to the following subjects: delays and impacts encountered by DNS; communications between DNS and Walbridge, correspondence, faxes, e-mails and documents which this individual prepared, assisted in preparing, sent, reviewed and/or received; acts, conduct, omissions, misrepresentations, negligence and/or intentional conduct of Walbridge

that damaged DNS; allegations and facts stated in DNS's Answer and Counterclaim in this action; defenses and affirmative defenses of DNS to Walbridge's claims in this action; meetings attended with respect to the Project; observation and inspection of work performed and material and labor supplied with respect to the Project; acceptance of DNS's work; and completion by DNS of its work for the Project.

11.  Larry Harper
     May be contacted through counsel

He has knowledge of his experience, duties with respect to the Project and involvement in the Project and also has knowledge as to the following subjects; communications between DNS and Walbridge, correspondence, faxes, e-mails and documents which this individual prepared, assisted in preparing, sent, reviewed and/or received and meetings that he attended.

12.  Matthew Armstrong
     May be contacted through counsel

He has knowledge of his experience and also has knowledge of the following subjects:  any meeting at which he attended, any communication between DNS and Walbridge of which he has knowledge; his response to the allegations in Count Three of Walbridge' Complaint, his defenses in this action; facts that relate to Defendant DNS' defenses in this action and any correspondence, faxes, e-mails and documents which this individual reviewed and/or received.

13.   Matthew Armstrong (son of Defendant Matthew Armstrong)
      May be contacted through counsel

He has knowledge of his experience and also has knowledge of the his response to

the allegations in Count Three of Walbridge' Complaint,

14.   Robert Starr
      May be contacted through counsel

He has knowledge regarding his involvement in the bidding and negotiation for the

Project and his involvement prior to Walbridge entering into a subcontract with

DNS with respect to the Project.

15.   William McGinnis
      Net Planner

He has knowledge regarding his involvement in Project; acts and omissions

by Walbridge; and facts relevant to the issues in this action.


The following individuals are or were employed by Walbridge and may have

discoverable information that DNS may use to support its claims or defenses but

discovery will be necessary to determine all of the subjects of such information.

16.   John Walker - his involvement in the Project and facts relevant to the

      issues in this action;  further discovery will be necessary to determine

      all of the subject matters about which he has knowledge;

17.   Thomas Dyze – statements made by him in correspondence

18.   Lucia Modrack – statements made by her in correspondence.

19.   Mark Micron – his involvement in the Project and facts relevant to the issues in this action;  further discovery will be necessary to determine all of the subject matters about which he has knowledge;

20.   Doug Kern  his involvement in the Project and facts relevant to the issues in this action;  further discovery will be necessary to determine all of the subject matters about which he has knowledge;

21.   Amir Azartouz - his involvement in the Project and facts relevant to the issues in this action;  further discovery will be necessary to determine all of the subject matters about which he has knowledge;

22.   Andrew Medley  - his involvement in the Project and facts relevant to the issues in this action;  further discovery will be necessary to determine all of the subject matters about which he has knowledge;

23.   Scott Dunn - his involvement in the Project and facts relevant to the issues in this action;  further discovery will be necessary to determine all of the subject matters about which he has knowledge;

24.   Scott Penrod - his involvement in the Project and facts relevant to the issues in this action;  further discovery will be necessary to determine all of the subject matters about which he has knowledge;

The following individual is or was employed by the Corps of Engineers and may have discoverable information that DNS may use to support its claims or defenses

but discovery will be necessary to determine all of the subjects of such information:

     25.    R. T. Hodges

He has knowledge regarding his involvement in the Project and facts relevant to the issues in this action; further discovery will be necessary to determine all of the subject matters about which he has knowledge;

Other individuals who may have discoverable information that DNS may use to support its claims or defenses but discovery will be necessary to determine names and all of the subjects of such information:

     26.    Other representatives and employees of the Corps of Engineers

     27.    Representatives and employees of other subcontractors to Walbridge.

     28.    Any other witnesses listed by any other party.

     29.    Any other witnesses listed by other parties.

## <u>ATTACHMENT "C"</u>

LIST OF CATEGORIES OF DOCUMENTS

1.   Subcontract and Subcontract Documents

2.   Documentation for changes

3.   Correspondence and attachments to and enclosures with correspondence

4.   E-mails and attachments to e-mails

5.   Schedules

6.   Pay Applications

7.   Records of Payments received from Walbridge

8.   Certified Payrolls

9.   Claims for additional compensation

10.  Supporting documentation for claims for additional compensation

11.  Time and Material Sheets

12.  Daily logs and reports

13.  Meeting minutes

14.  Weekly Time Sheets

15.  Brass-in and Brass-out Sheets

16.  Union Agreements

17.  Accounting documentation and reports in support of claims

18.    Payroll information e-mails

ATTACHMENT "D"

1.      A computation of any category of damages claimed by DNS is attached as

Attachment D-1.

2.      Attached as Exhibit D-2 is a description by category and location of, the

documents or other evidentiary material, not privileged or protected from

disclosure on which such computation is based, including materials bearing on the

nature and extent of injuries suffered.  Such documents and evidentiary material

will be made available for inspection and copying under Fed. R. Civ. P. 34.

ATTACHMENT D-2

## LIST OF CATEGORIES OF DOCUMENTS ON WHICH SUCH

## COMPUTATION IS BASED

The following documents are located at the offices of DNS:

1.    Documentation for changes

2.    Pay Applications

3.    Records of Payments received from Walbridge

4.    Certified Payrolls

5.    Claims for additional compensation

6.    Supporting documentation for claims for additional compensation

7.    Time and Material Sheets

8.    Weekly Time Sheets

9.    Union Agreements

10.   Accounting documentation and reports in support of claims

11.   Payroll information e-mails

ATTACHMENT "E"

Amerisure Insurance Company issued a liability insurance policy which provides some coverage for the claims against DNS.  A copy of the declarations pages for such policy is attached, with rate and premium information redacted.