IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Walbridge Aldinger Company,       )
                                  )
        Plaintiff,                )
                                  )        CIVIL ACTION FILE NO.
v.                                )        1:11-CV-04602-ODE
                                  )
D & N Electric Company, DNS       )
Consolidated, Inc., and Matthew   )
Armstrong, Individually,          )
                                  )
        Defendants.               )

## D & N ELECTRIC COMPANY'S RESPONSE AND MEMORANDUM IN OPPOSITION TO MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND ANSWER

Defendant/Counter-Plaintiff D & N Electric Company ("D & N") hereby files its Response and Memorandum in opposition to Walbridge Aldinger Company' Motion for Leave to File Amended Complaint and Answer.

### I.  SUMMARY OF ARGUMENT

The Motion of Walbridge Aldinger Company ("Walbridge") to add a count of fraud against D & N and to add affirmative defenses of forfeiture and fraud should be denied.[1]   Allowing the new count of fraud and the two new defenses would be

---

[1]   Walbridge's sureties have not filed a Motion to Amend.  The arguments in this Response and Memorandum would apply equally to Travelers and Liberty.

futile and would prejudice D & N.  Walbridge has unreasonably delayed in bringing its Motion to Amend, and is not being made in good faith.

## II. RESPONSE TO FACTUAL BACKGROUND

Walbridge relies upon the Waivers attached to D & N's payment applications (Ex. 1 hereto and Ex. C to the Motion to Amend), but it only quotes the second paragraph of the Waiver form.  The Waiver, though, provides:

> I/We have a contract with Walbridge to provide contract work for 5-1724-1602 for the improvement of property described as Fort Stewart 5th BCT and hereby waive my/our construction lien rights, rights against any payment bonds and clam rights for the improvement, in the cumulative amount of $10,721,962.19 for labor /material provided through 01/20/2011.

> This Waiver, together with all previous Waivers, if any, does cover all amounts due to me/us for the contract improvements provided through the date as above.

> Additionally I/we acknowledge that my/work may be included on a sworn statement prepared by Walbridge and presented to and relied upon by the Owner for payment and that I/we acknowledge notice of that information for purposes of the Owner's compliance with applicable Construction Lien Laws.

These paragraphs in the Waiver form must be read together with Paragraph 27 of the Addendum, which is part of the Subcontract and provides as follows:

27.            Add the following as paragraph (r) to Article XXVIII:

> "Any form, Waiver, release or contract language wherein the Subcontractor waives or releases claims shall apply only to work for which payment has been received in full by Subcontractor and shall not apply to retention or claims or changes for which Subcontractor has not been paid. However, in case of claims, Subcontractor shall list on the Waiver its reserved and timely made claims".

(R. 1-4, p. 11, ¶27).  The Subcontract with the Addendum ("Addendum") is part of Walbridge's pleadings in this case.  (R. 1-3, 1-4; B-1 and B-2 to the Complaint). The Addendum (R. 1-4, pp. 7-12; Ex. 2 hereto) governs over any other conflicting Subcontract or Contract Documents.  (R. 1-4, p. 12, ¶30, Ex. 2 hereto, ¶30).

Walbridge admits in its proposed pleading that these Waivers were part of Applications for Payment and had to be executed as written by Walbridge when it alleges that "[a]bsent signed and **compliant** payment applications, Walbridge would not release funds to D & N." (Emphasis added).  (Proposed Amended Complaint, ¶ 42).  Thus, not only did Walbridge insist upon using Waivers that did not meet the language of the Addendum, it did not allow changes, making it impossible for D & N to list claims and still be able to get paid for its undisputed subcontract work.  (The last sentence of Paragraph 27 of the Addendum refers to listing reserved and timely made claims, but it does not include listing changes or retention or claims where the time to submit the claim had not then occurred.)

Since Paragraph 27of the Addendum was part of the Subcontract, Walbridge knew of this Paragraph when it executed the Subcontract in October of 2009 and

before any of the Waivers were signed.   Therefore, when each Waiver was signed, Walbridge knew that the governing Subcontract language was different from the language it was using in its form Waivers.  It also knew that it was insisting that its forms be used without changes because of its admission in its proposed pleading that, unless compliant pay applications were submitted, Walbridge would not release funds to D & N.  (proposed Amended Complaint, ¶ 37)  This admission by Walbridge is consistent with Mr. Munroe's testimony that early in the Project he discussed with Walbridge about changing the language of the forms but Walbridge would not allow any changes.  (Ex. 3 hereto, Munroe Depo, pp. 27-28).   The Walbridge Waivers had no place to list reserved claims.  It also had to be signed electronically, and D & N did not have the ability to make changes to the forms. (Ex.3 hereto, Munroe Depo, pp. 27-28, 31-32).

