In The Matter Of:

## Walbridge vs. D&N Electric

---

### 30(b)(6) Mike Munroe
April 30, 2013

---

**Tiffany Alley Global Reporting & Video**

3348 Peachtree Road

Tower Place 200, Suite 700

Atlanta, GA 30326

770.343.9696

www.tiffanyalley.com



Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Walbridge Aldinger Company,
    Plaintiff,

vs.

D&N Electric Company, DNS
Consolidated, Inc., and Matthew
Armstrong, Individually,
    Defendants,

Civil Action File

No. 1:11-CV-04602-ODE

THE 30(B)(6) DEPOSITION OF D&N ELECTRIC COMPANY,

by and through MICHAEL MUNROE

April 30, 2013

9:00 a.m.

One Securities Centre, Suite 650

3490 Piedmont Road

Atlanta, Georgia

Maureen S. Kreimer, Notary Public, RPR, CCR-B-1379

```
 1   paid" invoices were from the previous application.
 2   And it looks to me that they didn't do a running
 3   commitment total out of all the funds from the day
 4   one because they were subcontracts.  That's what I'm
 5   just saying, it just doesn't look right to me now.
 6        Q.   If I look at the next page, 87301, this is
 7   one of the -- this is the second page of the
 8   document, which you signed; correct?
 9        A.   Yes.
10        Q.   And, again, this is sworn and subscribed
11   to before the Notary Public Ms. Wallace; correct?
12        A.   That's correct.
13             MR. NELSON:  Okay.
14             (Plaintiff's Exhibit #297 marked)
15   BY MR. NELSON:
16        Q.   I'm going to hand you what's been marked
17   as Exhibit 297.
18             And this is Payment Application No. 20
19   through the period of January 20th, 2011, submitted
20   by D&N to Walbridge for the Fort Stewart IBCT
21   project; is that correct?
22        A.   Yes.
23        Q.   Okay.  And, again, if you look at
24   Page 87323 and 87324 through 325, that contains the
25   unconditional waiver and sworn statement that you
```

Case 1:11-cv-04602-ODE   Document 82-3   Filed 06/12/13   Page 4 of 11

Walbridge vs. D&N Electric        30(b)(6) Mike Munroe        04/30/2013

```
 1   signed with respect to this project; correct?
 2        A.   That's correct.
 3        Q.   And the two payment applications that
 4   we've looked at, 297 and 296, were these the typical
 5   format for payment applications that were submitted
 6   by D&N to Walbridge for work on the project?
 7        A.   Yes, with the Textura system.
 8        Q.   And these were done on basically a monthly
 9   basis?
10        A.   Yes.  I would get the -- whatever
11   information the project manager gave to his AA, and
12   she would take that information, input it.  And then
13   I would get the pay application, and I would sign it
14   based on the information they provided Textura.
15        Q.   And these are the documents that D&N would
16   submit to Walbridge on the project for purposes of
17   receiving payment; correct?
18        A.   That's correct.
19        Q.   Okay.  And these documents that were
20   produced by D&N -- you see with a Bates No. -- these
21   were maintained in D&N's regular course of its
22   business?
23        A.   Yes, they were.
24             MR. NELSON:  We'll look at a couple more
25   of these, Mr. Munroe, and I think we'll be done with
```

1    those.
2              (Plaintiff's Exhibit #298 marked)
3    BY MR. NELSON:
4       Q.    Let me hand you what's been marked as
5    Exhibit 298.
6              And this is Payment Application 21 through
7    the period of February 20th, 2011, submitted by D&N
8    Electric to Walbridge for the Fort Stewart IBCT
9    project; is that correct?
10      A.    That's correct.
11      Q.    Okay. And if I look at Exhibit -- excuse
12   me, Page Number 87348, if you would. This
13   unconditional waiver is different than the previous
14   ones; correct?
15      A.    I'll have to look at it. I didn't notice.
16   Yes, it is different from the previous one.
17      Q.    Do you know why the language was changed?
18      A.    No, I don't.
19      Q.    Do you know who changed the language?
20      A.    Only thing I can say is it had to be
21   Walbridge through Textura changing the language. I
22   didn't have that ability. And I was told early on
23   that since it's already in the Textura system,
24   changes cannot be made; so...
25      Q.    Did you ever send anything to Walbridge

