IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WALBRIDGE ALDINGER COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action File No. |
| DNS ELECTRIC COMPANY, DNS | ) | 1:11-CV-04602-ODE |
| CONSOLIDATED, INC. and MATTHEW | ) | |
| ARMSTRONG, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

***Consolidated With***
Civil Action File No. 1:12-CV-01135-ODE and
Civil Action File No. 1:13-CV-00743-ODE

## D & N ELECTRIC COMPANY'S RESPONSE IN OPPOSITION TO WALBRIDGE ALDINGER COMPANY'S, TRAVELERS' AND LIBERTY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

D & N Electric Company ("D & N") hereby submits its Response and Memorandum in Opposition to the Motion for Partial Summary Judgment of Walbridge Aldinger Company ("Walbridge"), Travelers Casualty and Surety Company of America and Liberty Mutual Insurance Company ("Movants"). This Response is based on the arguments in this Memorandum, the Affidavits and exhibits filed with this Response and the depositions and documents filed of record in this case.

I. <u>Summary of Argument</u>

This is a case about a general contractor, Walbridge, that agreed, through negotiations between its counsel and D & N, to substantial modifications to the Walbridge form subcontract, and then during the Project ignored the Addendum and proceeded to commit multiple and serious breaches of contract.  D & N gave Walbridge hundreds of notices throughout the Project of delays caused by Walbridge and its other subcontractors as well as notices of changes to the work.  Walbridge was well aware of the revised schedules, recovery schedules, design issues and disputes and requests for change orders during the Project, had ample opportunity to investigate the issues and deliberately pursued a course to further its own financial interests to the detriment of D & N.  The forms required by Walbridge did not release or waive D & N's claims and did not represent that D & N did not have any claims.  Walbridge prevented D & N from changing any of the forms.   The Addendum expressly prevents the Waivers and contract provisions from waiving and releasing D & N's claims.  Finally, D & N is entitled to maintain its claim for quantum meruit.

II. <u>Factual Background</u>

    A. <u>The Project and Subcontract Requirements</u>

Prior to execution of the Subcontract, D & N submitted an Addendum to Walbridge, which was negotiated between D & N's Chief Operating Officer, Michael Munroe, and Walbridge's in-house counsel (Munroe Aff. as Ex 1 hereto, ¶ 2; Munroe

Depo 4-30-13, 9:24 – 12:20; Ex. B to Movants' Motion).  The Addendum, as agreed upon through the negotiations, was included as part of the Subcontract. (Depo Exh. 4, Ex C to Movants' Motion)  Paragraph 27 of the Addendum contained an express provision that prohibited any form, waiver or release or any subcontract language from releasing or waiving D & N's retention, changes and claims for which it was not paid.  It provided as follows:

> "**Any form, waiver, release or contract language** wherein the Subcontractor waives or releases claims shall apply only to work for which payment has been received in full by Subcontractor and **shall not apply to retention or claims or changes for which Subcontractor has not been paid.**  However, in case of claims, Subcontractor shall list on the waiver its reserved and timely made claims". (Emphasis added)  (R. 1-4, ¶27)

Paragraph 30 of the Addendum further provided that "[i]n the event of conflict between the provisions of the Subcontract or other Contract Documents and the provisions of the Addendum, the provisions of the Addendum shall govern." (R. 1-4, p. 12, ¶30, Addendum ¶30.)

Walbridge required all of the Pay Applications and accompanying Waivers and Sworn Statements to be completed on Walbridge's forms, signed electronically and submitted through Walbridge's s on-line computerized Textura system.  Otherwise, it

would not make payment to D & N.  In the Textura system, Walbridge's forms could not be changed by D & N.  D & N could insert the amount for the cumulative waiver and the date.  There was no place on the form to list any reserved claims, and D & N tried to get Walbridge to change its forms, but Walbridge refused.  (See Munroe Affidavit attached as Exhibit 1 hereto, ¶s 4-6, R. 147 Munroe Depo, 4-30-13, p. 27:20-28:11, R. 130 Walker 8-8-13, p. 84:21-23)

Each of the Waiver forms had a different cumulative amount, which matched the amount for "Total Completed and Stored to Date" on the first page of the corresponding Pay Application form.  Walbridge would not allow D & N to include on any Pay Application and would not pay for any changes or claims unless Walbridge had issued a change order and D & N had returned a signed change order.  (Munroe Aff. ¶ 4 Ex. 1 attached hereto, See R. 130 Walker 8-8-13, 89:22-90:2)  Therefore, the amount in the Waiver corresponding to the amount for "Completed and Stored to Date" on the Pay Application did not include any amount for claims or changes for which Walbridge had not issued change orders.

