IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WALBRIDGE ALDINGER COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 1:11-CV-04602-ODE |
| v. | ) | |
| | ) | |
| D & N ELECTRIC COMPANY, | ) | |
| DNS CONSOLIDATED, INC., and | ) | |
| MATTHEW ARMSTRONG, individually, | ) | |
| | ) | |
| Defendants. | ) | |

***Consolidated With***

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the | ) | |
| use and benefit of D & N ELECTRIC | ) | |
| COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 1:12-CV-01135-ODE |
| v. | ) | |
| | ) | |
| TRAVELERS CASUALTY AND | ) | |
| SURETY COMPANY OF AMERICA, | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, and WALBRIDGE | ) | |
| ALDINGER COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

1

*And Consolidated With*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use and benefit of DNS CONSOLIDATED, INC., | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 1:13-CV-00743-ODE |
| v. | ) | |
| | ) | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, and WALBRIDGE ALDINGER COMPANY, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**WALBRIDGE ALDINGER COMPANY'S, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S, AND LIBERTY MUTUAL COMPANY'S RESPONSE AND MEMORANDUM IN OPPOSITION TO D&N ELETRIC COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Court should deny D&N Electric Company's ("D&N")'s Motion for Partial Summary Judgment because D&N cannot show the requisite elements for summary judgment. In fact, D&N's motion requests summary judgment on several areas on which Walbridge Aldinger Company ("Walbridge"), Travelers Casualty and Surety Company of America ("Travelers"), and Liberty Mutual Insurance Company

2

("Liberty") (collectively the "Walbridge Parties") have already requested, and are entitled to, summary judgment.

## I.   SUMMARY OF ARGUMENT

D&N's motion asserts antithetical points in an attempt to "have its cake and eat it too."  It wants the benefit of certain contract provisions, without having to comply with others. D&N should not be granted summary judgment for several specific reasons:

(1)     Walbridge has shown damages arising from D&N's breach of contract;

(2)     Setting aside D&N's voluntary waiver of its acceleration claim, factual issues exist regarding D&N's own liability for its alleged acceleration costs versus Walbridge's liability for those costs;

(3)     The Subcontract exculpatory clause precludes D&N's claims for loss of productivity, acceleration, overhead, and profit;

(4)     D&N agreed to, or failed to object to, revised project schedules issued by Walbridge;

(5)     D&N voluntarily signed waivers that expressly released its claims; and

(6)     D&N's motion related to fraud and forfeiture is not only factually disputed, but is also not yet ripe for determination as the Court has not ruled on Walbridge's motion for leave to amend.

3

## II.   FACTS

In 2009, Walbridge entered into a design/build contract (the "Prime Contract") with the United States Army Corps of Engineers (the "Corps") under which Walbridge agreed to serve as the general contractor for the construction of the IBCT project at Fort Stewart, Georgia (the "Project").   [Dkt. 7 - D&N Counterclaim ¶ 6].   In accordance with the Miller Act, 40 U.S.C. § 3131(b), Travelers and Liberty, as sureties, and Walbridge, as principal, issued a payment bond to the Corps.   [Walker Ex. 84/Ex. A hereto][1].

Walbridge and D&N entered into a subcontract ("Subcontract") for design assist services and construction for the electrical portions of the Project.   [Dkt. 135 - Munroe Dep. 10:15-12:9].[2]   Part of the Subcontract includes an Addendum drafted by D&N. [*Id.*].

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Summary Judgment Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970).

---

[1]   All relevant excerpts from deposition transcripts are attached as follows: [Deponent Name or Exhibit followed by the Exhibit Number to this Memorandum].
[2]   Cited excerpts from Munroe's deposition are attached as Exhibit II.

When determining whether the moving party has met its burden, the court must view the evidence and factual inferences in the light most favorable to the nonmoving party. *Id.* Consequently, "if reasonable minds could differ on the inferences arising from disputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). Put differently, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933-34 (11th Cir. 1989). The primary issue before the Court is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505 (1986). The court must not weigh conflicting evidence when faced with summary judgment. *Id.* at 255.

