IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WALBRIDGE ALDINGER COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action File No. |
| D&N ELECTRIC COMPANY, DNS | ) | 1:11-CV-04602-ODE |
| CONSOLIDATED, INC. and MATTHEW | ) | |
| ARMSTRONG, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Consolidated With*
Civil Action File No. 1:12-CV-01135-ODE and
Civil Action File No. 1:13-CV-00743-ODE

### D&N ELECTRIC COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

D&N Electric Company ("D&N") hereby replies to the Response of Walbridge Aldinger Company ("Walbridge") and its sureties, Travelers and Liberty, (hereinafter collectively "Walbridge") D&N's Motion for Partial Summary Judgment ("Motion").

**A. D&N is entitled to Summary Judgment on Walbridge's Waiver Defenses to D&N's Counterclaim.**

It is undisputed that Paragraph 27 of the Subcontract Addendum

("Addendum") was part of the Subcontract and provided that: "**Any form, waiver, release or contract language** wherein the Subcontractor waives or releases claims shall apply only to work for which payment has been received in full by Subcontractor and **shall not apply to retention or claims or changes for which Subcontractor has not been paid.** However, in case of claims, Subcontractor shall list on the waiver its reserved and timely made claims". (Emphasis added) (R. 154-10, p. 44) (R. cites refer to Docket No. in the Record – R. 154-10 was Exh. 2 to the Motion.) This provision defeats all of the other contract provisions upon which Walbridge relies to argue that D&N waived its claims and unpaid changes. Walbridge's argument - that Paragraph 27 has no effect on any contract notice provision because that would nullify those provisions – is illogical. The purpose and intent of the Addendum was to modify the Subcontract. The Addendum begins with the "Subcontract is hereby modified as follows." (R. 154-10, p. 40, line 1)  Paragraph 30 of the Addendum was added to ensure the Addendum controlled over conflicting Subcontract language.  Paragraphs 27 (R. 154-10, p. 44) and Paragraph 30 of the Addendum were intended to nullify any notice provision or contract language that would result in waiver or release of unpaid claims and changes.

Paragraph 27 does not conflict with Paragraph 12 (R. 154-10, p. 42) of the Addendum regarding changes or extra work, because Paragraph 12 does not require prior notice for performing extra work or changes to the Subcontract. Its only notice requirement is as to "additional work". Paragraph 12 differentiates "changes to the Subcontract" from "extra work" and "additional work" and does not apply prior notice to changes to the Subcontract or extra work. D&N's claims for acceleration and additional manpower, overtime and night shift costs are not claims for "additional work", but instead, are for increased costs to perform the Subcontract as a result of Walbridges directives and revised schedules.

Walbridge argues that D&N's interpretation would excuse D&N from providing notice to Walbridge for claims against the Corps of Engineers (the "COE"). However, the Addendum added Paragraph 10 (R. 154.10, pp. 41-42) to differentiate between claims for impacts caused by Walbridge (where no notice was required) and claims against the COE for impacts caused by the COE (where notice to Walbridge was required before it was required to give notice to the COE.) D&N's impact claims are for impacts caused by Walbridge, not the COE.

Walbridge's focus on the second sentence of Paragraph 27, which does not refer to contract language, ignores the language of the first sentence, which

3

prevents any **contract language** from releasing or waiving unpaid changes and claims. (Emphasis supplied)

Walbridge's defense of waiver based on not listing claims on the Waiver form also fails because: 1) The waivers are in a specific cumulative amount stated in the waiver, not a broad waiver of all claims and changes. Walbridge does not dispute that the waiver amount is tied to the amount in the Pay Application that does not include claims and changes where a Change Order has not been issued and signed. 2) Under Michigan law, the insertion of the amount on the waiver form results in the waiver being only to the amount indicated. See, *Genzink Plumbing, Inc. v. Bank W.*, 234110, 2003 WL 1985797 (Mich. Ct. App. Apr. 29, 2003); Mich. Comp. Laws Ann. §570.1115. 3) The second sentence of Paragraph 27 does not negate the first sentence or state that failure to list a claim on a waiver form is waiver or forfeiture. [Munroe Ex. 298/Ex. CC]. The Addendum was negotiated between Walbridge's counsel and D&N. 4.) Walbridge has not offered evidence to dispute that it prevented D&N from changing the Waiver forms (which had to be signed by D&N electronically in Walbridge's Textura system), had no place to list claims and could not be changed by D&N in the Textura system. (R. 154-6, ¶ 4) 5.) These same waiver forms were found to be ambiguous

