IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WALBRIDGE ALDINGER COMPANY, ) ) Plaintiff, ) ) v. ) ) ) D&N ELECTRIC COMPANY, DNS ) CONSOLIDATED, INC. and MATTHEW ) ARMSTRONG, individually, ) ) Defendants. ) ) | Civil Action File No. 1:11-CV-04602-ODE |

*Consolidated With*
Civil Action File No. 1:12-CV-01135-ODE and
Civil Action File No. 1:13-CV-00743-ODE

**RESPONSE OF D&N ELECTRIC COMPANY TO WALBRIDGE ALDINGER COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, AND LIBERTY MUTUAL INSURANCE COMPANY'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

Pursuant to LR 56.1.B(2)(b), D&N Electric Company ("D&N") hereby responds to Walbridge Aldinger Company, Travelers Casualty and Surety Company of America, and Liberty Mutual Insurance Company's (collectively the "Walbridge Parties") Statement of Additional Material Facts in response to D&N's Motion for Partial Summary Judgment as follows:

1.  Walbridge and D&N executed the Subcontract on October 21, 2009 for the Project. [Anderson Ex. 4 p. 1/Ex. F hereto]. In addition to providing

1

materials, labor, work, and services, the Subcontract also required D&N to perform design assist services, which were detailed in Exhibits A and D of the Subcontract. [Anderson Ex. 4 – WA 0763105-0763114; WA 0763119-0763131/Ex. F hereto].

Objection: D & N objects to the second sentence of this Statement of Fact in that it does fully correct and, therefore, is not supported by the evidence cited. Exhibit A to the Subcontract does not detail design services, but rather is a list of Contract Documents. [Anderson Ex. 4 – WA 0763105-0763114; Exh. F to Response] Exhibit D is the exhibit for the Scope of the Work which includes design assist services, which were for D & N "to have input in conjunction with BWSC to develop the final design documents for these Systems. BWSC will then finalize the complete design documents with your input, and then BWSC will provide Stamped and Sealed Drawings with E&O insurance." [Anderson Ex. 4 – WA 0763120/Ex. F to Response].

2. D&N began having productivity and delay issues early in the Project. [Dkt. 119 – Anderson 113:19-114:1].

3. Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited. Ms. Anderson did not state on the cited pages that D&N began having productivity and delay issues early in the Project. She stated that as of June 20, 2010 there was general discussion of D&N productivity issues.

She does not attribute these issues to any fault of D&N. [Dkt. 119 – Anderson 113:19-114:1].

  3. D&N exceeded Project durations. [Dkt. 131 – Walker 138:4-9; 170:12-170:18] [Dkt. 122 – Jackson 65:10-67:23].

Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited. Mr. Walker's cited testimony concerned longer durations from the original contract schedule, but it does not refer to Project durations or attribute any fault of D&N for the durations taking longer. [Dkt. 131 – Walker 138:4-9; 170:12-170:18] The testimony of Mr. Jackson does not state that D&N exceeded Project durations. [Dkt. 122 – Jackson 65:10-67:23]

  4. Completed waivers, releases, and sworn statements by D&N are an express condition precedent to D&N's payment. [Anderson Ex. 4 – Article III/ Ex. F hereto].

Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited. The condition precedent referred to in the seventh paragraph of Article III (the first paragraph on WA0763100), [Anderson Ex. 4 – Article III/ Ex. F] applies to waivers, releases and sworn statements from sub-subcontractors, materialmen and laborers. [Anderson Ex. 4 – Article III/ Ex. F to Response]

5. The waivers and releases state that D&N "waive[s] [its] construction lien rights, rights against any payment bonds, and claims arising from the improvement" and "together with all previous waivers, if any, does cover all amounts due to [it] for the contract improvements provided through the date as above." [Munroe Ex. 298/Ex. CC hereto].

Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited because it does not fully set forth the applicable paragraphs of the Waiver and the cited Munroe Ex. 298/Ex. CC to Response is D & N's Pay application dated March 10, 2011. The Waiver states as follows:

"I/We have a contract with Walbridge to provide contract work for 5-1724-1602 the improvement of the property describe as Fort Stewart 5[th] BCT and hereby waive my/our construction lien rights, rights against any payment bonds, and claims arising from the improvement, in the cumulative amount of $10,919,879.54 for labor/materials provided through 02/20/11.

This waiver, together with all previous waivers, if any, does cover all amounts due to me/us for the contract improvements provided through the date as above."

(Munroe Ex. 298/Ex. CC to Response)

6. D&N never objected to the payment applications, waivers, or sworn statements used in Textura in writing. [Dkt. 135 - Munroe 30(b)(6) 28:24-30:25].