Walbridge contends that in the executed Waivers D & N represented that no amount of money was owed to it by Walbridge through the date of the Waivers.   However, the language of the Waiver quoted above shows that they did not contain a statement that no amount of money is owed to D & N. Walbridge is wrong in claiming Mr. Munroe testified that the Waivers represented that no money was due to D & N.    Rather, Mr. Munroe's testimony on this issue is set forth pages 29-30 of his deposition (Ex. 3 hereto, Munroe Depo, pp. 29-30).

He did not say there was a representation that no money was due to D & N.

Mr. Munroe did state that the cumulative amount in the Waiver of what D & N was paid was accurate in that it matched the amount on the first page of the Pay Application.   His testimony as to what was not accurate was in response to the questions of Walbridge's counsel starting with whether language other than the amount in the Waiver was inaccurate.  (Ex. 3 hereto, Munroe Depo, p. 29, l. 10 –p. 30, l. 25)  The answers that followed were with respect to the language of the first two paragraphs in the Waiver.  Mr. Munroe was never asked in his deposition why he considered the language of the Waivers to be inaccurate.

The language in the Waiver form was not accurate because Walbridge had not complied with the Subcontract for the Waiver to conform to Paragraph 27 of the Addendum.   The inaccuracy in the language of the Waiver was due to Walbridge's breach of the Subcontract, not any false statement by D & N.  Mr. Munroe specifically referred to the Addendum for notice to Walbridge of the inaccuracy when he testified, in response to the question of whether he had told Walbridge at or before this time that the statements were not accurate, that "I don't believe so. **Other than what I have in the rider or the addendum."**  (Emphasis added)  (Ex. 3 hereto, Munroe Depo, p. 30, l. 20-25)

Walbridge does not contend there was any inaccuracy as to the cumulative

amount of the Waiver.  The amount in the first paragraph of each Waiver for the cumulative amount matched the "Total Completed and Stored to Date" amount on the first page of the AIA form.  (Ex. 3 hereto, Munroe Depo, pp. 25-30; Ex. 4 hereto, Depo. Ex. No. 297, which Walbridge attached only part of as Ex. C to its Motion to Amend.)   As can be seen from the lines above that amount on the first page of the AIA form, the amount for "Total Completed and Stored to Date" is the amount completed and stored materials from the original Contract Amount and "Net change by Change Orders".  In the table on the same page for "Change Order Summary", the amount of the changes is only for change orders that have been approved as of the date of the Pay Application.   Thus, the Pay Application on its face and total of the "Completed and Stored to Date" do not include changes that have not yet been approved or any claims of D & N.    Likewise, the cumulative amount in the Waiver, which matched the Pay Application, did not include claims and changes that were not on the Pay Application.

Walbridge claims that, at the time of signing the Waiver, D & N had claims against Walbridge that included almost $1M in claims from Graybar and that "[n]ow, D & N is passing Graybar's claim through to Walbridge." (Memo, p. 3, see also Memo, p. 7)  However, D & N has not asserted Graybar's claims in this action or sought to pass through Graybar's claims. (Ex. 5 hereto, D & N's Answer

and Counterclaim.)  D & N does have certain change orders against Walbridge that include material costs, some of which are for materials purchased from Graybar, but these are amounts claimed by D & N, not as pass-through claims of Graybar.

Walbridge claims that that it learned for the first time that the Waivers were inaccurate at the deposition on April 30, 2013.  (Memo, p. 3) and that it "only recently learned of D & N's underlying fraudulent and false actions underlying the forfeiture." (Memo, p. 10)  However all of the assertions being made by Walbridge were known to it prior to the filing of its Answer and Affirmative Defenses to D & N's Counterclaim on February 16, 2012.   All of the Waivers relied upon by Walbridge were received by Walbridge before April of 2011 because the last Waiver is dated in March of 2011.  The Waivers were prepared and received by Walbridge and, therefore, it knew the contents of the Waivers.  It also had signed the Subcontract in October of 2009 and knew the contents of the Subcontract and Addendum.  Before Walbridge filed its Answer and Affirmative Defenses to D & N's Counterclaim, it had already been served with D & N's Counterclaim and Graybar's Miller Act suit. (Ex. 6 hereto, docket sheet of Graybar's Miller Act suit,) Therefore, Walbridge obviously knew before it filed its Answer to the Counterclaim that D & N was seeking amounts beyond the cumulative amounts of the Waivers and that Graybar was raising claims of over $900,000.  It even raised

an affirmative defense of Waiver in its Answer to the Counterclaim and filed an Answer to Graybar's claim, raising affirmative defenses and denying liability. (Ex. 7, Walbridge's Answer to Graybar's Complaint.)