1  saying that you disagreed with the language in the
2  commercial unconditional waiver or the sworn
3  statement?
4      A.    I want to say I had a conversation during
5  the first pay application. I don't know if I had it
6  with the project manager who brought it up in a
7  meeting with the Walbridge project manager. But I
8  know my reply was "it's in the system, we can't
9  change it," and I just had to -- and I just accepted
10 it because if I want to get paid, I'd have to sign
11 it.
12     Q.    Do you know if D&N ever submitted anything
13 to Walbridge in writing stating that it disagreed
14 with any part of -- or any language in the partial
15 unconditional waiver, or sworn statement?
16     A.    I can't remember if somebody did that or
17 not.
18     Q.    Do you know if anybody ever sent anything
19 to Walbridge stating that any information in the
20 partial unconditional waiver or sworn statement was
21 not accurate?
22     A.    I don't think I ever did that; and I can't
23 speak for anybody else.
24     Q.    If you look at the next page, D&N87349
25 Sworn Statement, is the information contained in

```
 1   that statement accurate?
 2       A.   I can't speak to that.
 3       Q.   If you look at the previous Page 87348, is
 4   the information contained in the Partial
 5   Unconditional Waiver accurate?
 6       A.   I can only say it definitely does match
 7   the front page of the AIA document in the total
 8   amount, it is a cumulative total; so I would have to
 9   say it is accurate.
10       Q.   Okay.  Is the other language other than
11   the amount accurate in the partial unconditional
12   waiver?
13       A.   What do you mean by "accurate"?
14       Q.   Well, is the statement signed by you an
15   accurate and correct statement in total?
16       A.   The waiver says that I'm being paid in the
17   cumulative amount $10,919,879.54.
18       Q.   It's talking, it says -- I'll read it to
19   you:  "I/We have a contract with Walbridge to
20   provide contract work for 5-1724-1602, the
21   improvement of the property described as Fort
22   Stewart 5th BCT and hereby waive my/our construction
23   lien rights, rights against any payment bonds, and
24   claims arising from the improvement in the
25   cumulative amount of $10,991,879.54 for
```

1   labor/material provided through February 20th,
2   2011."
3            Is that what D&N did?
4   A.   It goes on to the second paragraph, too.
5   Q.   Well, I'm just asking you, that's just the
6   first paragraph.  We're going to get to the second
7   one in a second.  I'm just taking it one at a time.
8   A.   You want to know what --
9   Q.   Is that an accurate statement?
10  A.   No, it's not.
11  Q.   Okay.  And look at the next paragraph:
12  This waiver together with all previous waivers, if
13  any, does cover all amounts due me/us for the
14  contract improvements provided through the date as
15  shown -- date as above.
16           Do you see that?
17  A.   Yes, I do.
18  Q.   Is that an accurate statement?
19  A.   No, it's not.
20  Q.   Okay.  Did you ever send anything to
21  Walbridge at this time or before this time saying
22  that those statements were, in fact, not accurate in
23  writing?
24  A.   I don't believe so.  Other than what I
25  have in the rider or the addendum.

Case 1:11-cv-04602-ODE Document 82-3 Filed 06/12/13 Page 9 of 11

Walbridge vs. D&N Electric        30(b)(6) Mike Munroe        04/30/2013

1                    CERTIFICATE

2

3    STATE OF GEORGIA:

4    COUNTY OF FULTON:

5

6         I hereby certify that the foregoing

7    transcript was taken down, as stated in the caption,

8    and the colloquies, questions and answers were

9    reduced to typewriting under my direction; that the

10   transcript is a true and correct record of the

11   evidence given upon said proceeding.

12        I further certify that I am not a relative

13   or employee or attorney of any party, nor am I

14   financially interested in the outcome of this

15   action.

16        This, the 9th day of May, 2013.

17

18                    _____

19

20        MAUREEN KREIMER, CCR-B-1379

21        Notary Public in and for the

22        State of Georgia. My Commission

23            expires August 14, 2016.

24

25

1                (Plaintiff's Exhibit #299 marked)
2    BY MR. NELSON:
3         Q.    I'm going to hand you what's been marked
4    as Exhibit 299.
5                And, Mr. Munroe, I have handed to you the
6    Pay Application No. 22 period through March 20th,
7    2011.  It's a pay application submitted by D&N
8    Electric to Walbridge on the Fort Stewart IBCT
9    project; is that correct?
10        A.    It's the pay application, yes.
11        Q.    And on this pay application, I notice
12   there was no waiver or sworn statement if you'd see.
13   And this was the document produced by D&N.
14               Do you know if on the last pay application
15   D&N did not submit a waiver and sworn statement
16   along with its pay application?
17        A.    The only way -- the only thing I could say
18   is I would have to check to see if we got paid for
19   it, because we would not get paid if we didn't go
20   through every one of the steps.  And the final step
21   is to have the AA notarize it.  So it would have to
22   be part of the pay application.
23               I don't know if at that particular time if
24   they printed out -- because it's all electronic and
25   you'd have to go in there and print them out as you

1  do them.  So I don't know if this got misplaced or
2  not.  But I know we couldn't get paid without all
3  the forms being submitted to Textura.
4      Q.   Do you know whether or not you actually
5  signed a waiver and sworn statement for this pay
6  application?
7      A.   Without seeing it, I can't affirm that.
8      Q.   Fair enough.  Do you know if this amount
9  of $251,295.14 was paid to D&N?
10     A.   I cannot tell you that.
11          MR. GARBER:  Eric, let me go off the
12  record.
13          (Off-the-record discussion.)
14          (Plaintiff's Exhibit #300 marked)
15  BY MR. NELSON:
16     Q.   All right.  Let's try to finish up here.
17  I'm going to hand you Exhibit 300, Mr. Munroe, and
18  ask you a few questions about this.
19     A.   Okay.
20     Q.   Okay.  Mr. Munroe, this is a cover letter
21  of December 15, 2011, from D&N to Travelers
22  Casualty, Liberty Mutual and Walbridge; is that
23  correct?
24     A.   That's correct.
25     Q.   And it attaches a letter of December 8th,