B. D & N's Notices of Claims

Walbridge directed D & N to add labor, work overtime and work night shifts to meet revised schedules.  (R. 119, Anderson Depo., pp 114:12-115:22; R.  122, Jackson Depo., p 26:2-17; R. 128, Stevens Depo., pp 35:7-38:5; R. 129, Stevens

4

Depo., pp 96:5-98:11) (Affidavit of Kenneth Mabe , ¶¶1-7, Exh. A-D as Ex. 2 hereto) By letter of August 26, 2010, Walbridge's Project Manager, John Walker, directed D & N and the other subcontractors to provide the necessary manpower and work overtime to meet the revised schedule. (Mabe Aff. ¶2, Ex 2 hereto)  The revised schedule was necessary because of delays caused by Walbridge and its other subcontractors, not D & N.  (R. 119, Anderson Depo. pp. 82:25-83:4, pp. 9-22, 44:20-46:1),  and Walbridge did not issue any 48-hour notice of default to D & N as required for a default under Article XIV of the Subcontract (R. 1-3, p. 6, Subcontract Article IV.)  (R. 131, Walker depo, p 146:9-19; R. 132, Walker depo, pp 221:22-24; 262:11-14; 402:14-16). The revised schedules were substantially different from the Subcontract Schedule and accelerated and impacted D & N's work.  (Mabe Aff. ¶2, Ex 2 hereto) D & N added manpower, worked overtime and added night shifts to meet the revised schedules. (R. 128, Stevens Depo., p 100:2-22 (Mabe Aff. ¶¶2-5, Ex 2 hereto), and D & N incurred substantial additional costs.  (Mabe Aff. ¶ 5, Ex 2 hereto).

While notice was not required in response to Walbridge's directives, D & N provided notice in writing and verbally to Walbridge prior to September 16, 2010. During the course of the Project D & N gave hundreds of notices of delay to Walbridge, starting early in the job and continuing throughout the time period of

performance of the work.  (R. 137, Smith Depo, p. 97:18-22, Sieker Aff., as Ex. 3 hereto, ¶ 1-2, Exh. A to Aff.)    In July of 2010, when John Walker, Walbridge's Project Manager, insisted that D & N go on overtime, William Sieker, one of D & N's Project Managers, informed him that D & N was not at fault for the delays and that D & N would expect to be compensated if it went on overtime.  (Sieker Aff., ¶ 3, Ex. 3 hereto).  Walbridge knew as early as May of 2010 of problems with its masons that were causing major job delays and knew in June of 2010 that the COE was threatening an unsatisfactory performance rating for Walbridge that would be detrimental to its business.  (R.119, Anderson Depo. pp. 107:24-117:1; 189:9-190:12 ) (R.121, Hausmann Depo. pp. 44:20-46:1 52:9-53:12).  In July of 2010, the COE required Walbridge to submit a recovery schedule (Depo. Exh. 107; R. 131, Walker Depo. pp. 140:16-141:3, R. 131, Walker Depo. pp. 173-174).  On August 11, 2010, Walbridge sent a letter to the COE with the Recovery Schedule and told the COE that it had already implemented steps to have its major subcontractors work overtime and add nightshifts.  (R. 151, Walker Depo. pp. 141:6-142:3; R. 131, Walker Depo. pp. 127:1-20).  D & N sent an e-mail on August 23, 2010 that D & N was working a full crew of 100 plus electricians and adding 33 more, and on August 24, 2010 notified Walbridge that D & N was adding 25 electricians. (Exh. 2, Mabe Aff. ¶s 9 and 10, Exh.s B and C to Aff..).