## B.    D&N's Contractual Breaches Injured Walbridge

D&N failed to meet its initial burden for summary judgment because it cites no evidence, record, or fact supporting its claim that Walbridge lacks evidence for breach of contract damages. That said, at the time Walbridge filed suit, other damages were at issue; however, the Third Supplemental Initial Disclosures describe the full extent of damages that Walbridge is seeking, excluding damages related to Walbridge's fraud

5

claim against D&N.  [Dkt. 81 pp. 1-2/Ex. B hereto].  D&N's request for summary judgment based on a failure to quantify damages is improper for two reasons.

First, D&N's request is unsupported by Michigan or Georgia law because neither requires Walbridge to show quantified damages for its breach of contract claims.  *See, e.g. Walby v. Aviva U.S.A.*, No. 11-cv-13312, 2013 WL 153379, at * 4 (E.D. Mich. Jan. 15, 2013), *Eastview Healthcare, LLC v. Synertx, Inc.*, 296 Ga. App. 393, 398, 674 S.E.2d 641, 646 (2009) (failure to present admissible evidence establishing the amount of actual damages did not warrant summary judgment).[3] Rather, Walbridge need only show that that D&N's breaches caused a contractual injury because damage amounts are generally a disputed issue of fact reserved for trial. *Id.*

Second, Walbridge has quantified the damages for which it is seeking compensation in its Third Supplemental Initial Disclosures.  [Dkt. 81 pp.1-2/Ex. B hereto].  These damages include the damages categories that D&N has moved for summary judgment on.  Consider D&N's Buy America Act violations, which:  (1) arose from D&N's failure to perform its work as required by the Subcontract; (2) affected the project schedule by requiring replacement of installed parts; and (3) arose from D&N's breach of its design assist obligation by designing systems that contained

---

[3]   The Subcontract contains a Michigan choice of law provision.  [Anderson Ex. 4 – XXVIII(k)/Ex. F hereto].

non-compliant materials.  D&N knew that its Subcontract required compliance with the Buy America Act.  [Dkt. 125 – Mabe 30(b)(6) 106:23-107:16].[4]  Yet D&N continually breached this requirement by both designing systems, such as the fire alarm, that contained non-compliant parts and installing non-compliant materials in violation of its Subcontract.  [Dkt. 125 – Mabe 30(b)(6) Ex. 228/ Ex. J] [Chace 93:16-23][5] [Chace Ex. 695/Ex. C hereto].  D&N's Buy America Act violations were so severe that the Department of Defense brought an action against D&N for such violations on the Project.  [Dkt. 146-1 - Armstrong 70:18-77:6].[6]  Thus, the Buy America Act costs that Walbridge incurred are directly related rework caused by D&N's failure to perform its design assist role in providing a compliant system and complete its work in compliance with the Subcontract, which negatively affected D&N's ability to meet its scheduling requirements.  Walbridge quantified its injuries from D&N's Buy America Act violations, as listed in Walbridge' Third Initial Disclosure.  [Dkt. 81 p. 2].  Accordingly, the Court should deny D&N's motion for summary judgment for breach of contract because material facts exist on the extent of Walbridge's damages.

---

[4]   Cited excerpts from Mabe's deposition are attached as Exhibit JJ.
[5]   Cited excerpts from Chace's deposition are attached as Exhibit KK.
[6]   Cited excerpts from Armstrong's deposition are attached as Exhibit LL.

### C. Walbridge's Claim for Costs Related to Graybar's Action is Ripe

Walbridge's claim for expenses related to Graybar's action styled *Graybar Electric Company, Inc. v. Walbridge Aldinger Company, et al*, Civil Action File 1:12-cv-01458, which is currently pending before the District Court for the Northern District of Georgia (the "Graybar Action"), is ripe for determination because Walbridge has incurred, and will continue incurring, expenses in the Graybar Action that are attributable to D&N.  The fact that judgment has not been entered is irrelevant because Michigan law only requires the "existence of an actual controversy."  An actual controversy exists where:  (1) The party suffers an "injury in fact" – i.e. an actual and concrete invasion of a legally protected interest; (2) The injury in fact is casually connected or traceable to the other party's action or inaction; and (3) The injury is likely, as opposed to speculative, and may be redressed by a favorable decision.  *Lontz v. Continental Casualty Company*, No. 281183, 2009 WL 794480, at *2 (Mich. App. March 26, 2009).