in *Duncan Pipeline, Inc. v. Walbridge Aldinger Co.*, 2013 WL 1338392 (S.D.Ga. 2013) in which the Court applied Michigan law and rejected Walbridge's argument that these waivers waived and released all claims. The Waiver forms did not include any certification that D&N had no other claims. [Munroe Ex. 298/Ex. CC to Response].

Walbridge's argument - that D&N's signing of waivers indicated a mutual departure from the requirements of Article XXVIII(p) – is without merit. It was not raised as a defense in Walbridge's answers to the Counterclaim. [R. 20, pp. 1-3] It is based on an erroneous assumption that D&N, by signing the Waivers, signed broader releases than it was entitled to receive under the Subcontract and that this resulted in a mutual departure of the Subcontract pursuant to O.C.G.A. § 13-4-4. The waivers were not broad waivers as stated above.  Since Michigan law applies to the subcontract and waivers, *Duncan Pipeline*, 2013 WL 1338392 at *9-10, O.C.G.A. § 13-4-4 does not apply.  Even if O.C.G.A. § 13-4-4 did apply, "[i]nherent in this theory, of course, is the notion that the parties mutually departed from the terms of the original contract."  *Holcomb v. Wells Fargo Bank, N.A.*, 2013 WL 5328369, at *5 (S.D.Ga. 2013).  *See, also Vaughn & Co., Ltd v. B.F. Saul, II*, 143 Ga. App 74, 83 (1977). Walbridge has not presented any evidence of a mutual

5

departure or of any discussion of the parties to waive the no-waiver provision.

Walbridge claims that D&N never raised any objections to the waivers, but D&N made its objections part of the Subcontract in Paragraph 27 of the Addendum. It also tried to get Walbridge to change its forms, but Walbridge refused. (R. 173-11, p. 33, D & N's Response to Walbridge's Statement of Facts, No. 27) D&N was not required to respond in Court to Walbridge's waiver argument until Walbridge filed its Motion to Amend, to which D&N timely responded. None of these arguments of Walbridge supports a mutual departure.

### B. D&N is Entitled to Summary Judgment on Walbridge's Claims for Punitive Damages and Fraud and the Defenses of Fraud and Forfeiture

Walbridge's argument - that the issue of its fraud claim and defense is not ripe yet - is disingenuous. D&N had no choice but to address Walbridge's fraud claim in its Motion because dispositive motions were due. If the Court were to later grant Walbridge's Motion to Amend (which D&N contends it should not), then D&N would never have the opportunity to move for summary judgment regarding the fraud claim. Walbridge's argument that D&N has not set forth additional arguments from those contained in D&N's response to Plaintiff's Motion to Amend is entirely irrelevant. The arguments in both are still valid.

Moreover, factually, Walbridge ignores several undisputed facts that defeat

6

its position on the alleged fraud. Walbridge set up a procedure by which D&N could not get paid without signing a Waiver that could not be changed by D&N in the Textura system to make it have the language of Addendum Paragraph 27. Michael Munroe's affidavit *does* explain his testimony. It was necessary because Walbridge failed to ask the follow up question "Why were the Payment Applications inaccurate."

### C. D&N is Entitled to Partial Summary Judgment on Walbridge's and its sureties' Liability on D&N's Claims for Acceleration and Revised Schedules.

The clear language of Article V, as modified by the Addendum, shows that, if D&N is not in default of the Subcontract and Walbridge directs D&N to add manpower, work overtime, add night shifts and expedite the schedule, then Walbridge is obligated to pay D&N its actual costs for such additional labor costs, premium overtime costs and costs to expedite materials and equipment. Walbridge's argument adds language to Article V that simply does not exist when they argue that D&N may only recover for acceleration if it shows that it complied with the Subcontract notice provisions when making its claim and that it had not otherwise waived the claim. In the paragraph of Article V concerning Walbridge's obligation to pay for actual costs, there is no requirement for notice or for D&N to

prove it has not waived its claims. Furthermore, Paragraph 27 of the Addendum prevents any contract language from waiving unpaid claims and changes.