D&N, using the Textura system, stopped executing the sworn statements and waivers beginning with Pay Application 22. [Munroe Ex. 299/Ex. WW hereto] [Dkt. 135 – Munroe 30(b)(6) 31:1-32:7].

Objection:  D & N objects to this Statement of Fact in that it is not supported by the evidence cited.  Munroe Ex. 299/Ex. WW to the Response is Pay Application No. 22, but it does not state that D&N never objected to the payment applications, waivers, or sworn statements used in Textura in writing.  D&N does not dispute that the sworn statements and waivers that were submitted with Pay Application No. 22 was not signed electronically.

7.     D&N executed 21 payment applications that contained waivers and sworn statements. [Munroe Ex. 298/Ex. CC hereto]. These waivers "cover all amounts due to [D&N] for the contract improvements provided through the date as above." [Munroe Ex. 298/Ex. CC hereto].

Objection:  D&N objects to this Statement of Fact in that it is not supported by the evidence cited and does not comply with LR 56.1B(1) because it is a legal argument. The entire language of the Waiver for Pay Application No. 21 [Munroe Ex. 298/Ex. CC to the Response] is contained in that Exhibit.  D&N has addressed the legal argument in its briefs filed in this action.

8. D&N did not identify any potential claims on any signed waiver, release, or sworn statement. [Dkt. 135 - Munroe. 28:12-23; 30:20-25] [Munroe Ex. 298/ Ex. CC hereto].

Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited. Exhibit CC is only one Pay Application; it is dated March 10, 2011 and is not signed. [Munroe Ex. 298/ Ex. CC to the Response].

9. The Subcontract required D&N to comply with the Buy America Act. [Dkt. 125 – Mabe 30(b)(6) 106:23-107:16].

Objection: D&N objects to this Statement of Fact as stated in that it does not correctly state the cited testimony. Mr. Mabe's testimony was that D&N knew it had to comply with the Buy American requirements. [Dkt. 125 – Mabe 30(b)(6) 106:23-107:16]

10. D&N ordered and installed materials for the Project that did not comply with the Buy America Act. [Dkt. 125 – Mabe 30(b)(6) Ex. 228/ Ex. J] [Chace 93:16-23][8] [Chace Ex. 695/Ex. C hereto].

Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited. Chace Ex. 695/Ex. C to the Response is an e-mail between Josh Chace and Ken Mabe discussing instructions given to D&N by Duane White of Walbridge. It does not state that the BZ-150 power packs from Taiwan did not

comply with the Buy American Act. Dkt. 125 – Mabe 30(b)(6) Ex. 228/ Ex. J does not state that the materials were ordered by D&N as non-compliant products or that they remained on the Project. The e-mail exchange shows that the materials at issue were to be removed and there is no evidence that these materials in this e-mail were not removed by D&N.

11. D&N subcontracted with Graybar on the Project to provide materials. [Graybar Complaint/Ex. G hereto]. Graybar filed suit against Walbridge alleging that D&N failed to pay Graybar for materials for the Project. [*Id.*]. Walbridge has incurred costs defending the Graybar action. [Dkt. 81 p. 1/Ex. B hereto].

Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited and includes inadmissible hearsay. Graybar Complaint/Ex. G to the Response does not state that Graybar was a subcontractor to D&N. D&N does not dispute that Graybar was a supplier of materials to D&N for the Project. D&N does not dispute that Graybar filed suit against Walbridge alleging that D&N failed to pay Graybar for materials for the Project. The "evidence" cited for the statement that Walbridge has incurred costs defending the Graybar action is Dkt. 81 p. 1/Ex. B to the Response, but it is not admissible evidence. Rather, it is Walbridge's Third Supplement to Initial Disclosures. Such Disclosures are signed

by counsel for Walbridge and are not under oath and not supported by any documents that are admissible as evidence.

12.   D&N failed to timely obtain materials, which impacted the Project schedule and productivity. [Mabe 30(b)(6) Ex. 244/Ex. Q hereto] [Mabe 30(b)(6) Ex. 246/Ex. R hereto] [Mabe 30(b)(6) Ex. 254/Ex. S hereto] [Sieker Ex. 464/Ex. W hereto] [Chace Ex. 677/Ex. Y hereto] [Chace Ex. 684/Ex. Z hereto].