Walbridge ends its Factual Background with the illogical conclusion that there can only be two outcomes – either the Waivers are accurate and all of D & N's claims are waived, or they are not accurate, in which case there must be fraud. Neither of these conclusions is correct.  The Waivers do not waive D & N's claims or changes. (Section III B 2 below.)   The Waiver language was not accurate because of Walbridge's fault in using ambiguous language rather than using the language of Paragraph 27 of the Addendum, not because of fraud of D & N.

## III.   LEGAL ARGUMENT

### A. <u>STANDARD FOR MOTION TO AMEND</u>

"… [L]eave to amend is not a matter of right, and in deciding whether to grant leave to amend, the court should consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, the prejudice which would result to the non-movant, and the futility of the amendment. [citations omitted] A proposed amendment to a complaint is futile where there is a lack of evidence establishing an essential element of the claim.  See <u>CSX Transp., Inc. v. United Transp. Union</u>, 236 Fed.Appx. 562, 563 (11th Cir.2007), 841 F. Supp. 2d at 1315."

Bennett v. McGriff Transp., Inc., 841 F. Supp. 2d 1313, 1315 (N.D. Ga. 2012). "Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal [citations omitted].   In order to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," rather than merely conceivable.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)."  Patel v. Georgia Dep't BHDD, 485 F. App'x  982, 983 (11th Cir. 2012).

    B.  THE  PROPOSED  TWO  NEW  DEFENSES  TO  D  &  N'S COUNTERCLAIM  WOULD  BE  FUTILE  AND,  THEREFORE, SHOULD NOT BE ALLOWED

    1.    The defense of forfeiture would be futile.

Walbridge does not have a valid affirmative defense of forfeiture as a matter of law, and the cases cited by Walbridge  do not support a defense of forfeiture.

Under both Michigan law and Georgia law, forfeitures are not favored.  See Jenkins v. U.S.A. Foods, Inc., 912 F. Supp. 969 (E.D. Mich. 1996); Leighton v Leighton, 10 Mich. App. 424 (1968); Russell v. KDA, Inc., 206 Ga. App. 397 (1992).  For forfeiture to be recognized, the "agreement must contain clear and unequivocal language requiring it.  Leighton at 434-435.  Walbridge has not cited or argued for any contractual right to forfeiture.

Rather, Walbridge argues for forfeiture under federal cases and statute, but

none of the cases or statutes provide a forfeiture defense for a general contractor against its subcontractor.   Irwin & Leighton v. U.S., 65 F.Supp. 794 (Ct.Cl. 1946), cited by Walbridge, involved 28 U.S.C. § 279, which is now 28 U.S.C. § 2514.  28 U.S.C. § 2514 states that "[a] claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof."   Here, D & N is asserting claims against Walbridge, not the United States, and neither Irwin & Leighton nor 28 U.S.C. § 2514 are relevant.  Walbridge has not cited any case that has allowed 28 U.S.C. §2514 to create a defense of forfeiture for a contractor to a subcontractor's claim against the contractor.

U.S. v. Leyde & Leyde, 89 F.Supp. 256 (D.C.Md. 1950) cited by Walbridge also is inapplicable.   In Leyde & Leyde, the United States brought suit under section 19 of the Contract Settlement Act of 1944, 41 U.S.C.A. §§ 101-126.  However the Contract Settlement Act of 1944 was enacted "to effectuate speedy and final settlement of claims for World War II contracts." American Employers Ins. Co. v. United States, 812 F.2d 700, 703 (Fed.Cir.1987).  That Act was repealed in 2011 by Pub. L. 111–350, Jan. 4, 2011, 124 Stat. 3855.  Walbridge cited U.S. ex rel. Wall v. Circle C Const., L.L.C., 697 F.3d 345 (6th Cir. 2012), but that case involved a relator's action on behalf of the United States for damages

based upon false statements in payroll certifications as to compliance with the Davis Bacon Act.  Circle C did not involve a forfeiture claim or defense and did not involve a general contractor's assertion of a claim or defense of fraud or forfeiture against its subcontractor.  Walbridge also cited Allison Engine Co. v. Sander, 553 U.S. 662 (2008), but it later acknowledged in its Memorandum that Congress expressly overruled Allison Engine in amending the FCA by enacting the Fraud Enforcement Recovery Act, 31 U.S.C. § 3729(a)(1)(B).  Allison Engine is no longer good law with regards to the FCA.