The Project had both SIPRNET and non-SIPRNET telecommunications systems.  The e-mails of August, 2009, relied upon by Movants, were between Clay Loyd, the RCCD for D & N (R. 161, Loyd Depo, p. 12:2-9) and Nick Larkins, RCCD for Heapy Engineering, a sub-subcontractor to Walbridge, in which Mr. Loyd was explaining why Outside Plant ("OSP") cable was not required for non-SIPRNET communications cable under the slab.  Mr. Larkins states in one e-mail in August of 2009 is that he uses OSP under the slab, but he never states that OSP cable, rather than plenum cable, is required by the COE's Request for Proposal ("RFP") or any Specifications, Drawings or any other Design Document. After this e-mail exchange, Mr. Larkins understood that Mr. Loyd's position was still that the RFP did not require OSP cable under the slab for the non-SIPRNET communications cable.  (R. 172, Larkins Depo, p. 80:15-80:21) Mr. Larkins, as designer of record for the communications systems, did not include any requirement in the approved Design Specifications or Drawings specifying the use of OSP cable under the slab or any requirement that the under-slab cable had to be wet rated.  He only included a reference for compliance with the National Electric Code ("NEC").  The requirement for the under-slab communications to be OSP cable rated for a "wet location" did not arise until October 6, 2010, when the COE notified Walbridge that it was requiring the under-lab cable to be for a "wet location", relying upon Section 300.5 of the National Electric Code ("NEC").  (Exh. C to Motion)  Chapter 8, not Chapter 3, of the NEC

applies to cable for communications and does not have any requirement for cable to be for "wet locations". (R. 125, Mabe Depo, p.194-195; R. 161. Loyd Depo, pp. 122-123.) Chapter 3 is for general power wiring, not communications. (R. 125, Mabe Depo, p.194-195) On October 6 and 7, 2010, D & N notified Walbridge that the NEC did not require communications cable to be rated for "wet locations" and protested the requirement but was forced by Walbridge to proceed. (Depo Ex. 4, Ex. C to Motion).

The imposed requirement by the COE and Walbridge for D & N to run the SIPRNET entirely in a surface mounted raceway rather than under the slab arose on in February of 2010, after D & N executed the Subcontract in October of 2009 and was working on the Project. Prior to that time, the SIPRNET conduit and cable was required by the approved and accepted Drawings and Specifications to be run under the slab, and the designer of record, Mr. Larkins, thought that an underground SIPRNET installation was an applicable standard under the RFP. (R. 172, Larkins, Depo, p. 97:25-109:23, 168:12-169:19, 30:10-25) After being informed of the new requirement, as the e-mail chain relied upon by Movant shows, Clay Loyd did notify Walbridge on February 15, 2010 that costs were involved to change from the under slab installation to the above slab installation with surface mounted raceway and gave an estimate of $577,000 that he reduced to $475,000.00. [R. 161, Loyd Depo, p. 17:20-19:25; Loyd Ex. 628/Ex, Exhibit J to Movant's Motion].

C. D & N's Waivers and Releases

8

As set forth below, the Waivers did not release and waive claims that are included in this Action.  Walbridge did not rely on these Waivers to deny D & N's claims prior to raising the defense in this litigation.

III. Argument and Citation to Authority

    A. Response to the Movants' Standard for Summary Judgment

The Movants rely upon *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but it does not stand for the proposition that, where one party moves on limited issues and defenses, the other party must prove all elements of its case, including elements not challenged in the Motion for Summary Judgment.

    B. D & N's Executed Waivers and Releases Do Not Preclude its Claims

The Waiver forms at issue provided in relevant part that:

"I/We …hereby waive my/our construction lien rights, rights against any payment bonds and claim rights **arising from the improvement**, **in the cumulative amount of** [Amount which matches Total Completed and Stored to Date on the first page of the corresponding Pay Application]"

"This waiver, together with all previous waivers, if any, does cover all amounts due to me/us for the **contract improvements** provided through the date as above…."   (Emphasis added)

(R. 135, Munroe Depo., pp. 21-27, See Exhs. K and L to Motion)

Paragraph 27 of the Addendum expressly provides that forms, waivers, releases and contract language "shall not apply to waive or release unpaid claims and changes."  Movants ignore the first sentence of Paragraph 27 and focus only on the second sentence that provides:  "However, in case of claims, Subcontractor shall list on the waiver its reserved and timely made claims."  This language does not state that failure to list claims constitutes a waiver or release of such claims.  It does not require any listing on any waiver form of "changes".  The language to list on the form "reserved and timely made claims" did not require listing of claims where the Subcontract did not have a time limit for submission of such claims such as in Article V or where the time to submit the claim had not yet expired.  Since the Waiver is only to the extent of the amount listed, which did not include unpaid claims, such claims are not in the Waiver amount so as to be required to be reserved.

Movants' argument that the second sentence of Paragraph 27 waives claims, despite the first sentence, is contrary to Michigan and Georgia law that forfeitures are not favored.  See *Jenkins v. U.S.A. Foods, Inc.*, 912 F. Supp. 969 (E.D. Mich. 1996); *Russell v. KDA, Inc.*, 206 Ga. App. 397 (1992).  For forfeiture to be recognized, the "agreement must contain clear and unequivocal language requiring it."  *Leighton v. Leighton*, 10 Mich. App. 424, 434-435 (1968).  The second sentence of Paragraph 27 does not even mention waiver or release of claims.