Walbridge's claim for expenses related to the Graybar Action meets these requirements.  First, Walbridge has suffered an injury in fact because Walbridge has incurred, and paid, legal fees defending against the Graybar Action.  [Dkt. 81 p. 1/Ex. B hereto].  Second, the Graybar Action costs are connected to the current action because they arise from D&N's failure to pay Graybar, D&N's supplier on the Project, for materials that Graybar supplied to D&N for the Project.  [Graybar Complaint/Ex. G

hereto].  Third, a favorable decision from this Court would address the injury because

D&N is ultimately responsible, per its Subcontract, for paying Graybar and

indemnifying Walbridge for claims by D&N's subcontractors.  [Anderson Ex. 4

Article XI/Ex. F hereto].  By meeting these three factors, Walbridge has satisfied the

test for standing and is entitled to pursue the claim against D&N.  The mere fact that

judgment has not been entered in the Graybar Action does not defeat standing because

Walbridge has already established standing via an injury in fact.

### D.   D&N's Claims for Acceleration, Revised Schedules, and Breaches of Express and Implied Duties are Precluded by D&N's Own Contractual Breaches

D&N selectively cites incomplete Subcontract provisions, and wholly ignores

other provisions because a complete reading of the Subcontract not only precludes

D&N's motion for summary judgment, but bolsters the Walbridge Parties' own motion

for summary judgment.

The simple fact is that D&N can only recover for acceleration where D&N

shows that they complied with the Subcontract notice provisions in making the claim,

have not otherwise waived the claim, and show that the claimed damages are directly

tied to a Walbridge directive to accelerate rather than D&N's own performance

failures.

**1. Factual issues preclude D&N's claim for acceleration costs under Article V of the Subcontract**

D&N cannot recover damages from the Walbridge Parties, where the damages were the result of D&N's own performance failures. The record is replete with instances where D&N failed to perform its work adequately, thus causing its own work to be negatively impacted.  [Harper Ex. 309/Ex. H hereto] [Walker Ex. 175/Ex. I hereto].  For example, D&N:

- Failed to timely obtain materials, which impacted the Project schedule and productivity [Mabe 30(b)(6) Ex. 244/Ex. Q hereto] [Mabe 30(b)(6) Ex. 246/Ex. R hereto] [Mabe 30(b)(6) Ex. 254/Ex. S hereto] [Sieker Ex. 464/Ex. W hereto] [Chace Ex. 677/Ex. Y hereto] [Chace Ex. 684/Ex. Z hereto];

- Failed to perform properly perform Subcontract work, which required additional men to perform rework.  [Walker 30(b)(6) Ex. 141/Ex. P hereto] [Mabe 30(b)(6) Ex. 274/Ex. T hereto];

- Failed to supervise its workforce, resulting in inefficient workers and lost productivity [Harper Ex. 310/Ex. U hereto] [Harper Ex. 306/Ex. V hereto] [Sieker 473/Ex. X hereto];

- Was unproductive due to a lack of qualified workers and necessary equipment; [Walker Ex. 178/Ex. DD hereto] [Harper Ex. 310/Ex. U hereto]; and

- Failed to accurately track any related hours, time, or costs for its acceleration claim.  [Harper Ex. 306/Ex. V hereto] [Harper Ex. 305/Ex. AA hereto] [Harper Ex. 473/Ex. X hereto].

D&N recognized in numerous emails and its own daily reports that, not only was it responsible for delays, but that its delays were affecting the Project.  [Mabe 30(b)(6) Ex. 223/Ex. K hereto] [Mabe 30(b)(6) Ex. 237/Ex. L hereto] [Mabe 30(b)(6) Ex. 240/Ex. M hereto] [Mabe 30(b)(6) Ex. 245/Ex. N hereto] [Sieker Ex. 481/Ex. O hereto] [Mabe 30(b)(6) Ex. 273 – Select Daily Reports/Ex. BB hereto].  Walbridge's Experts further detailed D&N's violations that required additional labor, expedited material and equipment deliveries, overtime, additional shifts, and holiday/weekend work at length in their expert report.  [Dkt. 105-1 PMA Expert Report p. 23-55] [Dkt. 105-2 PMA Expert Report p. 1-38].  All of these performance failures led to cost overruns that D&N is now trying to recover from Walbridge.  D&N's seemingly endless violations also led Walbridge to confront D&N with a 48 hour notice of termination.  [Walker Ex. 175/Ex. I hereto].