Walbridge erroneously relies on language in Article XIV that remedies are to be considered "separate and cumulative" [Anderson Ex. 4 Article XIV/Ex. D], but that language is irrelevant.  It refers to remedies of *Walbridge* after it gives a written notice of default to D&N, not to any notice requirement of D&N.

Walbridge argues that Article II [Dkt. 140-2 pp. 16-20] [Anderson Ex. 4 - Article II/Ex. C] has a notice requirement for Article V, but it limits the notice to claims under Article II and does not apply to or mention Article V.

Walbridge argues that Article VII [Anderson Ex. 4 - Article VII/Ex. F] has a notice requirement, but it is a time period to submit quotes for "changed work" after receiving direction to perform the Work from Walbridge. It is not a time period for submitting claims under other provisions of the Subcontract or submitting quotes for changes to the schedules. By the language of Article VII (without considering the Addendum), the consequence of not meeting the time period is not waiver of the right to be compensated but that the Subcontractor is bound by the Contractor's estimate and is "deemed to have waived any right to propose a different amount". However, Article VII was modified by Paragraphs 22

and 23 of the Addendum to prevent D&N from being bound and to require any action of Walbridge to be reasonable. Paragraph 27 prevents any language in the Subcontract from being a waiver of unpaid claims and changes. As Walbridge admits, Article VII does not have any time limit for submitting claims that involve defective drawings and specifications, citing *Duncan Pipeline*. It asserts, without any factual support, that D&N's claims do not include defective drawings and specifications, but its own exhibit for its own Motion is D&N's claim letter of December 8, 2011, in which D&N expressly sets forth numerous design defects and defective specifications. [R. 140-8, pp. 6 – 7 Ex. F to Walbridge Motion]. (Such design defects also included items in separate claims of D & N such as the communications cable and conduits under poured slabs, which Walbridge has wrongfully claimed in its own Motion were not issues of defective design.)

Walbridge's argument as to Paragraph 12 [Anderson Ex. 4 - Bates WA 0763139/Ex. D] ignores the wording of the entire paragraph, as set forth above. Furthermore, Paragraph 12 changed the protocol for changes and mandated that Walbridge issue change orders for extra work and changes to the Subcontract.

Walbridge apparently relies upon language in Article V [Anderson Ex. 4 - Article V/Ex. F] that D&N must give notice within seven days of delay or assume

liability for the delay, but that language addresses D&N's liability to Walbridge for delay that it causes, not Walbridge's liability to D&N for delays. Article V does not even mention notice of impacts, acceleration or claims. It does not state that notice of delay is a condition to recovery by D&N under Article V or other provisions of the Subcontract or the Addendum. Furthermore, Paragraph 25 of the Addendum added language to prevent D&N from being liable for liquidated or actual damages for delays that D&N did not cause. (R. 154-10, p. 44) Factually, D&N gave numerous notices of delay prior to the letter of September, 2010. (R. 137, Smith Depo, p. 97:18-22, Exh. 3, Sieker Aff, ¶1-2, Exh. A) Walbridge relies on Dkt. 105-1 p. 49 and Dkt. 145-1 - Smith Dep. 10:14-16, but Dkt 105-1, p. 40 is the letter of September 16, 2010 that does not contain any statement that there were no previous notices of delays, and Mr. Smith's testimony at 10:14-16 concerns when he started at the site (in September of 2009), not lack of notice.