Objection:  D&N objects to this Statement of Fact in that it is not supported by the evidence cited.  Mabe 30(b)(6) Ex. 244/Ex. Q to the Response and Mabe 30(b)(6) Ex. 246/Ex. R to the Response do not state that D&N failed to timely obtain materials or that the failure to timely obtain materials impacted the Project schedule and productivity. Mabe 30(b)(6) Ex. 254/Ex. S to the Response is an exchange of e-mails in November of 2010, regarding SIPRNET back orders. These e-mails do not state there is any impact on D&N's productivity.  They demonstrate that D&N was trying to expedite deliveries of the SIPRNET to prevent delays and liquidated damages.  Sieker Ex. 464/Ex. W to the Response does not state that D&N failed to timely obtain materials or that the failure to timely obtains materials impacted the Project schedule and productivity. Chace Ex. 677/Ex. Y to the Response contains e-mail exchanges in late December 2010 and Chace Ex. 684/Ex. Z to Response contains e-mail exchanges in late February of

2011.  These e-mails in Exhibits Y and Z to the Response do not state that D&N failed to timely obtain materials or that the failures to timely obtain materials impacted D&N's productivity.  These e-mails demonstrate that D&N was trying to expedite deliveries to prevent delays.

      13.    D&N had insufficient supervisors to manage its workforce, which resulted in inefficient workers and lost overtime. [Harper Ex. 310/Ex. U hereto] [Harper Ex. 306/Ex. V hereto] [Sieker 473/Ex. X hereto].

Objection:  D&N objects to this Statement of Fact in that it is not supported by the evidence cited.  Harper Ex. 310/Ex. U to the Response contains e-mails exchanges in December of 2010 where Walbridge's Jack Cure wanted D&N to add more men to the job.  It does not state that D&N had insufficient supervisors to manage its workforce or that any lack of supervision resulted in inefficient workers and lost overtime.  Harper Ex. 306/Ex. V to the Response contains e-mail exchanges in October of 2010 but they do not state that D&N had insufficient supervisors to manage its workforce or that insufficient supervisors resulted in inefficient workers and lost overtime.  Sieker 473/Ex. X to the Response is an e-mail in July of 2010 but it does not state that D&N had insufficient supervisors to manage its workforce or that insufficient supervisors resulted in inefficient workers and lost overtime.

14. D&N did not track, separate, or otherwise differentiate its own liability for acceleration costs. [Harper Ex. 306/Ex. V hereto] [Harper Ex. 305/Ex. AA hereto] [Harper Ex. 473/Ex. X hereto].

Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited. Harper Ex. 306/Ex. V to the Response is an e-mail in October of 2010 but it does not state that D&N did not track, separate, or otherwise differentiate its own liability for acceleration costs. Harper Ex. 306/AA to the Response is an e-mail in May of 2010 but it does not state that D&N did not track, separate, or otherwise differentiate its own liability for acceleration costs. Harper Ex. 473/Ex. X to the Response is an e-mail in July of 2010 but it does not state that D&N did not track, separate, or otherwise differentiate its own liability for acceleration costs.

15. The Subcontract required D&N to provide written notice of delays within seven days of the start of the delay. [Anderson Ex. 4 – Article V/Ex. F hereto]. Under the Contract, failure to provide notice within seven days made D&N liable for the costs of the delays, provided the contract did not provide for a longer notice time. [Anderson Ex. 4 – Article V/Ex. F hereto].

Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited in that it does not correctly quote the portion of Article V or

provisions of the Addendum that control over the language in Article V apparently relied upon by the Walbridge Parties and does not comply with LR 56.1B(1) because it is a legal argument. While the Walbridge Parties do not specify which language or Article V being referred to in this Statement of Fact, the cite to Anderson Ex. 4 – Article V/Ex. F contains the following language regarding notices of delays:

"Should the Subcontractor fail to prosecute the Work as provided herein, thereby causing delay in the progress of the Project or delay to the work of the Contractor or others, Subcontractor shall be liable for all loss and damages, including without limitation, liquidated and consequential damages, if any, sustained by the Owner, the Contractor and/or other subcontractors. In the event that the Subcontractor's Work is delayed by causes beyond the control of the Subcontractor, the Subcontractor shall be liable hereunder unless Subcontractor gives written notice of the alleged delay to the Contractor within seven (7) days following the start of the alleged cause beyond the control of the Subcontractor, unless a shorter notice period is provided for in the Agreement Between Owner and Contractor."

The second sentence makes a legal argument under the Contract, citing only Article V without putting the sentence in context with the paragraph in which it is located or in context with Paragraph 25 of the Addendum that provides in relevant

part that "Subcontractor shall not liable for liquidated damages or actual damages for delays that are not caused by the Subcontractor…." [R. 174-6, p. 45, ¶ 25; Anderson Ex. 4 – Article V/Ex.F to Response, p. WA 0763141, ¶ 25]

16. For change order work, D&N was required to provide written notice to Walbridge prior to performing the work that D&N considered the work to be extra or a change to the Subcontract. [Anderson Ex. 4 – WA 0763139/Ex. F hereto].

Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited and does not comply with LR 56.1B(1) because it is a legal argument. The citation to Anderson Ex. 4 – WA 0763139/Ex. F to the Response is apparently to Paragraph 12 of the Addendum that provides:

"If Subcontractor is required in writing to perform extra work or changes to the Subcontract, Contractor shall provide a written change order for such extra work or changes in a reasonable time. **In the event that Subcontractor is required in writing to perform work that Subcontractor believes is additional work, Subcontractor shall be entitled to a Change Order request or a claim, provided Subcontractor provides written notice to Contractor prior to performing such work** that Subcontractor considers such work to be extra work or a change to the Subcontract." (Emphasis added.)  Notice prior to performing

work only applies to "additional work", not "changes to the Subcontract" or "extra work".

17.  D&N agreed to submit quotations to Walbridge proposing the increase or decrease in the Subcontract Price within fourteen days of receipt of direction to perform changed work. [Anderson Ex. 4 – Article VII/Ex. F hereto]. Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited because it does not quote the relevant language of Article VII and the provisions of the Addendum that modified the Subcontract and does not comply with LR 56.1B(1) because it is a legal argument. The Addendum modified Article VII by various provisions, including Paragraph 12, which provided that: "If Subcontractor is required in writing to perform extra work or changes to the Subcontract, Contractor shall provide a written change order for such extra work or changes in a reasonable time. In the event that Subcontractor is required in writing to perform work that Subcontractor believes is additional work, Subcontractor shall be entitled to a Change Order request or a claim, provided Subcontractor provides written notice to Contractor prior to performing such work that Subcontractor considers such work to be extra work or a change to the Subcontract." (Emphasis added.) [R. 174-6, p. 43, ¶ 12; Anderson Ex. 4 – Article VII/Ex. F to Response, WA 0763139]

This Paragraph [R. 174-6, p. 43, ¶ 12; Anderson Ex. 4 – Article VII/Ex. F to Response, WA 0763139] changed the protocol for changes in Article VII, required Walbridge to issue change orders for changes to the Subcontract and for extra work and limited notices to "additional work" and removed any notice requirement for changes to the Subcontract and extra work.

18. D&N agreed to indemnify, defend, and hold harmless Walbridge from any claim, injury, damage, cost, expense, or liability, including attorney fees. [Anderson Ex. 4 – Article XI/Ex. F hereto].

Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited in that it does not correctly quote Article XI and does not quote Paragraph 14 of the Addendum that modified Article XI and does not comply with LR 56.1B(1) because it is a legal argument. Article XI provided as follows:

<u>ARTICLE XI - GENERAL INDEMNITY:</u> To the fullest extension permitted under the applicable law, and for and in consideration of the first one hundred ($100.00) dollars of the subcontract price, Subcontractor agrees to indemnify, defend and hold harmless the Contractor and the Owner and their agents and employees, and any other person or entity to whom Contractor owes indemnity from and against any claim, injury, damage, cost, expense or liability (including actual attorneys' fees incurred in both defending the claim and tendering the claim

to Subcontractor), whether arising before or after completion of the Subcontractor's Work caused by, arising out of, resulting from or occurring in connection with the performance of the Work, violation of one or more applicable federal or state laws, or any activity associated with the Work, by the Subcontractor, its Sub-subcontractors, suppliers or their agents or employees, or from any activity of the Subcontractor, its Sub-subcontractors, suppliers or their agent or employees at the Site whether or not caused in part by the active or passive negligence or other fault of a party indemnified except only to the extent caused by the sole negligence of a party indemnified hereunder. In the case of claims against the Contractor, the Owner, or their agents and employees or any other person or entity to whom Contractor owes indemnity by any employee of the Subcontractor, anyone directly or indirectly employed by it or anyone for whose acts it may be liable, the indemnification obligation under this Article shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

If any part of the indemnity provisions set forth in this Article are adjudged to be contrary to law, the remaining parts of the provisions shall, in all other respects, be and remain legally effective and binding. These indemnity provisions shall not be

construed to eliminate or in any way reduce any other indemnification or rights which the Owner or Contractor has by law or through the Contract Documents."

Article XI was also modified by Paragraph 14 of the Addendum as follows: "in line 5, after the comma and before the word "whether" add the following: "to the extent caused by Subcontractor, its employees or any of its subcontractors or suppliers or their employees."