Walbridge's reliance on the False Claims Act, 31 U.S.C. § 3729 (the "FCA") does not support a defense of forfeiture.  The False Claims Act (FCA) is not a forfeiture statute.  The legislative history of the statute shows that the forfeiture language was removed in 1982.  (Ex. 8 hereto).  There is no legal basis for the proposed defense of forfeiture under the FCA.   Furthermore, a suit under the FCA shall be brought by the United States and any penalty under FCA is owed to the United States.  31 USC § 3729(a)(1).  Walbridge has not cited any case where the FCA has been allowed to create a defense of forfeiture by the general contractor against its subcontractor or any case where the FCA has been applied to ambiguous language in a Waiver.  Also, Walbridge is not claiming that the amount of any of D & N's pay applications was false.

11

2.      <u>The fraud defense and the new proposed fraud count would be futile.</u>

a. <u>The Waivers Cannot be the Basis of a Fraud Defense or Claim</u>

The proposed count for fraud and the affirmative defense of fraud do not allege or establish the elements of fraud.  The Georgia Court of Appeals in <u>Martin v. Ctr. Pointe Investments, Inc.</u>, 310 Ga. App. 253, 256-57, 712 S.E.2d 638, 641-42 (2011) set forth the elements under Georgia law:

> "The elements essential to an action in tort for fraud are: (1) false representation by a defendant, (2) scienter, (3) intent to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by the plaintiff, and (5) resulting damage to the plaintiff. <u>Potts v. UAP–GA AG CHEM, Inc.</u>, 256 Ga.App. 153, 155(1), 567 S.E.2d 316 (2002). In order to prove the fourth element of justifiable reliance, a party must show that he exercised his duty of due diligence. <u>Reeves v. Edge</u>, 225 Ga.App. 615, 618(2), 484 S.E.2d 498 (1997). "Fraud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence."

In <u>Martin</u>, the Court found that the Plaintiff had not established justifiable reliance, and, thus, was unable to establish a *prima facie* case of fraud.  It held that Defendants were entitled to judgment as a matter of law on the fraud claim.  Furthermore, a party cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relationship or trust or confidence exists.   In the absence of special circumstances, a party "must exercise ordinary diligence in making an independent verification of contractual terms and

representations, failure to do which will bar an action based on fraud."   Chae v. Saehan Bank, A13A0322, 2013 WL 1862165 (Ga. Ct. App. May 6, 2013). Georgia law does not recognize a special relationship between two businessmen who are parties to a construction contract.  See Davis v. Carpenter, 247 Ga. 156, 274 S.E.2d 567, 568-69 (1981).

Here, Walbridge argues that it was defrauded because Mr. Munroe in his deposition answered that the language of the Waiver was not accurate. In his deposition, Mr. Munroe did not state that that the Waivers were false, and he was not asked why the language was not accurate.  The reason that the Waiver form was not accurate is that it did not comply with Walbridge's obligations under Paragraph 27 of the Subcontract Addendum, quoted above in the Response to the Factual Background.  Rather than use a Waiver form that expressly stated that it did not apply to retention or claims or changes for which D & N had not been paid, Walbridge insisted upon using a form based on a Michigan statute for lien Waivers, which form has recently been held by the United States District Court for the Southern District of Georgia to be ambiguous.  U.S. ex rel. Duncan Pipeline, Inc. v. Walbridge Aldinger Co., CV411-092, 2013 WL 1338392 (S.D. Ga. Mar. 29, 2013).[2]  The Waiver forms at issue in the Motion to Amend are the same

---

[2]  In Duncan, the Court applied Michigan law to subcontract issues and Georgia

Waivers that were the subject of the Court's decision in <u>Duncan</u>, which involved one of Walbridge's other subcontractors on the same project.    In <u>Duncan</u>, the Court denied Walbridge's motion for summary judgment based on its defense that Duncan Pipeline had waived claims for changes and impacts, finding that the Waivers were ambiguous because of the use of the terms "claims arising from the improvement" and "contract improvements." <u>U.S. ex rel. Duncan Pipeline, Inc. v. Walbridge Aldinger Co.</u>, 2013 WL 1338392 at page 25-30.