In addition, Walbridge prevented the listing of claims on the form by requiring D & N to use Walbridge's Textura system for payment.  Under this on-line computerized system, D & N could not change the language of the forms prepared by Walbridge, and there was no place or ability to list reserved claims or to list exclusions.  "Where a party prevents the occurrence of a condition, the party, in effect, waives the performance of the condition [citation omitted.  Hence, the performance of a condition precedent is discharged or excused…" Harbor Park Mkt., Inc. v. Gronda, 277 Mich. App. 126, 131-32, 743 N.W.2d 585, 589 (2007).

The Waiver Forms were also limited by the language (**"in the cumulative amount of"**) to only the extent of the amount listed**.**  Under Michigan law, the insertion of the amount on the waiver form results in the waiver being only to the amount indicated.  See *Genzink Plumbing, Inc. v. Bank W*., 234110, 2003 WL 1985797 (Mich. Ct. App. Apr. 29, 2003).   Walbridge's form is based on the Michigan Lien Laws.  See *Duncan Pipeline,* supra.  Under Mich. Comp. Laws Ann. § 570.1115 , a "waiver obtained as part of a contract for an improvement is contrary to public policy, and shall be invalid, except to the extent that payment for labor and material furnished was actually made.…"  Furthermore, the amount listed on each Waiver was an amount that matched the amount for "Total

Completed and Stored to Date" on the Pay Application, and that amount did not include any amount for claims or changes that had not yet been issued and signed.

The Waiver here is the same one that the Court in *Duncan Pipeline,* supra, found to be ambiguous because of the use of the terms "claims arising from the improvement" and "contract improvements".  In denying Walbridge's motion for summary on the same Waiver form, the Court considered *Johnson Controls, Inc. v. Hunt Const. Group, Inc.*, 2004 WL 3323608 (E.D. Mich. Aug. 13, 2003); and *Hunt Const. Group, Inc. v. Construction Services, Inc.*, 375 F.Supp.2d. 612 (E.D. Mich. 2005), and found the waiver language in those two cases to be broader than the waiver language in the Walbridge form.  Movants attempts to distinguish *Duncan Pipeline* by relying on the second sentence of Paragraph 27, but this argument ignores the entire provision of the Addendum (addressed above) and the rationale in *Duncan Pipeline* that the wording on the form prepared by Walbridge was ambiguous.

Walbridge argues that the Addendum was drafted by D & N, but it was part of a negotiated Addendum between D & N and Walbridge's in-house counsel.  Because the terms were reached through negotiations and Walbridge's attorney was involved, the terms are not to be construed against the drafter.  *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 692 (8th Cir.1997); *see also Omega Healthcare Investors, Inc. v. Lantis Enters., Inc.,* 256 F.3d 774, 777 (8th Cir.2001.

Walbridge's claims that the term "improvement" is understood under lien law, but under Michigan law, a lien waiver is only to the extent of payment. Most importantly here Walbridge did not use only the word "improvements" in the Waiver. Rather it chose to use the terms "arising from the improvements" and to use the term "contract improvements" in the second paragraph (which paragraph does not contain the waiver language of the first paragraph). Walbridge also did not to include in the Waiver the same release language that it used in its Change Order form for "any and all actual or potential claims or demands for delays and disruptions or additional work." [Munroe Depo. Exh. 293, first page)

C. The Subcontract Does Not Bar D & N's Claims for Overhead, Profit, Inefficiencies, and Loss of Productivity

Walbridge's argument that D & N's claims are barred by the Subcontract is again another waiver argument. Paragraph 27 of the Addendum expressly prohibited any subcontract language from waiving or releasing unpaid changes or claims.

Article V of the Subcontract, as modified by the Addendum, expressly allows for recovery of "actual costs" for adding manpower, working overtime and expediting the schedule where D & N is not in default under the Subcontract:

"If the Subcontractor is not in default of any provision herein, the **Contractor shall pay the Subcontractor the actual costs incurred by the Subcontractor to furnish additional labor and to expedite deliveries of**

13

**materials and equipment, and the actual extra cost over the rate for regular time for overtime work. ....** <u>Except as otherwise provided in this Subcontract,</u> Subcontractor shall not be entitled to receive any amount for overhead or profit or for any inefficiencies or loss of productivity and shall not assert any claim for overhead or profit or damages due to loss of productivity or inefficiencies." (Emphasis added; underlining added to show language added by Addendum.)