D&N attempts to sidestep its own responsibility by arguing that D&N was never formally placed in default under Article XIV; however, this argument ignores the rest of the Subcontract, which contains notice requirements, waivers, and a duty for D&N to show that the claimed damages arose from a Walbridge order to accelerate rather than from D&N's own performance failures.   Indeed, a complete reading of Article XIV further undermines D&N's position because Article XIV states that its remedies "shall be considered separate and cumulative and shall be in addition to every other remedy given hereunder or under the Contract Documents or now or hereafter at law or in equity."  [Anderson Ex. 4 Article XIV/Ex. F hereto].  In other words, Article XIV does not alter D&N's responsibilities to meet other Subcontract requirements, such as providing proper notice of a claim or proving that its claimed damages arose from Walbridge's order to accelerate rather than D&N's own issues; nor does it affect the 21 waivers that D&N signed during the Project's performance.  [Munroe Ex. 298/Ex. CC hereto].

A simple example demonstrates the problem with D&N's interpretation. Applying D&N's interpretation of Article XIV and Article V, D&N would only be responsible for acceleration costs when D&N was placed in default under Article XIV. Therefore, D&N could add as much manpower and work as many overtime hours as it wished and recover from Walbridge the costs for that, regardless of whether such

measures were necessitated by Walbridge's actions.  In effect, D&N argues it should have unfettered power to recover acceleration costs from Walbridge, regardless of the underlying cause necessitating the acceleration.  Further, D&N's argument implies it should be excused from all other Subcontract provisions, including Article V's provision requiring D&N to give notice to Walbridge within seven days of encountering any alleged delay.  [Anderson Ex. 4 – Article V/Ex. F hereto].  D&N admitted to experiencing its own performance problems on the Project, but failed to make the proper adjustment for these problems.  Further, D&N has proffered no evidence that it gave notice to Walbridge within seven days of any alleged delays.  Thus, awarding D&N acceleration damages in the absence of any proof from D&N that those damages are Walbridge's responsibility would allow D&N to recover damages for its own performance failure.

Additionally, D&N itself failed to comply with Article V's requirements for acceleration costs.  Mainly, D&N cites no evidence that it provided Walbridge with invoices and time slips.  Instead, D&N incorrectly argues a supposed Subcontract obligation requiring Walbridge to check and approve time slips and invoices substantiates D&N's claim for acceleration.  By stating that "[a]ll such costs shall be substantiated by invoices and time slips checked and approved on a daily basis by Contractor," the Subcontract requires D&N to substantiate the amounts claimed using

time slips and invoices that Walbridge approves on a daily basis.  [Anderson Ex. 4 –

Article V/Ex. F hereto].  Similarly, D&N's citation to Walker's testimony is

unpersuasive because Walker does not state that D&N submitted the invoices and time

slips or that Walbridge was under any obligation to approve submitted invoices or time

slips.  [Dkt. 132 – Walker 418:9-420:9].[7]  Thus, D&N has not met its burden showing

that it complied with Article V's requirements of substantiating costs with invoices and

time slips.

The Subcontract does not support D&N's argument that acceleration costs under

Article V are excluded from the Subcontract's notice requirements.  In fact, as

discussed at length in the Walbridge Parties' previously filed Memorandum in Support

of their Motion for Partial Summary Judgment, the notice requirements apply to all

claims.  [Dkt. 140-2 pp. 16-20] [Anderson Ex. 4 - Article II/Ex. F hereto].  And in this

case, the Subcontract required D&N to provide notice within fourteen days at the

absolute latest, which it failed to do.  [Anderson Ex. 4 – Article VII/Ex. F hereto].

D&N did not provide notice of its claims for delays, acceleration, inefficiency, or loss

of productivity until September 16, 2010, several months after many of these supposed

delays arose.  [Dkt. 105-1 p. 49] [Dkt. 145-1 - Smith Dep. 10:14-16].[8]  By failing to

provide notice, D&N forfeited any claims for delays, acceleration, inefficiency, or loss

---

[7]   Cited Excerpts from Walker's deposition are attached as Exhibit MM.
[8]   Cited Excerpts from Smith's deposition are attached as Exhibit NN.

of productivity prior to September 16, 2010.  *See Associated Mechanical Contractors, Inc. v. Martin K. Eby Constr. Co., 271 F.3d 1309, 1316-17 (11th Cir. 2001)*.