Walbridge argues that D&N's claims are barred by Article V's "exculpatory" clause, but such an argument is contrary to the holding in *Duncan Pipeline* and to the language of the Addendum, where the Court held that under Michigan law, there are exceptions to Article V for delays which were not contemplated by the parties. Here, additional language was added by the

Addendum to add further exceptions to Article V to allow for recovery of all actual costs as well as recovery of an equitble adjustment under other provisions of the Subcontract. (See, D&N's Brief in Opposition to Walbridge's Motion, R. 173, pp. 13-17) Walbridge relies on *Associated Mechanical Contractors, Inc. v. Martin K. Eby Constr. Co., 271 F.3d 1309, 1316-17 (11th Cir. 2001),* but the contract in that case did not contain the language present here in Paragraph 27 that prevents any additional contract language from waiving or releasing unpaid claims and changes. Article V allows Walbridge to direct the subcontractor but it requires Walbridge to pay D&N where D&N was not in default. "Default" is a term that has a special meaning in the Subcontract because there is a procedure for "default" under Article XIV where, if Walbridge believes that a subcontractor has failed to meet its obligations, it must give a 48-hour written notice to cure the failure before the subcontractor is in "default". Therefore, D&N did not control whether the "default" procedure was initiated; it was up to Walbridge to start that process. Where Walbridge did not do so, as here, D&N was not in "default", and Walbridge cannot now complain about honoring its obligations under Article V to pay D&N for its actual costs.

Factual issues raised by Walbridge do not preclude partial summary

11

judgment on the issue of liability. Walbridge claims that D&N failed to perform its work adequately, causing impact to its own work, citing Exhibits P through Z, and DD (R. 174-16 through 174-26, and 174-31) and that it recognized it was responsible for delays that were affecting the Project, citing Exhibits K through O, BB (R. 174-11 through 174-15, 174-28 and 174-29), and its expert report (which is not admissible evidence), but none of these cites establishes that D&N caused the delays that resulted in the revised Schedules and acceleration directed by Walbridge. Walbridge claims that D&N's delays led "Walbridge to confront D&N with a 48 hour notice of termination", citing Walker Ex. 175 Ex. I. This exhibit is an *internal* e-mail between Walbridge employees only. There is no evidence a 48-hour notice was ever given to D&N. Walbridge asserts, that D&N admitted to causing some of its damages; but the e-mails offered did not establish any delay or impact as a result of the events in those e-mails or any amount of hours or damages caused by D&N. At most, this argument goes to the amount of damages, not to Walbridge's liability, which is the subject of D&N's Motion. Similarly, Walbridge's argument that D&N did not comply with the language in Article V ("[a]ll such costs shall be substantiated by invoices and time slips checked and approved on a daily basis by Contractor,") goes to the issue of damages, not

liability. Walbridge had the obligation to check and approve time slips. D&N submitted Certified Payrolls on a weekly basis to Walbridge, which included actual labor hours (R. 154-6, Munroe Aff ¶ 12), that were tracked on a daily basis.

Walbridge's citations to testimony do not establish that D&N agreed to perform in accordance with or commit to the revised schedules without compensation for additional costs or that it ever agreed in writing to any revised schedules. The Addendum required the agreement to schedules to be in writing. [R. 174-6, pp. 41 , ¶ 6). Walbridge cites no contract provision that required D&N to object to revised schedules. Contrary to Walbridge's assertion, D&N has provided factual support for Walbridge's breached of implied contractual duties in Affidavits and deposition testimony cited in its Statement of Undisputed Facts.

### D. **D&N is Entitled to Partial Summary Judgment on Claims for which Walbridge has not Established Damages.**

Walbridge's argument on the burden of proof is without merit. The burden of proof in supplying evidence of damage is on Walbridge, and Walbridge has not met it. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue", the nonmoving party is required "to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Celotex Corporation v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553(1986).

Plaintiff cites on *Walby v. Aviva U.S.A.,* No. 11-cv-13312, 2013 WL 153379, (ED. Mich. Jan. 15, *2013)* and *EastviewHealthcare, LLC* v. *Synertx, Inc.,* 296 Ga. App. 393, 674 S.E.2d 641, 646 (2009), but neither supports that Walbridge is not required to prove damages. In *Walby,* the Court actually granted the motion due to the inability to demonstrate injury from the breach. *Id.* Walbridge has also ignored that resultant damages is one of the elements of a claim for breach of contract. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999) and has failed to prove damages with respect to the items of damage for which D&N's Motion is addressed. As to those items, the record is devoid of evidence that Walbridge has suffered any damage. Walbridge's Initial and Supplemental Disclosures are not evidence. Even in its Third Supplemental Disclosures Walbridge fails to enumerate its damages from the Buy American Act (the "BAA"). Walbridge's assertion that D&N breached its "design assist obligation by designing systems that contained non-compliant materials" is unsupported by any evidence. Walbridge cites *Lontz v. Continental Casualty Company,* No. 281183, 2009 WL 794480, at *2 (Mich. App. 2009) to argue that the issue as to Walbridge's alleged damages regarding the Graybar action is ripe. However, *Lontz* is distinguishable on its face because the plaintiff claimed that his