 19. D&N did not provide notice of its claims for delays, acceleration, inefficiency, or loss of productivity until September 16, 2010. [Dkt. 105-1 p. 49] [Dkt. 145-1 - Smith Dep. 10:14-16].

Objection: D&N objects to this Statement of Fact in that it is not supported by the evidence cited. This is the same "Fact" that the Walbridge Parties raised in their Motion for Summary Judgment to which D&N responded that the evidence cited did not support the fact stated. Dkt. 105-1 p. 49 is the letter dated September 16, 2010. It does not state that D&N did not provide notice of claims for delays, acceleration, inefficiency, or loss of productivity until September 16, 2010. Dkt. 145-1 - Smith Dep. 10:14-16 also has nothing to do with notice and does not state that D&N did not provide notice of claims for delays, acceleration, inefficiency, or loss of productivity until September 16, 2010.

20. D&N participated in weekly subcontractor meetings with Walbridge which discussed the project schedule, at the conclusion of which D&N committed to the schedule updates. [Dkt. 122 – Jackson 30:18-37:17; 18:16-20:13; 22:9-25:4; 56:8-60:13; 68:5-14; 115:19-119:10; 157:8-18].

Objection: D&N objects to this Statement of Fact in that the part "at the conclusion of which D&N committed to the schedule updates", which implies a voluntary commitment, is not supported by the evidence cited. The testimony of Mr. Jackson on the pages cited shows that Walbridge told D&N it had to meet the weekly schedules (R. 122, Jackson Depo, p. 34:5-21, 117:8-22) and that D&N had to have whatever manpower and work whatever overtime and night shifts to meet those schedules. (R. 122, Jackson Depo, 117:8-22) D&N committed to providing more men (R. 122, Jackson Depo, 157:8-23), but D&N never told Mr. Jackson that committing to a schedule would be without cost to Walbridge. (R. 122, Jackson Depo, 56: 14-17)

                                                s/Ronald J. Garber
                                                Georgia State Bar No.: 283838
                                                Counsel for D&N Electric Company
                                                Weissmann Zucker Euster Morochnik P.C.
                                                One Securities Centre, Suite 650
                                                3490 Piedmont Rd.
                                                Atlanta, Georgia 30305
                                                404-760-7425 direct
                                                404-364-2320 facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WALBRIDGE ALDINGER COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DNS ELECTRIC COMPANY, DNS )<br>CONSOLIDATED, INC. and MATTHEW )<br>ARMSTRONG, individually, )<br>)<br>Defendants. )<br>) | Civil Action File No.<br>1:11-CV-04602-ODE |

*Consolidated With*
Civil Action File No. 1:12-CV-01135-ODE and
Civil Action File No. 1:13-CV-00743-ODE

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2013, I served a true and correct copy of <u>Response Of D&N Electric Company To Walbridge Aldinger Company, Travelers Casualty And Surety Company Of America, And Liberty Mutual Insurance Company's Statement Of Additional Material Facts</u> on counsel of record for all parties via the CM/ECF systems, which will automatically send e-mail notification to the following:

Eric L. Nelson
Douglas L. Tabeling
Smith, Currie & Hancock LLP
2700 Marquis One Tower
245 Peachtree Center Ave. NE
Atlanta, GA 30303-1227

Patrick Joseph O'Connor
Kenneth A. Shapiro
Mitchell & Shapiro, LLP
One Securities Centre, Suite 650
3490 Piedmont Road, NE
Atlanta, GA 30305

| | |
|---|---|
| Brian Joseph Duva | Mike Crawford |
| Richard S. Bruno | Stephen Michael Schatz |
| Mozley, Finlayson & Loggins, LLP | Swift, Currie, McGee & Hiers, LLP |
| One Premier Plaza, Suite 900 | The Peachtree, Suite 300 |
| 5605 Glenridge Drive | 1355 Peachtree Street NE |
| Atlanta, GA 30342-1386 | Atlanta, GA 30309-3238 |

The undersigned hereby also certifies that, pursuant to Local Rule 7.1 D, ND Ga., the attached pleading has been prepared in Times New Roman, 14 point font, a font and point selection approved by this court in Local Rule 5.1 B, ND Ga.

This 12th day of November, 2013.

> s/Ronald J. Garber
> Georgia State Bar No.: 283838
> Counsel for D&N Electric Company and
> DNS Consolidated, Inc.
> Weissmann Zucker Euster Morochnik P.C.
> One Securities Centre, Suite 650
> 3490 Piedmont Rd.
> Atlanta, Georgia 30305
> 404-760-7425 direct
> 404-364-2320 facsimile
> Ron@wzlegal.com