Because Walbridge's obligations and requirements for the Waiver forms were clearly set forth in the Subcontract and were known to Walbridge before and after D & N signed the Waivers, it cannot satisfy the elements of justifiable reliance for establishing reliance.  It knew it was not following the Subcontract by using the forms it insisted upon and cannot allege or prove that it used reasonable diligence to discover the inaccuracy of its own forms that did not meet its own obligations under the Subcontract.

In addition, Walbridge cannot establish the element of fraud of a false statement in the Waiver signed by D & N.    The Waiver has been held in <u>Duncan</u> to be ambiguous, and Walbridge has not cited any case that allows a fraud claim based on an ambiguous statement.  Also, Mr. Munroe's statement in the deposition

law to tort issues.

that the Waiver form was not accurate is not the same as saying there were false statements in the Waiver.  The Waiver was not accurate as set forth above because Walbridge did not follow its contractual obligations with respect to language for Waivers.    Although, the language of the first sentence of Paragraph 27 of the Addendum was not put in the Addendum by Walbridge, the Waiver form must be still be read together with Paragraph 27, which mandates that any Waiver "shall apply only to work for which payment has been received in full by Subcontractor and shall not apply to retention or claims or changes for which Subcontractor has not been paid."  Even without Paragraph 27, the Court in <u>Duncan</u> has already held the language in the Waiver form is ambiguous and does not waive claims.

Walbridge also distorts the Waiver form, when it claims in its Memorandum that Mr. Munroe "stated that the representation that no amount of money was owed to D & N was not an accurate statement."  That is not what Mr. Munroe testified, and it is not what the Waiver form states.  In fact, the first paragraph of the Waiver form is a waiver as to contract "improvements" to the extent of the cumulative amount stated in that paragraph.  The second paragraph, which must be read together with the first paragraph, states that this "Waiver, together with all previous Waivers, if any, does cover all amounts due to me/us for the contract improvements provided through the date as above."  The second paragraph does

not contain the Waiver language; it is only in the first paragraph.  Therefore, while the second paragraph brings into the Waiver amounts due for "contract improvements" (not changes or claims for impacts or delays) through the date stated in the first paragraph, the actual waiver in the first paragraph is only waiving rights for "contract improvements" (not changes or claims for impacts or delays) in a specific cumulative amount.  As an analogy, an insurance policy may "cover" certain costs such as medical expenses, but other provisions of the policy must be read to determine the extent of the coverage, such as limitations of amounts or percentages, deductibles and co-payments.  Walbridge's argument that the second paragraph is a complete waiver would make the first paragraph and the amount in it meaningless.  There would be no need for the first paragraph under Walbridge's argument.  Furthermore, the third paragraph of the Waiver limits the purpose of the Waiver form for the work of D & N to be included on a sworn statement prepared by Walbridge and presented to and relied upon by the Owner for payment for purposes of the Owner's compliance with applicable Construction Lien Laws.  A lien, though, cannot be placed on a federal project.  J. W. Bateson Co., Inc. v. U.S. ex rel. Bd. of Trustees of Nat. Automatic Sprinkler Indus. Pension Fund, 434 U.S. 586, 589, 98 S. Ct. 873, 875, 55 L. Ed. 2d 50 (1978).   Also, Walbridge does not claim that the amount that D & N was stating on the Pay Applications for the work

listed in the Pay Applications was inaccurate.

         b.    <u>The Sworn Statements Cannot be the Basis of a Fraud Defense</u>
             <u>or Claim.</u>

Walbridge's allegations in the proposed Amended Pleadings as to a claim of fraud based on the separate Sworn Statements must also fail due to deficient allegations and argument. Walbridge's Memorandum focuses on the language of the Waivers and the testimony of Michael Munroe as to the Waivers, barely mentions the Sworn Statements and offers no justification why it has waited more than 15 months to seek to claim fraud as to these Sworn Statements.  The entire basis of Walbridge's "newly discovered" defense and cause of action is based on the statement in Mr. Munroe's deposition as to the Waiver, not the Sworn Statement.  However, since that deposition testimony did not concern the Sworn Statement, Walbridge does not offer any argument that it just discovered some fraud in the Sworn Statement.  Rather it knew of the contents of the Sworn Statements as they were being submitted in the course of the Project and knew prior to filing its Answer to the Counterclaim in this action that D & N had claims against Walbridge and that Graybar had asserted claims against D & N.