The words "Except as otherwise provided in the Subcontract", were added by the Addendum to the very sentence relied upon by the Movants to argue for a waiver of inefficiency costs, overhead and profit.   One of the places in the Subcontract for "as otherwise provided in the Subcontract" is located two sentences above the sentence containing the language added by the Addendum.  That language requires Walbridge to pay for all "actual costs" for additional labor as well as overtime premium and other costs.  As set forth in the Facts Section, D & N was not in default under the Subcontract, Walbridge directed D & N to add labor, work overtime and work night shifts to meet revised schedules and D & N added manpower, worked overtime and added night shifts to meet the revised schedules.  D & N has claimed additional costs, which are actual costs.  Therefore, under Article V, as modified, D & N was entitled to recover all of its actual costs of additional labor, including

direct costs for craft labor, foremen and overhead.

The language of Article V of the Subcontract (without the added language of the Addendum here) was also held by the Court in *Duncan Pipeline*, not to bar loss of efficiency damages. It stated that "under Michigan law, exculpatory clauses that limit damages in construction contracts are subject to an exception where the damages were not of a kind contemplated by the parties." *See Phoenix Contractors, Inc. v. Gen. Motors Corp.,* 135 Mich.App. 787, 792, 355 N.W.2d 673 (1984); *Owen Constr. Co. v. Iowa State Dep't of Transp.,* 274 N.W.2d 304, 307 (1979). Michigan law also allows for damages to be recovered in lieu of an exculpatory clause where a party suffered from obstacles created by the adversary. *John E. Green Plumbing & Heating Co. v. Turner Constr. Co.,* 742 F.2d 965, 966–67 (6th Cir.1984) (applying Michigan law)." *Duncan Pipeline*, supra.

Paragraph 10 of the Addendum (R. 1-4, ¶10, Addendum ¶10) also allows for recovery D & N for its claimed costs. It included as the first sentence: "Subcontractor shall be entitled to make a claim for an equitable adjustment in the Subcontract time and price as a result of material delays and impacts caused by the negligence or intentional interference of Contractor or any of Contractor's other subcontractors or caused by changes to the work initiated by Contractor." Article V of the Subcontract (regarding Changes), as modified by

Paragraph 13 of the Addendum, required that adjustments to the Subcontract Price be made on an equitable basis and, if the parties could not agree on the adjustment, D & N was to proceed and the Subcontract Price "shall be equitably adjusted."   The mandate that the Subcontract Price be equitably adjusted requires that D & N be paid for all of its costs, overhead and profit as a result of Walbridge's directives and changes to the Subcontract, not just part of the costs without overhead, profit and inefficiencies.

Paragraph 1 of the Addendum provided that "Subcontractor shall have the benefit of all rights and remedies against Contractor that Contractor has against the Owner under the Contract Documents between Owner and Contractor.  Walbridge, as a contractor with the government, had the right to an equitable adjustment and to be paid for inefficiency costs as well as for overhead and profit on such costs.  See North American Const. Corp. v. U.S., 56 Fed.Cl. 73 (Fed.Cl.,2003). (equitable adjustment for change includes profit and overhead); Luria Bros & Co., Inc. v. U.S., 177 Ct. Cl. 676, 369 F.2d 701 (1966) (contractor may recover costs for loss of productivity).

Other provisions added by the Addendum gave D & N additional rights and imposed additional contractual obligations on Walbridge, which it breached, entitling D & N to recover all of its damages.  Paragraph 9 of the Addendum

16

required Walbridge to cooperate with D & N so that it could meet the dates in the Project Schedule and to assure that the Project Schedule and any modification allowed D & N a reasonable time to complete its work. Paragraph 6 of the Addendum required any Project Schedule to be agreed to by both Walbridge and D & N, which was to prevent what Walbridge did here, unilaterally change the schedules.   D & N is also entitled to recover all of its damages for breach of Walbridge's implied contractual obligations not to delay, hinder or interfere with performance of D & N's work and to act in good faith and deal fairly with D & N. See. Use & Benefit of Heller Elec. Co., Inc. v. William F. Klingensmith, Inc., 670 F.2d 1227 (D.C. Cir. 1982), Bat Masonry Co., Inc. v. Pike-Paschen Joint Venture III, 842 F. Supp. 174, 178 (D. Md. 1993).