D&N's claims are also barred by Article V's exculpatory clause.  As discussed in length in the Walbridge Parties' previously filed Memorandum of Law in Support of their Motion for Partial Summary Judgment, parties are free to waive numerous and substantial rights.  [Anderson Ex. 4 – Article V; Bates WA0763138/Ex. F hereto] [Dkt. 140-2 pp. 15-16], *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 664 N.W.2d 776, 787 (2003).  And while *Duncan Pipeline* did create an exception, the exception was based on Duncan's defective specification and differing site conditions claims, which the court found precluded summary judgment for Walbridge.  *Duncan Pipeline, Inc. v. Walbridge Aldinger Co,* No. CV411-092, 2013 WL 1338392, at *16 (S.D. Ga. Mar. 29, 2013).  D&N has not asserted claims for defective specifications or for differing site conditions; the exceptions, thus, do not apply.  Furthermore, the simple fact that the exculpatory provision is located in the same paragraph as the language dealing with acceleration related claims shows that the parties intended the provision to cover the very type of damages that D&N is now claiming.  Accordingly, the exculpatory provision bars D&N's damages for acceleration.

Further, D&N's execution of waivers and releases certifying that it had no other claims precludes its motion for summary judgment.  The Walbridge Parties

Memorandum in Support of their Motion for Partial Summary Judgment extensively discusses D&N's waiver of its claims by executing sworn statements and waivers. [Dkt. 140-2 pp. 10-14].  Specifically, these waivers "cover all amounts due to [D&N] for the contract improvements provided through the date as above."  [Munroe Ex. 298/Ex. CC hereto].  Per the Subcontract, D&N released any claims not specifically listed on the waivers.  [Anderson Ex. 4 – Bates WA0763141/Ex. F hereto]. And, as D&N did not reserve any claims by listing them on the waivers and releases, D&N waived its claims.  [Munroe Ex. 298/Ex. CC hereto].  Therefore, D&N's motion for summary judgment for acceleration costs should be denied because D&N waived these claims.

**2. Factual issues preclude D&N's claim for summary judgment for breach of express and implied contractual duties related to Walbridge's revised schedule**

D&N fails to provide the requisite factual or legal basis to support its motion for summary judgment.  Besides being virtually unsupported by any factual citations, D&N also ignores its culpability for delays and cost overruns caused by D&N's own performance issues.  These costs are detailed more fully in Section III(D)(1).

D&N relies on Paragraph 12 of the Addendum to argue that D&N was entitled to a change order for the updated schedule and that Walbridge's failure to provide such was a breach of the Subcontract.  A full reading of the provision, however, once again undermines D&N's argument.  Paragraph 12 of the Addendum only requires

Walbridge to issue a change order if D&N "provides written notice to [Walbridge]
prior to performing such work that [D&N] considers such work to be extra work or a
change to the Subcontract." [Anderson Ex. 4 – Bates WA 0763139/Ex. F hereto].
D&N has not alleged in its motion, and in fact did not, provide notice of any of its
claims prior to performing the work. Accordingly, under the plain reading of the
Addendum provision that D&N negotiated, D&N is not entitled to recovery.
[Anderson Ex. 4 – Bates WA 0763139].

Setting aside D&N's failure to comply with Article VII's notice requirements, a
factual issue remains as to whether D&N agreed to subsequent Project Schedules that
Walbridge issued. Walbridge had weekly meetings with the subcontractors on the
Project, including D&N, where the schedule was discussed. [Dkt. 122 – Jackson
30:18-37:17].[9] During these meetings, D&N committed to the schedule updates. [Dkt.
122 – Jackson 18:16-20:13; 22:9-25:4; 56:8-60:13; 68:5-14; 115:19-119:10; 157:8-18].
Not only did D&N commit to the schedules, but D&N had a hand in revising the
schedules to reflect actual project conditions. [Dkt. 122 – Jackson 56:8-60:13; 68:5-
14; 115:19-119:10]. Any schedule changes made during the meetings were then
included into the main project schedule. [Dkt. 122 – Jackson 115:19-119:10]. The
record contains no evidence that D&N objected to any schedule updates until after the

---

[9]    Cited Excerpts from Jackson's deposition are attached as Exhibit OO.