14

insurance carrier failed to honor his exchange privileges, but the plaintiff never actually attempted to make an exchange. The Court held that the plaintiff lacked standing to bring the claim. Moreover, Walbridge has suffered no "injury in fact" in the Graybar case as required by *Lontz*. The Graybar action has not yet been resolved or adjudicated. Walbridge exaggerates the likelihood that it will incur any pecuniary loss as a result of an adjudication. It has assumed without evidence that a judgment will be rendered against D&N and its surety in the separate action by Graybar and that neither D&N or its surety would pay. Walbridge seems to be arguing for indemnification, which has not been raised as a defense or claim in this action. Such a claim for indemnification is more appropriately brought as a separate action *only after* there is an award against it in the Graybar action.

## CONCLUSION

Accordingly, D&N's Motion should be granted.

s/Ronald J. Garber
Georgia State Bar No.: 283838
Counsel for D&N Electric Company
Weissmann Zucker Euster Morochnik P.C.
One Securities Centre, Suite 650
3490 Piedmont Rd.
Atlanta, Georgia 30305
404-760-7425 direct
404-364-2320 facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WALBRIDGE ALDINGER COMPANY, )<br>)<br>Plaintiff,    )<br>)<br>v.                                        )<br>) Civil Action File No.<br>DNS ELECTRIC COMPANY, DNS  ) 1:11-CV-04602-ODE<br>CONSOLIDATED, INC. and MATTHEW )<br>ARMSTRONG, individually,       )<br>)<br>Defendants.   )<br>) | |

*Consolidated With*
Civil Action File No. 1:12-CV-01135-ODE and
Civil Action File No. 1:13-CV-00743-ODE

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2013, I served a true and correct copy of *D&N Electric Company's Reply To Walbridge Aldinger Company's Travelers Casualty And Surety Company Of America's And Liberty Mutual Company's Response And Memorandum In Opposition To D&N Electric Company's Motion For Partial Summary Judgment* on counsel of record for all parties via the CM/ECF systems, which will automatically send e-mail notification to the following:

16

| | |
|---|---|
| Eric L. Nelson | Patrick Joseph O'Connor |
| Douglas L. Tabeling | Kenneth A. Shapiro |
| Smith, Currie & Hancock LLP | Mitchell & Shapiro, LLP |
| 2700 Marquis One Tower | One Securities Centre, Suite 650 |
| 245 Peachtree Center Ave. NE | 3490 Piedmont Road, NE |
| Atlanta, GA 30303-1227 | Atlanta, GA 30305 |
| | |
| Brian Joseph Duva | Mike Crawford |
| Richard S. Bruno | Stephen Michael Schatz |
| Mozley, Finlayson & Loggins, LLP | Swift, Currie, McGee & Hiers, LLP |
| One Premier Plaza, Suite 900 | The Peachtree, Suite 300 |
| 5605 Glenridge Drive | 1355 Peachtree Street NE |
| Atlanta, GA 30342-1386 | Atlanta, GA 30309-3238 |

The undersigned hereby also certifies that, pursuant to Local Rule 7.1 D, ND Ga., the attached pleading has been prepared in Times New Roman, 14 point font, a font and point selection approved by this court in Local Rule 5.1 B, ND Ga.

This 12th day of November, 2013.

s/Ronald J. Garber
Georgia State Bar No.: 283838
Counsel for D&N Electric Company and
DNS Consolidated, Inc.
Weissmann Zucker Euster Morochnik P.C.
One Securities Centre, Suite 650
3490 Piedmont Rd.
Atlanta, Georgia 30305
404-760-7425 direct
404-364-2320 facsimile
Ron@wzlegal.com