The Sworn Statement form, which was prepared by Walbridge, must be read in the context of its stated sole purpose on page 2 of the form:

                **Deponent further says that he or she makes the foregoing**

> **statement as the contractor or as the Controller of the contractor for the purpose of representing** to Walbridge and the owner or lessee of the premises described on the previous page **that the property described on the previous page is free** from claims of construction liens, claims of non-payment, or the possibility of construction liens, claims of nonpayment or bond claims, except as specifically set forth on the previous page.

(Emphasis added). The form Sworn Statement that Walbridge insisted be used and signed is based on the form for the Michigan lien statute. See M.C.L.A. 570.110. The representations on this Sworn Statement are limited by this language to the property being free of the claims listed. Since the property described on the first page is the real property where the project is located, which is owned by the United States government, no liens or claims could be filed then or later by D & N, Graybar or any entity against government property. Thus, the foregoing statement in the Sworn Statement upon which Walbridge relies is only for the purpose of making sure that the property is free of claims and liens. Therefore, in the context of the stated purpose of the Sworn Statement, there was no false statement since Walbridge does not allege that any claim or lien was being made against the property of the Project at the time of execution of the Sworn Statement or any time thereafter. It does not allege and cannot establish that D & N, Graybar or any other subcontractor or supplier to D & N filed a claim of lien against the Property.

The Sworn Statement form that Walbridge required to be used and signed without alteration has no column for changes to the contract amount that have not

been issued as a formal change order by Walbridge and has no column for claims of D & N for additional compensation to be listed. The form language on the front page does not require listing of amounts to D & N's subcontractors and suppliers where there is a dispute as to whether amounts are due. The form also uses the term "improvement", which has the same ambiguity as the Waiver form found to be ambiguous in Duncan.

c.  Walbridge Cannot Establish the Element of Scienter

Walbridge also cannot establish the element of scienter for a fraud claim. An ambiguous statement does not contribute to an inference of scienter. See Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc., 537 F.3d 527, 538 (5th Cir. 2008); In re Dell Inc., Sec. Litig., 591 F. Supp. 2d 877, 895 (W.D. Tex. 2008). A question is "fundamentally ambiguous" when "it 'is not a phrase with a meaning about which men of ordinary intellect could agree. United States v. Swindall, 971 F.2d 1531, 1553-54 (11th Cir. 1992). Here the Court in Duncan has already ruled that the same waiver is ambiguous.

d.  Walbridge's Allegations as to Damages Are Deficient since they Conflict with the Subcontract, which is part of the pleadings.

Walbridge also has not properly alleged the element of damages because its argument and allegations conflict with the language of the Subcontract and the Addendum that are part of the pleadings in this case. (The Subcontract with the

Addendum is contained in Ex. B to the Complaint.).   Walbridge claims that, had it known that D & N had claims beyond what Walbridge was paying D & N on a pay application, it would not have paid D & N until the claims were resolved.  In other words, although D & N was entitled to be paid for its progress billings for undisputed subcontract amounts and Walbridge was applying for and being paid by the Corps of Engineers, Walbridge would have held D & N's earned subcontract amounts hostage until claims of other money due to D & N were resolved.  This would have violated the Payment Provisions of the Subcontract, the Addendum, and the Prompt Pay Act, which is incorporated by reference into the Subcontract. (R. 1-3, pp. 3-4; R. 1-4, p. 7, ¶ 2, ¶ 4; R. 1-4. p. 4; FAR 52.232-27.)

Walbridge claims that D & N did not disclose that it had a pass-through claim of Graybar of $900,000 that D & N is seeking in this action and that, had Walbridge known of the pass-through claim, it would not have paid D & N. However, Graybar has not submitted a pass-through claim to D & N, and D & N has not asserted a pass-through claim of Graybar against Walbridge in this action.