> D. D & N's Claims are Not Barred by the Claimed Failure to Provide Notice

Movants' argument regarding lack of notice is again just another version of its waiver argument.  As with Walbridge's other waiver arguments, Paragraph 27 of the Addendum prohibits the contract language from being a waiver or release of unpaid claims and changes.

Other language in the Subcontract, relied upon by Movants, does not waive claims of D & N.  Walbridge quotes from Article II but omits the words "under this Article", but, when the complete sentence is viewed, it does not apply to other

Articles or the Addendum.  The language of Article VII quoted by Movants is a time period to submit quotes for "changed work" after receiving direction to perform the Work from Walbridge.  It is not a time period for submitting claims under other provisions of the Subcontract or submitting quotes for changes to the schedules. Furthermore, by the language of Article VII (without considering the Addendum), the consequence of not meeting the time period is not waiver of the right to be compensated but that the Subcontractor is bound by the Contractor's estimate is "deemed to have waived any right to propose a different amount".  However, Article VII was also modified by Paragraphs 22 and 23 of the Addendum to prevent D & N from being bound and to require any action of Walbridge to be reasonable. Thus, Paragraphs 27, 22 and 23 of the Addendum all prevent waiver under Article VII.  In addition, as Walbridge admits, the language of Article VII, does not have any time limit for submitting claims that involve defective drawings and specifications, citing *Duncan Pipeline*.

While the Court in *Duncan Pipeline* acknowledged that the twenty-day time limit for notice of changes in a federal contract could be met by actual notice to the Government, citing *K–Con Bldg. Sys., Inc. v. United States,* 100 Fed. Cl. 8, 30 (Fed.Cl.2011), the Court did not allow Duncan Pipeline to use actual notice as a substitute for written notice because it found that such right in the incorporated

FAR provision was for the benefit of Walbridge only.  Here, though, there is an express provision of the Addendum, giving D & N the benefit of all rights against Walbridge that Walbridge has against the Government. Therefore, since Walbridge has the right to use actual notice as notice of a change, D & N also has that right against Walbridge.  Walbridge has not argued lack of actual notice.

Walbridge's reliance on Paragraph 12 of the Addendum ignores the wording of the entire paragraph.  This paragraph did not impose any obligation on D & N to provide notice to Walbridge for "changes to the Subcontract" or for "extra work".  The only notice provision is for D & N to give notice of "additional work".  Again, though, even this limited notice requirement regarding "additional work" must be read with Paragraph 27 of the Addendum that <u>any</u> Subcontract language does not waive any change or claim for which D & N has not been paid.  This paragraph mandated that Walbridge issue change orders for extra work and changes to the Subcontract.  Walbridge breached this obligation by requiring D & N to perform changes and extra work without issuing Change Orders.

Walbridge apparently relies upon language in Article V of the Subcontract that D & N must give notice within seven days of delay or assume liability for the delay, but that language addresses D & N's liability for delay that it causes, not Walbridge's

liability to D & N for delays.  Furthermore, all that is required is one notice of the alleged delay within 7 days of the start of the delay.  Here D & N started early in the Project notifying Walbridge for delay, giving hundreds of notices of delays to Walbridge.

The notice provision in Paragraph 10 of the Addendum, relied upon by Movants, does not apply here.  It concerns the time to give notice to Walbridge for claims for delays and impacts caused by the COE, not delays and impacts for which Walbridge, rather than COE, is responsible.  The notice would not apply to delays and impacts caused by Walbridge and its other subcontractors because Walbridge would not be able to recover for such impacts or delays from the Owner.

All of the cases relied upon by Movants that lack of timely notice waives claims are based on different contract language and a finding of waiver. See *Associated Mechanical Contractors, Inc. v. Martin K. Eby Constr. Co.*, 271 F.3d 1309, 1316-17 (11th Cir. 2001) *PCL Civil Constructors, Inc. v. Department of Transportation*, No. 0237184, 2003 WL 22715798, at *2 (Mich. Ct. App. 2003) and *Duncan Pipeline* supra.   Here, the Paragraph 27 of the Addendum, which controls, expressly prohibits any subcontract language from being a waiver or release of retention, claims or changes for which D & N has not been paid.

1. <u>D & N's Claims for Additional Costs Due to Walbridge's Directives and Revised Schedules are Not Barred for Costs prior to September 16, 2010.</u>

Movants admit that the September 16, 2010 letter was adequate notice. The paragraph of Article V allowing D & N to be paid for its actual additional costs does not have any notice requirement or time limit to submit claims. Walbridge's form subcontract acknowledged that Walbridge did not need notice of its own directives to accelerate the work or to add manpower, work overtime or work night shifts.