Project was finished.  If D&N had objections to the schedule, then D&N was obligated to notify Walbridge of the objections in writing, which it failed to do.

As discussed in Section III(D)(1) above, and in the Walbridge Parties' Memorandum in Support of their Motion for Partial Summary Judgment, D&N waived any claims for the alleged breaches of Walbridge's express and implied duties by failing to provide timely notice under the Subcontract and by executing waivers and releases.  [Dkt. 140-2 pp. 10-22].

D&N has provided no factual support for its allegations that Walbridge breached any implied contractual duties.  The facts do show, however, that Walbridge consistently worked with D&N and other subcontractors in an attempt to complete the Project.  [Dkt. 122 – Jackson 18:16-20:13; 22:9-25:4; 56:8-60:13; 68:5-14; 115:19-119:10; 157:8-18].  Accordingly, because D&N has failed as a matter of law to meet its initial burden, D&N's request for summary judgment should be denied.

### E.    Not Only is Walbridge Entitled to Continue Pursuing its Waiver Defenses, but the Subcontract's Plain Language Entitles Walbridge to Summary Judgment on the Waivers

The Walbridge Parties discussed the waiver extensively in their previously filed Memorandum in Support of their Motion for Partial Summary Judgment and rely on such in this response.  [Dkt. 140-2 p. 10-15].

### 1.  D&N failed to list any claims on the waivers

The Subcontract required D&N to submit to Walbridge payment applications before receiving payment for work performed.  [Anderson Ex. 4 – Article III/Ex. F hereto].  Completed waivers, releases, and sworn statements by D&N are an express condition precedent to D&N's payment.  [Anderson Ex. 4 – Article III/ Ex. F hereto]. According to the Subcontract addendum drafted by D&N, all D&N claims not listed on the waiver were released or waived because D&N was required to "list on the waiver its reserved and timely made claims."  [Anderson Ex. 4 - Bates WA0763141/Ex. F hereto].

D&N signed waivers, releases and sworn statements as part of its pay application process that waived any and all claims through February 20, 2011. [Munroe Ex. 298 – Bates D&N087348-50/Ex. CC hereto].  The waivers and releases state that D&N "waive[s] [its] construction lien rights, rights against any payment bonds, and claims arising from the improvement" and "together with all previous waivers, if any, does cover all amounts due to [it] for the contract improvements provided through the date as above."  [Munroe Ex. 298/Ex. CC hereto].  D&N did not identify any potential claims on any signed waiver, release, or sworn statement, as required by the Subcontract addendum that D&N drafted.  [Dkt. 135 - Munroe. 28:12-23; 30:20-25] [Munroe Ex. 298/ Ex. CC hereto] [Anderson Ex. 4 – Bates

WA0763141/Ex. F hereto]. Therefore, D&N knowingly waived its claims though February 20, 2011.

D&N now essentially asks this Court to relieve it from its Subcontract obligations by adopting an overly expansive, and creative, interpretation of one Subcontract provision – to the detriment of the Subcontract as a whole. D&N's only grounds for avoiding the waivers is an incorrect interpretation of an out-of-context Subcontract provision, as D&N has failed to provide any factual or legal basis for its position. Yet reading Article XXVIII as a whole illustrates the parties' intent, which was to allow D&N to execute payment applications without affirmatively waiving its claims, provided D&N lists the claims on the waivers, sworn statements, or payment applications. [Anderson Ex. 4 – Article XXVIII/Ex. F hereto].

### 2. D&N incorrectly expands Article XXVIII(p) to the detriment of numerous other substantive Subcontract provisions

Article XXVIII(p) does not mention, and thus has no effect on, any provisions requiring D&N to provide timely notice to Walbridge. In fact, applying this provision to notice requirements would nullify numerous provisions, including provisions that D&N added through the addendum. For example, D&N's interpretation would excuse D&N from notifying Walbridge, in writing, of changed or additional work prior to performing the work. [Anderson Ex. 4 – Bates WA 0763139/Ex. F hereto]. It would also excuse any failure by D&N to notice Walbridge of claims that the Corps may be

responsible for in time for Walbridge to pass the claim on to the Corps.  [Anderson Ex. 4 – Bates WA 0763139/Ex. F hereto].  Thus, the only reasonable interpretation of Article XXVIII(p) is that it permits D&N to preserve claims, provided D&N lists those claims on the waivers.