Walbridge claims it has incurred costs defending the action from Graybar and faces potential liability for amounts owed to Graybar and received by D & N (Memo, p. 8),  but it has failed to allege or inform the Court that Graybar has filed an action against D & N and its surety, Great American Insurance Company

("GAIC"), Civil Action No. 2012-SV-34 in the State Court of Liberty County (the "Liberty County Action"), and that D & N and GAIC are defending against Graybar's claims in that action.  Nor has Walbridge alleged or informed the Court that D & N and GAIC issued a Payment Bond to Walbridge. (R. 1-4, pp. 16-18) Walbridge has not alleged that Graybar's claims are valid or undisputed and, in fact, has raised several affirmative defenses in its Answer to Graybar's Complaint. Walbridge has not alleged that D & N or GAIC will not honor their obligations under the Payment Bond if any amount is found to be due to Graybar.  Walbridge also argues that, had it known Graybar had claims against D & N, it would have withheld money from D & N until the dispute was resolved.  However, this would have been a clear breach of  Paragraph 4 of the Addendum (R. 1-4, p. 7, ¶4), which provides in relevant part that: "…Contractor shall not pay any subcontractor or supplier of Subcontractor if Subcontractor disputes in good faith such claim by such supplier or subcontractor and Subcontractor has provided a Payment Bond with respect to the Project."  D & N provided a Payment Bond, and Walbridge has not alleged lack of good faith in D & N's dispute of Graybar's claims.  In fact, Walbridge is disputing these claims in Graybar's Miller Act suit.

C. <u>ALLOWING THE ADDITON OF THE NEW COUNT AND TWO NEW DEFESNES AT THIS TIME IS PREJUDICIAL TO D & N</u>

D & N will be prejudiced by allowing the addition of the new cause of

action and two new affirmative defenses.  It has already served Interrogatories to Walbridge, including Interrogatory No. 9 that requested Walbridge to state the factual basis of its affirmative defenses.   (Ex. 9 hereto, Walbridge's Answers to D & N's Second Interrogatories to Walbridge, Depo Ex. 80 (without attachments) pp. 7-10).  In its answer to Interrogatory No.  9, Walbridge providing limited factual information as to its waiver defense and other defenses.  (Ex. 9 hereto, pp, 7-10). D & N took the 30(b)(6) deposition on various topics, including Walbridge's Answers to Interrogatories and Walbridge's Answer to the Counterclaim and defenses.  (Ex. 10, D & N's Notice of Deposition of Walbridge, Depo 78).  During the 30(b)(6) deposition of Walbridge, counsel for D & N asked the designated representative of Walbridge about the answers to Interrogatory No. 9 as to the affirmative defenses, including the waiver defense.  He could not answer those questions and said that Walbridge's in-house counsel, Tom Dyze, would be the person to answer.  (Ex. 11, 30(b)(6) Depo. - John Walker, vol. 2, pp. 409-410). However, Mr. Dyze was never designated as a representative of Walbridge for the 30(b)(6) deposition and was never made available during the time allotted for the 30(b)(6) deposition.   Now, after D & N has no more opportunity to ask any 30(b)(6) representative any questions about the former affirmative defenses, the new affirmative defenses  or the new count for fraud, Walbridge wants to add these

two defenses, a new count  and punitive damages.   If D & N sends out another set of interrogatories and requests for documents, it will not receive responses until late in July, but discovery ends on August 30, 2013.   Walbridge may refuse to answer the interrogatories, arguing that with subparts D & N has already served 25 interrogatories as allowed by Rule 33, Fed. R. Civ. P.  By this late timing of this amendment, Walbridge has severely hampered D & N 's discovery on relevant issues, including, but not limited to, the entire factual basis for the new count and defenses, Walbridge's knowledge of the alleged events, its reliance on the alleged fraud, its due diligence in learning of claimed inaccuracies, its damages and its proof or lack of proof of the elements of these new defenses and the new count for fraud. Walbridge's assertion that D & N does not need discovery because it already knows about the fraud is absurd.  The logic of this argument would mean that any time a party alleges fraud no discovery would be needed by the defending party.

D. <u>THERE HAS BEEN UNDUE DELAY BY WALBRIDGE.</u>

Walbridge claims that it just learned of the basis for the fraud count and the two new defenses, but this representation to the Court is not credible in light of the actual events that have occurred.  When Walbridge filed its Reply to D & N's counterclaim on February 16, 2012, it had already been served with Graybar's Complaint and, therefore, knew of Graybar's claims.   Walbridge does not claim

that it only recently learned that Graybar has asserted claims.  It also already knew of the language of the Waiver Forms and Sworn Statements since it insisted on those forms.  The only "new" fact that it claims it recently learned was that Mr. Munroe considers the language of the Waiver form not to be accurate.   Yet Walbridge knew when it signed the Subcontract in October, 2009 what the Addendum provided for the language of the Waivers and knew from the very first Pay Application that the Waivers were not in compliance with Walbridge's own contractual obligations. Walbridge has offered no explanation of why it waited over 15 months from filing of their answers to raised issues of fraud.  Delay in amending can preclude the amendment.  <u>Phoenix Technologies, Inc. v TRW, Inc.,</u> 154 F.R.D. 122 (E.D. Pa. 1994).  The delay here is prejudicial because the Motion was filed late in the discovery process after Walbridge has already avoided properly responding to the 30(b) Deposition topics on affirmative defenses.