Moreover, the facts show that D & N gave hundreds of notices prior to September 16, 2010. (See Fact Section above) The September 16, 2010 letter from Ken Mabe was not the first notice that Walbridge had received that it was requiring D & N to add manpower, work overtime and work a night shift. The various notices are set forth in the Factual Section above.

    2.  <u>D & N gave timely notice regarding the OSP cabling issue.</u>

As set forth in the Facts above, the issue regarding the requirement for non-SIPRNET communications cable under the slab to be OSP cable to satisfy a new interpretation by the COE for cable rated for a "wet location" did not arise until October 6,. D & N notified Walbridge on October 6 and 7, 2010 that it did not agree with the new interpretation and that it was not required by the National Electric Code for under slab communications cable. Walbridge asserts, but does not cite any testimony, that it was prejudiced and deprived of the opportunity to investigate this dispute. As the e-mails in August of 2009 show, Walbridge's designer of record for the communications knew of Clay Loyd's interpretation of the RFP yet did not put

any requirement into the final design packages, which were approved by the COE, specifying OSP cable that is wet rated for under slab non-SIPRNET communications. When the issue arose in October of 2010 that the COE wanted cable rated for a "wet location", Walbridge was made well aware of D & N's opposition to this new interpretation, but Walbridge chose to side with the COE rather than working with D & N to challenge the COE's interpretation.  When D & N submitted its request for a change order for the communications changes, Walbridge refused to submit it to the COE.  Walbridge also is not prejudiced because its contract with the COE has not been closed out (Walker Depo 30(b)(6), p357:7-12), and it could still pursue a claim against the COE because this issue does involve defective specifications (the RFP) and there is no time limit prior to final payment to submit a claim for defective specifications.  The RFP from the COE, which was be used for the design, was defective in that it omitted any requirement for communication cables under the slab to be OSP or "wet rated".  Including compliance with the NEC as a requirement for the cables by Walbridge's designer of record was inadequate to specify OSP "wet rated" cable under the slab since Chapter 8, not Chapter 3, governs communications cables, and it has no requirement for wet rated OSP cables under the slab.

    3.  D & N gave timely notice regarding surface mounted SIPRNET.

    As set forth in the Facts Section above, the same e-mail chain that Walbridge uses to establish when the issue arose also establishes that D & N gave notice

promptly after the issue arose. (Depo. Exh. 628, Exh J to Motion)  Both the raising of the issue and the notice of costs occurred in February of, 2010.  Walbridge was well aware of D & N's position, but refused to challenge the COE and required D & N to proceed with installing the SIPRNET cable above the slab in raceways. (E-mail dated February 26, 2010 from Jeffrey Schulman, first page of Depo. Exh. 257, 628.)

The Movants are also incorrect that this issue does involve defective specifications.  The design for the Project, including the SIPRNET, was to be based on the RFP.  The RFP referenced various documents for design of the SIPRNET.  One of such documents, the NITISSI allowed for the SIPRNET to be buried under the slab. (Larkins, Depo, p. 105:9-107:1) After the COE had accepted the design with the SIPRNET run under the slab, it took the position that another part of the RFP required the SIPRNET to be a raceway above the slab.  However, that part of the RFP did not prohibit under slab cable for the SIPRNET.  This conflict in the design documents is a defect in the design criteria.  Furthermore, the Specifications that were issued by Walbridge and BWSC to D & N specifically provided for the SIPRNET to be run under the slab.  If the intent of the COE, BWSC and Walbridge was really to prohibit under slab cable for the SIPRNET, then these Specifications are also defective because they cannot accomplish such a design intent.  The Movants are also incorrect that D & N's Claim letter of December 2011 did not raise design issues and defective specifications issues. (See Movant's Exh. F)