### 3. The parties' subsequent conduct indicates a mutual departure from Article XXVIII(p)'s requirements

Even assuming D&N's interpretation is correct, D&N's motion still fails because D&N waived the requirements of Article XXVIII(p) by departing from the Subcontract's terms during performance in issuing twenty-one waivers that released any claims related to the improvement of the project.  [Munroe Ex. 298/Ex. CC hereto].  By executing these waivers releasing any D&N claims for contract improvements – a broader release than that contained in Article XXVIII(p) – and receiving payment thereof, D&N and Walbridge undertook a mutual temporary disregard of contract.  *See* O.C.G.A. § 13-4-4.  O.C.G.A. § 13-4-4 provides that, where the parties depart from contract terms, a new quasi-contract is created based on the parties' actions, which suspends the original terms unless one party provides reasonable notice of its intent to rely on the exact terms of the agreement.  O.C.G.A. § 13-4-4 applies even when a contract contains a "no waiver" provision.  *See Vakilzadeh Enterprises, Inc. v. The Housing Authority of County of Dekalb*, 281 Ga. App. 203, 206

(2006).  Importantly, whether the parties' mutual conduct causes a waiver and effects a new quasi-agreement is a question for the jury.  *Id.*

D&N executed twenty-one waivers releasing Walbridge from liability.  [Munroe Ex. 298/Ex. CC hereto].  These waivers not only waived claims covered by Article XXVIII(p), but broadened the waiver to include any claims against Walbridge for all contract improvements through the specified date, which varied from the Subcontract requirements.  [Munroe Ex. 298/Ex. CC hereto] [Dkt. 154-6 – Munroe Affidavit ¶ 3].  In return for the waivers, Walbridge paid D&N the listed amounts.  D&N never raised any objections to the waivers, never attempted to modify the waivers, and never notified Walbridge of D&N's intent to proceed under Article XXVIII(p). [Munroe Ex. 298/Ex. CC hereto] [Dkt. 135 - Munroe 30(b)(6) 28:12-23].  Instead, D&N waited until over a year into litigation to claim that the Court should ignore the waivers' plain language.  Under O.C.G.A. §13-4-4, the parties mutually departed from the requirements of Article XXVIII(p) through D&N's execution of broader waivers covering any claims and Walbridge's payment in return for the waivers.  Therefore, even if the Court accepts D&N's interpretation of Article XXVIII, summary judgment is still precluded.

**F.    D&N Shows No Entitlement to Summary Judgment for Walbridge's Claims for Punitive Damages and Fraud and the Affirmative Defenses of Fraud and Forfeiture**

D&N's request for summary judgment on these issues should be denied because: (1) Summary judgment is not appropriate until the Court has considered and ruled on Walbridge's motion for leave to amend its complaint and answer and (2) Factual issues preclude D&N's request, including conflicting testimony on whether the waivers that D&N knowingly and willingly executed were correct.

**1.   D&N's motion is premature because the Court has not ruled on Walbridge's motion for leave to amend**

D&N's motion seeking summary judgment on issues raised in the Walbridge Parties' motion for leave to amend fails as a matter of law because the Court has not yet ruled on the motion for leave to amend.  Courts must rule on motions for leave to amend before addressing motions for summary judgment on the claims or defenses added in the motion for leave to amend.  *See Gresh v. Waste Services of America, Inc.*, 189 F. App'x 359, 360 (6th Cir. 2006), *Marks v. Shell Oil Company*, 830 F.2d 68 (6th Cir. 1987).  The Walbridge Parties filed their motion for leave to amend on May 29, 2013, which has not been ruled on.  [Dkt. 78].  And because the Court has not yet ruled on the Walbridge Parties' motion to amend, the Court should deny D&N's request for summary judgment.

### 2.  D&N fails to set forth any facts or legal issues beyond what the Walbridge Parties already addressed in their previously filed Motion for Leave to Amend and Reply

D&N merely rehashes its previous argument from its response to the Walbridge Parties' motion for leave to amend.  [Dkt. 82].  Accordingly, the Walbridge Parties incorporate their original motion for leave to amend and their reply in support, which illustrate why D&N's summary judgment motion must fail.  [Dkt. 78; Dkt. 87].