     E.  <u>THE PROPOSED AMENDMENT TO ADD THE A COUNT AND TWO NEW DEFENSES IS NOT BEING MADE IN GOOD FAITH</u>

Walbridge 's Motion to Amend is not made in good faith because:  1) it claims it has just discovered a "new" fact, but it actually had all of the information at the time of filing the original Answer and Affirmative Defenses to the Counterclaim;  2) it has sought to amend at a point in the case where D & N will be prejudiced in discovery, and 3) it has made numerous misleading statements in its

Memorandum, including statements not supported by the cited deposition testimony or the documents relied upon,  statements about documents taken out of context with other language in the documents, omitting relevant provisions of the Addendum, claiming that D & N falsified the "payroll" applications, (Memo, p. 10), where there are no such allegations in the proposed Amended Pleadings, and claiming that Walbridge incorporated D & N's payment applications into its own payment claims submitted to the Government (Memo, p. 10) when that is contrary to Walbridge's Pay Applications produced by Walbridge.  (See Ex. 12 hereto)

## IV.   CONCLUSION

Therefore, D & N requests that Walbridge's Motion to Amend be denied. D & N does not oppose that part of the Motion for Walbridge to dismiss its Count for Tortious Interference against D & N and Defendant Armstrong.

This 12th day of  June, 2013.

s/Ronald J. Garber
Georgia Bar No. 283838
Attorney for Defendant /Counter-Plaintiff
D & N Electric Company
Weissmann Zucker Euster Morochnik P.C.
One Securities Centre, Suite 650
3490 Piedmont Road
Atlanta, Georgia 30305
404-760-7425 direct
404-364-2320 facsimile
ron@wzlegal.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Walbridge Aldinger Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| v. | ) | 1:11-CV-04602-ODE |
| | ) | |
| D&N Electric Company, DNS | ) | |
| Consolidated, Inc., and Matthew | ) | |
| Armstrong, Individually, | ) | |
| | ) | |
| Defendants. | ) | |

## RULE 26.3 CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2013, I served a true and correct copy of

D & N Electric Company's Response and Memorandum in Opposition to Motion

for Leave to File Amended Complaint and Answer on counsel of record for all

parties via the CM/ECF systems, which will automatically send e-mail notification

to the following:


|  |  |
|---|---|
| Eric L. Nelson | Patrick Joseph O'Connor |
| Douglas L. Tabeling | Kenneth A. Shapiro |
| Smith, Currie & Hancock LLP | Mitchell & Shapiro, LLP |
| 2700 Marquis One Tower | One Securities Centre, Suite 650 |
| 245 Peachtree Center Ave. NE | 3490 Piedmont Road, NE |
| Atlanta, GA 30303-1227 | Atlanta, GA 30305 |

| | |
|---|---|
| Brian Joseph Duva | Mike Crawford |
| Richard S. Bruno | Stephen Michael Schatz |
| Mozley, Finlayson & Loggins, LLP | Swift, Currie, McGee & Hiers, LLP |
| One Premier Plaza, Suite 900 | The Peachtree, Suite 300 |
| 5605 Glenridge Drive | 1355 Peachtree Street NE |
| Atlanta, GA 30342-1386 | Atlanta, GA 30309-3238 |

The undersigned hereby also certifies that, pursuant to Local Rule 7.1 D, ND

Ga., the attached pleading has been prepared in Times New Roman, 14 point font,

a font and point selection approved by this court in Local Rule 5.1 B, ND Ga.

This 12th day of June, 2013.

<u>s/Ronald J. Garber</u>
Georgia State Bar No.:  283838
Counsel for D & N Electric Company and
DNS Consolidated, Inc.
Weissmann Zucker Euster Morochnik P.C.
One Securities Centre, Suite 650
3490 Piedmont Rd.
Atlanta, Georgia 30305
404-760-7425 direct
404-364-2320 facsimile
Ron@wzlegal.com