E.    D & N's claim for *Quantum Meruit* should not be dismissed.

Since the quantum meruit claim is not under the Subcontract, it would be governed by Georgia law, the state where the work was performed.   Godinger Silver Art Co. v. Olde Atlanta Mktg., 269 Ga.App. 386, 389, 604 S.E.2d 212 (2004).   Under Georgia law, D & N can recover on quantum meruit.   In Circle Y Const., Inc. v. WRH Realty Servs., Inc., 721 F. Supp. 2d 1272, 1280-81 (N.D. Ga. 2010) aff'd, 427 F. App'x 772 (11th Cir. 2011), the Court held that if "for some reason Circle Y's breach of contract claim (either based upon the written contract or oral contract) is found to be legally infirm, the Court concludes that Circle Y would prevail under the alternative theories of quantum meruit and unjust enrichment. *See* O.C.G.A. § 9–2–7; *Langford v. Robinson,* 272 Ga.App. 376, 380, 612 S.E.2d 552, 556 (2005)…"   In Biederbeck v. Marbut, 294 Ga. App. 799, 803, 670 S.E.2d 483, 487 (2008), the Georgia Court of Appeals considered the *Choate* case cited by Walbridge but determined that a jury question was presented as to "whether appellee's services were covered by the parties' written agreement or whether appellee's services were 'extra,' undertaken at the direction of appellant with knowledge that additional compensation would be expected."   quoting *Pro Metal,* 170 Ga.App. at 129(2), 316 S.E.2d 574.   See also Puritan Mills, Inc. v. Pickering Construction Co., Inc., 152 Ga.App. 309, 310, 262 S.E.2d 586 (1979)

(recovery in quantum meruit allowed when work undertaken was not contemplated at time contract was executed.)  The Court held that the Plaintiff was entitled to assert a claim in quantum meruit, "notwithstanding a stipulation of the contract requiring a written order [for all changes]." *Pro Metal,* 170 Ga.App. at 128(1), 316 S.E.2d 574." Id.   Georgia also provides a statutory right to recovery under O.C.G.A. § 9–2–7.  Movants have not introduced any facts for its Motion other than the fact there is a written contract.  Whether D & N has a claim in quantum meruit for work performed outside of the agreement between the parties is a question of fact for the jury.  Pro Metal, 170 Ga.App. at 129, 316 S.E.2d 574.

VI. Conclusion

For the foregoing reasons, D & N requests that the Court deny Movants' Motion for Partial Summary Judgment in its entirety.

This 22nd day of October, 2013.

s/Ronald J. Garber
Georgia State Bar No.: 283838
Counsel for D & N Electric Company
Weissmann Zucker Euster Morochnik P.C.
One Securities Centre, Suite 650
3490 Piedmont Rd.
Atlanta, Georgia 30305
404-760-7425 direct
404-364-2320 facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WALBRIDGE ALDINGER COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action File No. |
| DNS ELECTRIC COMPANY, DNS | ) | 1:11-CV-04602-ODE |
| CONSOLIDATED, INC. and MATTHEW | ) | |
| ARMSTRONG, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

***Consolidated With***
Civil Action File No. 1:12-CV-01135-ODE and
Civil Action File No. 1:13-CV-00743-ODE

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2013, I served a true and correct copy of

<u>Defendant D & N Electric Company's Response in Opposition to Walbridge</u>

<u>Aldinger Company's, Travelers' and Liberty's Motion for Partial Summary</u>

<u>Judgment</u> on counsel of record for all parties via the CM/ECF systems, which will

automatically send e-mail notification to the following:

<table>
<tr><td>

Eric L. Nelson
Douglas L. Tabeling
Smith, Currie & Hancock LLP
2700 Marquis One Tower
245 Peachtree Center Ave. NE
Atlanta, GA 30303-1227

</td><td>

Patrick Joseph O'Connor
Kenneth A. Shapiro
Mitchell & Shapiro, LLP
One Securities Centre, Suite 650
3490 Piedmont Road, NE
Atlanta, GA 30305

</td></tr>
<tr><td>

Brian Joseph Duva
Richard S. Bruno
Mozley, Finlayson & Loggins, LLP
One Premier Plaza, Suite 900
5605 Glenridge Drive
Atlanta, GA 30342-1386

</td><td>

Mike Crawford
Stephen Michael Schatz
Swift, Currie, McGee & Hiers, LLP
The Peachtree, Suite 300
1355 Peachtree Street NE
Atlanta, GA 30309-3238

</td></tr>
</table>

The undersigned hereby also certifies that, pursuant to Local Rule 7.1 D, ND Ga., the attached pleading has been prepared in Times New Roman, 14 point font, a font and point selection approved by this court in Local Rule 5.1 B, ND Ga.

This 22nd day of October, 2013.

s/Ronald J. Garber
Georgia State Bar No.: 283838
Counsel for D & N Electric Company and
DNS Consolidated, Inc.
Weissmann Zucker Euster Morochnik P.C.
One Securities Centre, Suite 650
3490 Piedmont Rd.
Atlanta, Georgia 30305
404-760-7425 direct
404-364-2320 facsimile
Ron@wzlegal.com

27