These facts are undisputed: D&N signed the waivers [Munroe Ex. 298/Ex. CC hereto]; Each waiver provided a partial release via sworn statement that the information contained in the waivers was accurate [*Id.*]; D&N failed to list any claims as required by the Subcontract, waivers, and sworn statement [*Id.*] [Dkt. 82 - D&N Response in Opposition Leave to Amend] [Anderson Ex. 4 – Bates WA 0763141]; and D&N subsequently stated in its deposition that the Waivers and Sworn Statements were not accurate.  [Dkt. 135 - Munroe 30(b)(6) 28:24-30:25].  Walbridge pointedly asked D&N about each section of the waivers and releases and D&N consistently responded that the sections were not accurate.  [*Id.*].  At the beginning of D&N's deposition, D&N agreed that it would ask for clarification for any questions it did not understand and would let Walbridge know if Walbridge cut short any D&N response. [Dkt. 135 – Munroe 30(b)(6) 6:22-7:10].  D&N had every opportunity during the deposition to add to, supplement, or explain its statements that the waiver and sworn statement language was not accurate and failed to do so.

The fact is that D&N never made any attempt to explain its statement until its response to the Walbridge Parties' motion for leave to amend, where D&N claimed for the first time – in an unsupported fashion – what D&N "meant" by the statement. [Dkt. 82].  D&N repeated its explanation in its motion for partial summary judgment where it included a conclusory personal affidavit from Mr. Munroe in an attempt to cure its previous deficiencies.  [Dkt. 154-7].  Setting aside the conclusory nature of Mr. Munroe's affidavit, and its lack of support in the record, Mr. Munroe's personal affidavit is irrelevant because the testimony at issue was given by D&N at D&N's 30(b)(6) deposition.  And even accepting Mr. Munroe's affidavit, D&N's tardy presentation of conflicting evidence is insufficient grounds for summary judgment. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (summary judgment is precluded where the non-movant presents evidence that, if believed by the jury, would be sufficient to win at trial, even if the movant provides conflicting evidence).  Thus, at minimum, there is conflicting evidence over the sworn statements, waivers, and releases, which precludes summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, the Walbridge Parties ask the Court to deny D&N's motion for partial summary judgment.

Submitted this 28th day of October, 2013.

SMITH, CURRIE & HANCOCK LLP

/s/ Douglas L. Tabeling
Eric L. Nelson
Georgia Bar No. 537850
elnelson@smithcurrie.com
Douglas L. Tabeling
Georgia Bar No. 123671
dltabeling@smithcurrie.com
Lochlin B. Samples
Georgia Bar No. 303893
lbsamples@smithcurrie.com
245 Peachtree Center Avenue, N.E.
Suite 2700 Marquis One Tower
Atlanta, Georgia   30303-1227
Telephone:   (404) 521-3800
Facsimile:    (404) 688-0671

*Attorneys for Travelers Casualty and Surety
Company of America, Liberty Mutual Insurance
Company, and Walbridge Aldinger Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **WALBRIDGE ALDINGER COMPANY'S, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S, AND LIBERTY MUTUAL COMPANY'S RESPONSE AND MEMORANDUM IN OPPOSITION TO D&N ELETRIC COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT** has been electronically filed via the Court's CM/ECF system, which will send a Notice of Electronic Filing to the following:

| | |
|---|---|
| Ronald J. Garber | ron@wzlegal.com |
| Brian Joseph Duva | bduva@mfllaw.com |
| Richard S. Bruno | rbruno@mfllaw.com |
| Mike O. Crawford, IV | mike.crawford@swiftcurrie.com |
| Stephen Michael Schatz | steve.schatz@swiftcurrie.com |
| Kenneth A. Shapiro | ken@mitchellshapiro.com |
| Patrick Joseph O'Connor | patrick@mitchellshapiro.com |

This 28th day of October, 2013.

/s/ Douglas L. Tabeling
Douglas L. Tabeling
Georgia Bar Number 123671
dltabeling@smithcurrie.com

*Attorneys for Walbridge Aldinger Company,*
*Travelers Casualty and Surety Company of*

*American, and Liberty Mutual Insurance Company*

Counsel certifies that this pleading complies with Local Rule 5.1. The type is Times New Roman, 14 point.